UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARRINA BYRD and          )
ANNETTE BURNS            )
                                     )
Individually and on Behalf of all   )
Similarly Situated Persons,      )
                                     )     Civil Action No.  06-0522 (HHK)
          Plaintiff,       )
                                     )     CLASS ACTION
              v.             )
                                     )
DISTRICT OF COLUMBIA,     )
                                     )
          Defendant.     )
_____)

## SECOND AMENDED CLASS ACTION COMPLAINT

### Nature of Complaint

1.     Garrina Byrd and Annette Burns (hereinafter referred to as "Representative Plaintiffs"), who are former employees of the government of the District of Columbia Department of Parks and Recreation (hereinafter "District of Columbia" or "Defendant"), bring this action individually and also on behalf of a class of similarly situated female employees who were subjected to a sexually hostile work environment and/or *quid pro quo* discrimination to address continuing violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"); the D.C. Human Rights Act, as amended; D.C. Code §2-1401.01 *et seq.* ("DCHRA"), and 42 U.S.C. §1983 ("Section 1983").

2.     The Representative Plaintiffs, individually and on behalf of a class of similarly situated female employees within the District of Columbia's Department of Parks and Recreation, assert class-wide claims.  The Representative Plaintiffs seek to represent a class of female persons similarly situated to redress the Defendant's continuing sexually hostile work

environment and/or *quid pro quo* discrimination since January 1, 2000. The District of Columbia has discriminated, and continues to discriminate, against the Representative Plaintiffs as well as similarly situated female persons on a class-wide basis by maintaining and condoning discriminatory practices against women in the workplace. The Representative Plaintiffs seek declaratory, injunctive, and other equitable relief for the proposed class, as well as nominal and compensatory damages at law.

3.     Representative Plaintiff Byrd also joins her individual retaliation claims under Title VII, DCHRA, Section 1983, and the D.C. Whistleblower Act, D.C. Code § 1-615.51 *et seq.*; and Representative Plaintiff Burns also joins her individual retaliation claims under Title VII, DCHRA, and Section 1983.

4.     Defendant has continuously engaged in, condoned, and ratified harassing conduct resulting in a sexually hostile work environment. Common examples of this harassment include, but are not limited to: (1) inappropriate physical touching of female employees by a male manager; (2) management's *quid pro quo* solicitation to female employees, which has the purpose or effect of unreasonably interfering with work performance or creating an intimidating, hostile, or offensive working environment; (3) repeatedly ignoring or failing to remedy complaints and/or evidence of sexual harassment, which has created an atmosphere discouraging victims from coming forward with complaints because of the futility of doing so; and (4) requiring female employees to work in an environment in which they were either directly harassed or forced to work in an environment where harassment of other women was pervasive.

5.     Defendant has also engaged in, condoned, and ratified harassing conduct in the form of *quid pro quo* threats from management personnel. This conduct includes, but is not limited to, the following: (1) unwelcome sexual advances, requests for sexual favors, and other

verbal or physical conduct of a sexual nature that are either explicitly or implicitly made a term or condition of the employee's employment; and (2) submission to or rejection of such conduct by a female employee is used as the basis for employment decisions affecting the employee.

6.    As a result, the harassing and discriminatory conduct described herein constitutes a continuing violation of Title VII, DCHRA, and Section 1983.

## Jurisdiction and Venue

7.    This Court has jurisdiction over the claims alleged herein pursuant to 42 U.S.C. § 2000e-(5)(f)(3), 28 U.S.C. § 1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

8.    Proper venue is in this Court as all relevant events alleged herein have occurred within the District of Columbia.  *See* 42 U.S.C. § 2000e-(5)(f)(3).

## Exhaustion of Administrative Remedies

9.    Plaintiff Byrd filed and pursued her discrimination complaint with the government of the District of Columbia.  Byrd also filed a timely charge with the United States Equal Employment Opportunity Commission ("EEOC").  Byrd then sought and obtained a Notice of Right to Sue from the EEOC.  This action was filed within ninety (90) days of receipt of that notice.  Plaintiff Burns likewise filed a charge or complaint of discrimination with the District of Columbia and the EEOC and filed suit within ninety (90) days of receipt of her Notice of Right to Sue.

<u>Parties</u>

10.     Representative Plaintiff Garrina Byrd was an employee of the Defendant District of Columbia's Department of Parks and Recreation from 2001 through December 31, 2005. Byrd is a resident of the District of Columbia.

11.     Representative Plaintiff Annette Burns was an employee of the Defendant District of Columbia's Department of Parks and Recreation from 2000 through 2004.  Burns is now a resident of North Carolina.

12.     Defendant District of Columbia is a separate legal entity with responsibility for insuring that its employees have a workplace free of unlawful discrimination.  Defendant District of Columbia is the municipal government for the District of Columbia.

### <u>FACTS SUPPORTING THE REPRESENTATIVE PLAINTIFFS' ALLEGATIONS OF CLASS-WIDE DISCRIMINATION</u>

**A.     REPRESENTATIVE PLAINTIFFS' CLASS CLAIMS REGARDING HOSTILE WORK ENVIRONMENT, HARASSMENT, AND *QUID PRO QUO* DISCRIMINATION**

**i.     <u>Representative Plaintiff Byrd</u>**

13.     In July 2001, Plaintiff Byrd was hired by Defendant through Project Empowerment, the District of Columbia's Welfare to Work program.

14.     Plaintiff met with Darnell Thompson, Director of Facilities Management, about obtaining an office position.

15.     During Byrd's interview for the office job with Thompson, Thompson told her that if she wanted a job, she had to lift up her shirt.  Byrd was offended and startled. Thompson asked her again, making it clear that her job depended on whether she gave into his demands. Byrd finally gave in and received a 13-month appointment in 2002.

16.    Plaintiff Byrd started working in Thompson's office, where he regularly touched her inappropriately and engaged in other harassing behavior.  This behavior by Defendant's manager continued through at least March 31, 2005.

17.    Plaintiff Byrd reported the harassment to Joyce Roberts, a supervisor.  Roberts told Byrd to "tell him to stop" but did nothing else in response to Plaintiff's complaints.  Byrd told Thompson to stop, but he did not.

18.    In 2005, Plaintiff reported the harassment to another supervisor, Julie Banks.

19.    Byrd also reported her manager's harassment to other managers and officials. However, no one did anything to stop Thompson's harassment or to lessen the hostility in the workplace created by Thompson's behavior, which was further amplified by Defendant's lack of response to Byrd's complaints.

20.    Byrd was constantly afraid for her job security due to the harassment and *quid pro quo* demands.  Although most of the harassment occurred in Thompson's office, he would also repeatedly call her on her cell phone late at night and on weekends, asking her for sex, dates and other inappropriate requests.

21.    Each time that Byrd's term employment neared its end date, Thompson would escalate his demands for sexual favors in exchange for renewing her employment contract. Thompson eventually required Plaintiff to have sexual intercourse with him or lose her D.C. government position.

22.    These behaviors, creating a hostile environment based on sexual harassment, continued at least until March 31, 2005, and interfered with Byrd's ability to do her job.

23.    On April 5, 2005, Plaintiff Byrd filed a charge with the Department of Parks and Recreation's EEO office. It was immediately dismissed and no investigation of her complaint was performed.

24.    The following day, Byrd filed a charge with Defendant's Office of Human Rights.

25.    In November, 2005, Byrd was called into a meeting with a high level manager and Roberts, where Byrd's ability to perform her job was questioned.  Byrd was asked about basic competencies in a number of areas in a position that she had held for over three years without complaints about her performance.

26.    In December 2005, Byrd testified about the sexual harassment at a D.C. Council hearing regarding the Department of Parks and Recreation.

27.    On Friday, December 30, 2005, the last work day before the expiration of Plaintiff's term appointment, Byrd received notification of her termination after she left work, effective the next day.  Ms. Byrd had received no prior notice or any complaints about her performance.

28.    The actions of Byrd's supervisors and their behavior toward Plaintiff created a hostile work environment which interfered with her ability to perform her duties.

29.    Adverse actions suffered by Plaintiff Byrd were a direct result of Defendant's discrimination based on her sex as well as a result of her protected conduct, which included, but was not limited to, her complaints about discrimination and her testimony before the D.C. Council.

30.    Byrd is aware of numerous additional female employees who worked at Defendant's Department of Parks and Recreation and who were subjected to a hostile work environment and/or *quid pro quo* harassment.

31.     As a result of Defendant's actions and/or lack thereof, Plaintiff has suffered extreme harm.

ii.     **Plaintiff Burns**

32.     Between 2000 and 2004, Burns was an employee of the District of Columbia's Department of Parks and Recreation.

33.     During Burns' employment she was subjected to routine sexual harassment by her manager, Darnell Thompson, including, but not limited to, his sexual assault of Burns when she was eight months pregnant and other physical and verbal sexual harassment that occurred on a regular basis.

34.     In 2002, Burns reported Thompson's sexual harassment to her supervisor, James Boone.  Boone responded that he "saw it coming" and stated that other females made similar complaints about Thompson.

35.     Boone claimed he would speak with Thompson about her complaint, but it is unclear whether that conversation ever occurred.

36.     Subsequently, Burns did not see any change in Mr. Thompson's behavior; rather, it got worse.

37.     Burns had a meeting with Thompson in his office in 2002, about a work issue. When the meeting ended, Burns got up to leave but Thompson blocked her exit.  Thompson grabbed Burns and forced her to lean back onto a table.  Thompson then grabbed her left breast and tried to force his tongue into her mouth.  Burns repeatedly told him to stop and tried to push him away.  At that time, Burns was eight months pregnant and quite limited due to her condition. Burns was very frightened and completely dominated physically.

38.     Immediately thereafter, Burns reported Thompson's sexual assault to Boone.

39.    Burns also complained to Kennedy Kabo, who was Thompson's supervisor.

40.    Burns also complained about the sexual harassment to Kabo's supervisor, Neil Albert, who was the Director of Department of Parks and Recreation ("DPR").  Burns also informed Albert and another official, Neil Stanley, that she knew of other female employees who had been sexually harassed by Thompson.

41.    Burns provided the details of Thompson's harassment, as well as other female employees she had been told were also harassed, to Albert's staff.

42.    In addition, Burns complained about the harassment to the ARISE program (the group through which she initially received the DPR job) and spoke with DeCarlo Washington and Leslie Green.  Washington told Burns that other female employees had complained about sexual harassment by Thompson.

43.    Green drafted a report about Burns' complaint and told her that the report would be given to Albert.  The ARISE Report was then signed by Plaintiff Burns.

44.    Subsequently, in or about May of 2002, Burns was informed that both Washington and Green met with Albert, who was still the Director of DPR, about Thompson's sexually harassing behavior and also provided Albert with a copy of the report regarding Burns' complaints.

45.    Several days later, Albert telephoned Burns' home.  He claimed that Thompson would be removed from his position.

46.    During this same time period, Mr. Albert met with the coordinator for the Department of Employment Services about the complaints of sexual harassment from women in the welfare to work program.

47.     When Burns returned to work in August 2002 from leave, Thompson was still employed as the Chief of Maintenance.

48.     Burns, on the other hand, was transferred to the Randall Recreation Center.

49.     Burns was terminated from DPR in 2004.

50.     The union reported complaints about sexual harassment that it received from putative class members to District of Columbia City Council Member Kathy Patterson.

51.     In 2005, Union President Deborah Jackson, reported to the District of Columbia City Council that Thompson has been allowed to sexually harass women in the workplace and that the union was aware of at least 3-6 woman who had come forward to make such allegations.

52.     Ms. Jackson reported that, although the Union had reported the incidents to Neil Stanley, then acting Director of DPR, no investigation had occurred.  The Union further reported that all those who had complained of sexual harassment were "summarily dismissed from employment because they were temporary employees."

53.     During the entire time Plaintiff Burns worked at DPR, she was never trained or otherwise informed about how to file an EEO complaint.  Further, Burns did not see any posters or information regarding the EEO process or sexual harassment policies, and she did not receive any training about sexual harassment or what to do if such harassment occurred.

54.     Indeed, Ms. Burns was never informed by anyone at DPR that a separate process for filing an EEO complaint even existed for District of Columbia government employees nor was Ms. Burns ever informed about sexual harassment and what to do when it occurred.

55.     Since Ms. Burns still had not been informed about any EEO reporting process, she assumed that she had told every one possible about the problems with Mr. Thompson's behavior.

56.     As a result of Defendant's conduct and/or lack thereof, Burns has suffered extreme harm.

**B.     CLASS ACTION ALLEGATIONS**

     **i.     Definition of the Class**

57.     The proposed class consists of all female persons who are working, or have worked, for the District of Columbia's Department of Parks and Recreation at any time since 2000 to the present.   If, during the course of the litigation, it appears sub-classes may be beneficial, Plaintiffs will propose any such sub-classes at the appropriate time.

     **ii.     Efficiency of Class Prosecution of Common Claims**

58.     Certification of a class of female employees similarly situated to the Representative Plaintiffs is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Representative Plaintiffs and the proposed class.   The individual claims of the Representative Plaintiffs require resolution of the common questions of whether Defendant has engaged in a systemic pattern and/or practice of sexual discrimination against female employees through a hostile work environment, harassment, and/or *quid pro quo* discrimination.

59.     The Representative Plaintiffs seek remedies to eliminate the adverse effects of such discrimination in their own lives and careers, and in the lives and careers of the proposed class members, and to prevent such continued sexual discrimination in the future.

60.     The Representative Plaintiffs have standing to seek such relief because of the deleterious and adverse effects that such discrimination has had on them individually and on female employees generally.   In order to gain such relief for themselves, as well as for the putative class members, the Representative Plaintiffs will first establish the existence of systemic

sexual discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subjected to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

61.     Certification of the proposed class of female employees who have been affected by these common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Representative Plaintiffs, the proposed class, and Defendant. The Representative Plaintiffs' individual and class claims are premised upon the traditional bifurcated method of proof and trial for systemic disparate treatment claims of the type at issue in this case. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### iii.     Numerosity and Impracticability of Joinder

62.     The size of the proposed class which the Representative Plaintiffs seek to represent is at present unknown but, upon information and belief, it is expected to be too numerous (*i.e.,* over 30 plaintiffs) to make joinder practicable. The proposed class consists of all past, present, and future female persons who were subjected to a hostile work environment, harassment, and/or *quid pro quo* discrimination at the District of Columbia's Department of Parks and Recreation during the liability period.

### iv.     Common Questions of Law and Fact

63.     The prosecution of the claims of the Representative Plaintiffs will require the adjudication of numerous questions of law and fact common to both the individual claims and those of the putative class they seek to represent. The common questions of law include, *inter alia*, the following: Has Defendant engaged in unlawful, intentional sexual discrimination in its treatment of female employees? Is Defendant liable for a continuing violation of Title VII,

DCHRA, and Section 1983?  What are the proper standards for proving a pattern or practice of discrimination by Defendant against its female employees for hostile work environment and *quid pro quo* discrimination claims?  The common questions of fact include, *inter alia*: the following: Has Defendant engaged in a pattern or practice of maintaining a hostile work environment and *quid pro quo* discrimination?  Does Defendant have policies, procedures, or practices regarding complaint procedures and, if so, how do they operate?  Does Defendant provide training regarding sexual harassment to its employees or managers?

     **v.**     **Typicality of Claims and Relief Sought**

     64.     The claims of the Representative Plaintiffs are typical of the claims of the proposed class.  The relief sought by the Representative Plaintiffs is also typical of the relief which is sought on behalf of the proposed class.

     65.     The relief necessary to remedy the claims of the Representative Plaintiffs is exactly the same as that necessary to remedy the claims of the proposed class members in this case.  The Representative Plaintiffs seek the following relief for their individual claims and those of the members of the proposed class: (a) a declaratory judgment that Defendant has engaged in systemic racial discrimination against female employees; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of Defendant's policies, practices and procedures so that female employees will not be subjected to harassment in the future; (d) back pay, front pay, and other equitable remedies necessary to make the female employees whole from Defendant's past discrimination; (e) nominal and compensatory damages at law; and (f) attorneys' fees, costs, and expenses.

     **vi.**     **Adequacy of Representation**

     66.     The Representative Plaintiffs' interests are co-extensive with those of the

members of the proposed class in this case. Each seeks to remedy Defendant's discriminatory policies, practices and procedures related to sexual harassment so that female employees will no longer suffer discrimination. The Representative Plaintiffs are willing and able to represent the proposed class fairly and vigorously as they pursue their similar individual claims in this action. The Representative Plaintiffs have retained qualified and experienced counsel able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience and resources of the Representative Plaintiffs and her counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4).

**vii.    Requirements of Federal Rule 23(b)(2)**

67.    Defendant has acted on grounds generally applicable to the Representative Plaintiffs and proposed class by adopting and following systemic policies, practices, and procedures which maintain, condone, and/or fail to prevent sexual harassment. Sexual discrimination is Defendant's standard operating procedure rather than a sporadic occurrence. Defendant has acted or refused to act on grounds generally applicable to the class by, *inter alia*: refusing to adopt and apply policies, practices, and procedures which remedy and/or prevent sexual harassment in the workplace. Defendant's systemic discrimination and refusal to act on grounds that are not sexually discriminatory has made appropriate final injunctive and declaratory relief with respect to the class as a whole.

68.    Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of Defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the Representative

Plaintiffs' and class members' entitlement to monetary and non-monetary remedies at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic sexual discrimination against female employees at the District of Columbia's Department of Parks and Recreation. Such relief is the factual and legal predicate for the Representative Plaintiffs' and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by, and for exemplary purposes necessitated by, such systematic discrimination.

### viii.    Requirements of Rule 23(b)(3)

69.    The common issues of fact and law affecting the claims of the Representative Plaintiffs and proposed class members, including, but not limited to, the common issues identified in paragraph 63, above, predominate over any issues affecting only individual claims.

70.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the Representative Plaintiffs and members of the proposed class.

71.    The cost of proving Defendant's pattern or practice of discrimination makes it impracticable for the Representative Plaintiffs and members of the proposed class to control the prosecution of their claims individually.

## C.    CLASS-ACTION CLAIMS

72.    The Representative Plaintiffs and the putative class they seek to represent, have been subjected to a systemic pattern and practice of sexual discrimination involving Defendant's maintenance of a hostile work environment, harassment and *quid pro quo* discrimination.

73.    Because of Defendant's systemic pattern and/or practice of sexual harassment, the Representative Plaintiffs and class they seek to represent have been adversely affected and have experienced harm, including the loss of employment and employment benefits.

74. The Representative Plaintiffs and class they seek to represent have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief. The Representative Plaintiffs and the class they seek to represent are now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies, practices and procedures as set forth herein unless those policies, practices and procedures are enjoined by this Court.

## IX.    CAUSES OF ACTION

### COUNT ONE

**(Class-wide discrimination regarding hostile work environment and/or *quid pro quo* claims in violation of Title VII, 42 U.S.C. §2000e *et seq.*)**

75. The Representative Plaintiffs restate and re-alleges paragraphs 1 through 74 as though set forth here in full.

76. Defendant has discriminated against the Representative Plaintiffs and all members of the proposed class by subjecting them to a hostile work environment, harassment, and *quid pro quo* discrimination in violation of Title VII, 42 U.S.C. §2000e *et seq.*, as amended.

77. Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Representative Plaintiffs and members of the proposed class.

78. By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout the liability period, the Representative Plaintiffs and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

79. By reason of Defendant's discrimination, the Representative Plaintiffs and the members of the proposed classes are entitled to legal and equitable remedies available under

Title VII.

## COUNT TWO

**(Class-wide discrimination regarding hostile work environment
and/or *quid pro quo* claims in violation of
District of Columbia Human Rights Act, as amended,
D.C. Code §2-1401.01 *et seq.*)**

80.     The Representative Plaintiffs restate and re-allege paragraphs 1 through 74 as though set forth here in full.

81.     Defendant has discriminated against the Representative Plaintiffs and all members of the proposed class by subjecting them to a hostile work environment, harassment, and *quid pro quo* discrimination in violation of the District of Columbia Human Rights Act, as amended, D.C. Code §2-1401.01 *et seq*.

82.     Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Representative Plaintiffs and members of the proposed class.

83.     By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout the liability period, the Representative Plaintiffs and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

84.     By reason of Defendant's discrimination, the Representative Plaintiffs and the members of the proposed classes are entitled to legal and equitable remedies available under the DCHRA.

## COUNT THREE

**(Class-wide discrimination violations of 42 U.S.C. § 1983,
through the Fifth Amendment to the U.S. Constitution)**

85.     The Representative Plaintiffs restate and re-allege paragraphs 1 through 74 as

though set forth here in full.

86.     Defendant's failure to respond adequately to complaints and/or evidence of sexual harassment, as well as its failure to adequately train, supervise, hire, and/or retain its employees constitutes deliberate indifference toward the Fifth Amendment constitutional rights of the Representative Plaintiffs and the members of the proposed class.

87.     By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout the liability period, the Representative Plaintiffs and members of the proposed class are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

88.     Defendant's violations of the federal rights of Plaintiffs and the members of the proposed class occurred pursuant to government policy or custom.

89.     By reason of Defendant's discrimination, the Representative Plaintiffs and members of the proposed class are entitled to legal and equitable remedies available under 42 U.S.C. §1983.

## <u>COUNT FOUR</u>

### (Plaintiff Byrd's individual claim for retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)

90.     Plaintiff Byrd restates and re-alleges paragraph 1 through 74 as though set forth here in full.

91.     Defendant has retaliated against Plaintiff Byrd, who protested, opposed, and/or spoke out against Defendant's sexual discrimination.

92.     The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiff.

93.     In retaliation for engaging in protected activity, Defendant subjected the above-

named Plaintiff to adverse employment actions, including but not limited to, termination, discipline, disparate treatment, and harassment.

94.    Defendant's retaliation against Plaintiff for opposing sex discrimination and exercising her legal rights violates Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*.

95.    As a result of Defendant's retaliation, the above-named Plaintiff suffered extreme harm.

96.    By reason of the Defendant's illegal retaliation, the above-named Plaintiff is entitled to equitable and legal remedies available under Title VII.

<strong><u>COUNT FIVE</u></strong>

<strong>(Plaintiff Byrd's individual claim for retaliation<br>in violation of the District of Columbia Human Rights Act,<br>as amended, D.C. Code §2-1401.01 <em>et seq.</em>)</strong>

97.    Plaintiff Byrd restates and re-alleges paragraph 1 through 74 as though set forth here in full.

98.    Defendant has retaliated against Plaintiff Byrd, who protested, opposed, and/or spoke out against Defendant's sexual discrimination.

99.    The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiff.

100.    In retaliation for engaging in protected activity, Defendant subjected the above-named Plaintiff to adverse employment actions, including but not limited to, termination, discipline, disparate treatment, and harassment.

101.    Defendant's retaliation against Plaintiff for opposing sex discrimination and exercising her legal rights violates District of Columbia Human Rights Act,  as amended, D.C.

Code §2-1401.01 *et seq.*

102.    As a result of Defendant's retaliation, the above-named Plaintiff suffered extreme harm.

103.    By reason of the Defendant's illegal retaliation, the above-named Plaintiff is entitled to equitable and legal remedies available under DCHRA.

## COUNT SIX

**(Plaintiff Byrd's individual claim for retaliation
in violation of the D.C. Whistleblower Act,
D.C. Code §§ 1-615.51 *et seq.*)**

104.    Plaintiff Byrd restates and re-alleges paragraph 1 through 74 as though set forth here in full.

105.    Byrd made protected disclosures speaking out against the sexual harassment and hostile work environment to which she was subjected by, *inter alia*, reporting the discrimination to management, filing an EEO charge, and testifying at a D.C. Council hearing.

106.    In retaliation for Plaintiff Burns making protected disclosures, Defendant subjected Plaintiff to prohibited personnel actions including but not limited to, termination, discipline, transfer, reassignment, disparate treatment, and harassment.

107.    Defendant's retaliation against Plaintiff for opposing sex discrimination and exercising her legal rights violates the D.C. Whistleblower Act, D.C. Code §§ 1-615.51 *et seq.*

108.    The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiff.

109.    As a result of Defendant's retaliation, the above-named Plaintiff suffered extreme harm.

110.    By reason of the Defendant's illegal retaliation, the above-named Plaintiff is

entitled to equitable and legal remedies available under the D.C. Whistleblower Act.

## COUNT SEVEN

### (Plaintiff Byrd's individual claim for retaliation in violation of 42 U.S.C. § 1983 through the First Amendment to the U.S. Constitution)

111.    Plaintiff Byrd restates and re-alleges paragraph 1 through 74 as though set forth here in full.

112.    Byrd engaged in speech protected by the First Amendment regarding the sexual harassment and hostile work environment to which she was subjected by, *inter alia*, reporting the discrimination to management, filing an EEO charge, and testifying at a D.C. Council hearing.

113.    In retaliation for Plaintiff Byrd speaking out regarding a matter of public concern, Defendant subjected Plaintiff to adverse employment actions including, but not limited to, termination.

114.    Defendant's retaliation against Plaintiff for opposing sex discrimination and exercising her legal rights violates 42 U.S.C. § 1983, through the First Amendment to the U.S. Constitution.

115.    The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiff.

116.    Defendant's violations of Plaintiff's federal rights occurred pursuant to government policy or custom.

117.    As a result of Defendant's retaliation, the above-named Plaintiff suffered extreme harm.

118.    By reason of the Defendant's illegal retaliation, the above-named Plaintiff is entitled to equitable and legal remedies available under 42 U.S.C. § 1983.

## COUNT EIGHT

**(Plaintiff Burns' individual claim for retaliation
in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)**

119.    Plaintiff Burns restates and re-alleges paragraph 1 through 74 as though set forth here in full.

120.    Defendant has retaliated against Plaintiff Burns, who protested, opposed, and/or spoke out against Defendant's sexual discrimination.

121.    The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiff.

122.    In retaliation for engaging in protected activity, Defendant subjected the above-named Plaintiff to adverse employment actions, including but not limited to, termination, transfer, discipline, disparate treatment, and harassment.

123.    Defendant's retaliation against Plaintiff for opposing sex discrimination and exercising her legal rights violates Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*.

124.    As a result of Defendant's retaliation, the above-named Plaintiff suffered extreme harm.

125.    By reason of the Defendant's illegal retaliation, the above-named Plaintiff is entitled to equitable and legal remedies available under Title VII.

## COUNT NINE

**(Plaintiff Burns' individual claim for retaliation
in violation of the District of Columbia Human Rights Act,
as amended, D.C. Code §2-1401.01 *et seq.*)**

126.    Plaintiff Burns restates and re-alleges paragraph 1 through 74 as though set forth here in full.

127.    Defendant has retaliated against Plaintiff Burns, who protested, opposed, and/or spoke out against Defendant's sexual discrimination.

128.    The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiff.

129.    In retaliation for engaging in protected activity, Defendant subjected the above-named Plaintiff to adverse employment actions, including but not limited to, termination, transfer, discipline, disparate treatment, and harassment.

130.    Defendant's retaliation against Plaintiff for opposing sex discrimination and exercising her legal rights violates DCHRA, as amended, D.C. Code §2-1401.01 *et seq.*

131.    As a result of Defendant's retaliation, the above-named Plaintiff suffered extreme harm.

132.    By reason of the Defendant's illegal retaliation, the above-named Plaintiff is entitled to equitable and legal remedies available under DCHRA.

<u>COUNT TEN</u>

**(Plaintiff Burns' individual claim for retaliation in violation of
42 U.S.C. § 1983 through the First Amendment to the U.S.
Constitution)**

133.    Plaintiff Burns restates and re-alleges paragraph 1 through 74 as though set forth here in full.

134.    Burns engaged in speech protected by the First Amendment regarding the sexual harassment and hostile work environment to which she was subjected by, *inter alia*, reporting the discrimination to upper management and to the ARISE group through whom she had obtained employment.

135.    In retaliation for Plaintiff Burns speaking out regarding a matter of public

concern, Defendant subjected Plaintiff to adverse employment actions including, but not limited to, termination.

136.     Defendant's retaliation against Plaintiff for opposing sex discrimination and exercising her legal rights violates 42 U.S.C. § 1983, through the First Amendment to the U.S. Constitution.

137.     The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiff.

138.     Defendant's violations of Plaintiff's federal rights occurred pursuant to government policy or custom.

139.     As a result of Defendant's retaliation, the above-named Plaintiff suffered extreme harm.

140.     By reason of the Defendant's illegal retaliation, the above-named Plaintiff is entitled to equitable and legal remedies available under 42 U.S.C. § 1983.

## X.     **PRAYER FOR RELIEF**

141.     The **Representative Plaintiffs** and members of the proposed class seek the following relief:

    a.     Acceptance of jurisdiction of this case;

    b.     Permissive joinder of the individual and class-wide claims under Federal Rules of Civil Procedure Rule 20(a);

    c.     Certification of the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed class, and designation of the Representative Plaintiffs as representatives of such class and their counsel of record as class counsel;

d.      A declaratory judgment that the Defendant's employment practices challenged by the Representative Plaintiffs herein are illegal and in violation of Title VII; DCHRA, and Section 1983;

e.      A permanent injunction against Defendant's and its officers, owners, agents, successors, employees, and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, and sexual discrimination by Defendant as set forth herein;

f.      An Order of injunctive relief requiring Defendant to initiate and implement programs that (i) will provide equal employment opportunities for female employees, (ii) will remedy the effects of Defendant's past and present unlawful conduct regarding sexual harassment, and (iii) will eliminate the continuing effects of Defendant's discriminatory conduct;

g.      An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (f) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described above;

h.      An Order placing or restoring the Representative Plaintiffs and the members of the proposed class into those jobs they would now be occupying, at the appropriate adjusted wage rates and benefits levels, but for Defendant's discriminatory conduct;

i.     An Order directing Defendant to adjust the seniority, wage rates, and benefits for the Representative Plaintiff and the class members or the proposed class to the level that they would be enjoying but for Defendant's discriminatory policies, practices and procedures;

j.     An award of back pay, front pay, lost benefits, restoration of seniority, nominal, and compensatory damages, lost benefits, preferential rights to jobs, and other relief for lost pay and job benefits suffered by the Representative Plaintiffs and the class members of the proposed class;

k.     Any other appropriate equitable and legal relief to the Representative Plaintiffs and proposed class members;

l.     An award of litigation costs and expenses, including reasonable attorneys' fees, to the Representative Plaintiff and proposed class members;

m.     Pre-judgment interest;

n.     Such other and further relief as the Court may deem just and proper; and

o.     Retention of jurisdiction by the Court until such time as the Court is satisfied that Defendant has remedied the practices complained of herein and is determined to be in full compliance with the law.

142.     **Plaintiffs Garrina Byrd and Annette Burns,** in their individual capacities, seek the following relief:

a.     Acceptance of jurisdiction of this case;

b.     Permissive joinder of the individual claims under Federal Rules of Civil Procedure Rule 20(a);

c.　　Reinstatement, promotion, or placement into the highest positions which Plaintiff would have achieved but for the Defendant's retaliation, as well as any other appropriate job relief and/or other appropriate equitable relief;

d.　　A declaratory judgment that the Defendant's employment practices challenged herein are illegal and have violated the rights of Plaintiff Byrd under Title VII; DCHRA, D.C. Whistleblower Act, and Section 1983; and the rights of Plaintiff Burns under Title VII; DCHRA, and Section 1983.

e.　　An award of back pay; front pay; lost benefits; restoration of seniority; preferential rights to jobs; and/or relief for lost compensation and job benefits;

f.　　An Order directing Defendant to adjust the seniority, wage rates, and benefits for the Plaintiffs to the level that they would be enjoying but for Defendant's discriminatory and/or retaliatory policies, practices and procedures;

g.　　An award of nominal and compensatory damages against the Defendant in an amount to be determined at trial;

h.　　An award of litigation costs and expenses, including reasonable attorneys' fees;

i.　　Prejudgment interest; and

j.　　Such other and further relief as the Court may deem just and proper.

## XI.　**JURY DEMAND**

143.　The Representative Plaintiffs and proposed class members demand trial by jury of all issues triable of right to a jury.

Respectfully submitted this 16th day of October, 2006.


/s/ Eric Bachman
Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Eric K. Bachman (DC Bar No. 481993)
**WIGGINS, CHILDS, QUINN & PANTAZIS, PLLC**
7 Dupont Circle, NW, Suite 200
Washington, DC  20036
(202) 467-4123
(202) 467-4489 (facsimile)


Gary T. Brown (D.C. Bar No. 246314)
**GARY T. BROWN & ASSOCIATES, P.C**.
320 Maryland Avenue, N.E.
Suite 100
Washington, D.C. 20002
 (202) 393-4900


*Attorneys for Representative Plaintiffs and the Proposed Class Members*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of October, 2006, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


By:  ___/s/ Eric K. Bachman_____.
        *Attorney for Plaintiff*