# EXHIBIT 2

Case 1:06-cv-00522-HHK   Document 38-3   Filed 12/07/2006   Page 1 of 20

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | |
|---|---|
| **GEORGE KENNETH MCFARLANE,** **Plaintiff,** | : : : Case No. 04-CA-8506 |
| v. | : Cal. No. 8 : Judge Russell F. Canan |
| **NEW LEADERS FOR** **NEW SCHOOLS, et al.,** **Defendants.** | : : : |

### ORDER

This matter is before the Court on the following motions:

(1) Defendant New Leaders for New Schools's ("NLNS") Motion to Dismiss Plaintiff's Amended Complaint ("NLNS's Motion to Dismiss"), filed March 1, 2005, plaintiff's opposition thereto, and defendant NLNS's reply;

(2) Defendant District of Columbia Public Schools's ("DCPS") Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment ("DCPS's Motion to Dismiss or for Summary Judgment"), filed April 20, 2005, plaintiff's opposition thereto, and defendant DCPS's reply;

(3) Defendant NLNS's Motion for Sanctions and Costs ("NLNS's Motion for Sanctions"), filed May 27, 2005, and plaintiff's opposition thereto;

(4) Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss ("Defendants' Motion for a Protective Order"), filed June 21, 2005, and plaintiff's opposition thereto; and

(5) Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS ("Plaintiff's Motion for Sanctions"), filed July 13, 2005; and defendant NLNS's opposition thereto.

**(1) NLNS's Motion to Dismiss**

Plaintiff George Kenneth McFarlane ("McFarlane") was terminated from

the NLNS fellowship program and from employment with the DCPS in November



2003. Plaintiff filed a complaint against NLNS on November 3, 2004 based on his November 2003 termination. The Board of Education of the District of Columbia was also named in the original complaint. Subsequently, plaintiff filed a verified amended complaint, substituting DCPS for the Board of Education on February 2, 2005. It is this verified amended complaint ("Plaintiff's Amended Complaint") that is the subject of NLNS's Motion to Dismiss. In Plaintiff's Amended Complaint, plaintiff asserts the following claims: (1) a public policy tort by NLNS and DCPS; (2) violation by DCPS of the Whistleblower Protection Act, D.C. Code §§ 1-615.51 to1.615.59 (2001); (3) racial discrimination under the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 to 2-1403.17 (2001) by NLNS and DCPS; (4) defamation and false light by NLNS; and (5) failure of DCPS to pay all of plaintiff's wages.

    NLNS's Motion to Dismiss asserts that plaintiff has failed to state a claim for relief with regard to Count 1 (public policy tort); Count 3 (DCHRA); and Count 4 (defamation and false light). Regarding Counts 1 and 3, defendant argues that plaintiff has failed to state a claim for relief under Superior Court Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), because plaintiff has failed to allege that NLNS was an employer of plaintiff. Regarding Count 4, defendant argues that plaintiff has failed to adequately plead the elements of defamation and false light.

Standard of Review

Dismissal for failure to state a claim under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Owens v. Tiber Island Condominium Ass'n, et al.*, 373 A.2d 890, 893 (D.C. 1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). In the context of a Rule 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff, and plaintiff's allegations must be taken as true. *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C. 1979).

Counts 1 and 3: Public Policy Tort and DCHRA

An employee may bring an action for wrongful discharge in violation of public policy only against a former employer. *Adams v. George W. Cochran & Co., Inc.*, 597 A.3d 28, 34 (D.C. 1991). Likewise, the DCHRA permits claims for discrimination only against employers, employment agencies, and labor organizations. See D.C. Code § 2-1402.11(a). Under the DCHRA, an employer is: "any person who, for compensation, employs an individual . . . ; any person acting in the interest of such employer, directly or indirectly; and any professional association." § 2-1401.02. District of Columbia courts apply the following factors in determining whether an employment relationship exists: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer."

3

*Moorehead v. District of Columbia*, 747 A.2d 138, 143 (D.C. 2000) (citations omitted). The fourth factor, whether the entity has the power to control the servant's conduct, is the most important. *Judah v. Burton Reiner and Morris Mgmt.*, 744 A.2d 1037, 1039 (D.C. 2000). Two distinct entities may be deemed joint employers if they "share or co-determine those matters governing essential terms and conditions of employment." *Dunkin' Donuts Mid-Atlantic Distribution Ctr., Inc. v. NLRB*, 363 F.3d 437, 440 (D.C. Cir. 2004).

First, plaintiff has sufficiently alleged that NLNS participated in selecting and hiring plaintiff. The fact that plaintiff's contract with NLNS provided that DCPS would hire all NLNS fellows in the District of Columbia public schools, Pl's Am. Compl. ¶ 17, tends to show that NLNS participated in the hiring process for DCPS employees, at least with respect to NLNS fellows. Plaintiff also alleged he received a letter from Ms. Jacqueline Davis, Executive Director of NLNS's Washington Office, on July 16, 2003, confirming plaintiff's contract with NLNS and confirming that plaintiff would be employed by DCPS at the rate of $68,000 for the following school year. *Id.* ¶ 21. This letter similarly tends to show NLNS's participation in the hiring process. Plaintiff also avers that NLNS assigned plaintiff to Adelaide Davis Elementary School, against the wishes of that school's principal, with whom plaintiff would be working. *Id.* ¶ 28. This further evidences NLNS's participation in the selection and hiring process.

Second, DCPS paid plaintiff's salary. This factor weighs in favor of NLNS, however, it is not dispositive. Third, plaintiff sets forth several facts

tending to show that NLNS possessed the power to terminate plaintiff, through its participation in plaintiff's termination from both entities. Plaintiff claims that Ms. Davis, director of NLNS's District of Columbia office, ordered plaintiff not to return to his former school and took his DCPS identification and keys to the school. *Id.* ¶ 80. If true, this would tend to show NLNS's participation in plaintiff's termination. Further, plaintiff asserts that on November 6, 2003, "Ms. Davis terminated plaintiff's employment with NLNS and the DCPS, effective the same day." Pl.'s Am. Compl. ¶ 71. Ms. Davis then told plaintiff that he could be placed in another DCPS school, if NLNS was pleased with him. *Id.* ¶ 78. NLNS, however, was not pleased with plaintiff and therefore terminated him. *Id.* The fact that NLNS could have placed plaintiff in another DCPS school but chose not to, demonstrates NLNS's participation in plaintiff's termination from DCPS.

Fourth, the Court finds that plaintiff has alleged sufficient indicia of NLNS's power to control plaintiff's conduct. Plaintiff asserts that NLNS (along with DCPS) supervised and evaluated plaintiff. *Id.* ¶ 96. Plaintiff further alleges he attended NLNS weekly meetings and met regularly with his NLNS leadership coach, who in turn met with plaintiff's co-workers at Adelaide Davis Elementary. *Id.* ¶ 34, 46. Plaintiff's allegation that NLNS had the power to transfer him to another school within DCPS, *id.* ¶ 78, further supports plaintiff's argument that NLNS had the power to control plaintiff's conduct.

5

The fifth factor, whether the work is part of the employer's regular business, weighs in favor of NLNS, because NLNS provides leadership training and guidance, and DCPS runs the District of Columbia public schools. The Court may only grant a motion to dismiss, however, if it appears that no set of facts supporting plaintiff's claim would entitle him to relief. Here, plaintiff has alleged facts that may support plaintiff's claim that NLNS and DCPS were joint employers. As such, the Court shall deny NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) and Count 3 (DCHRA).

Count 4: Defamation and False Light

NLNS argues plaintiff has failed to adequately allege the elements of defamation and false light. Plaintiff bases his complaint for defamation and false light on three events: (1) a November 6, 2003 statement by Ms. Davis to the District of Columbia NLNS fellows that plaintiff had committed a serious offense ("November 6 Statement"); (2) a November 6 e-mail by Ms. Coles, NLNS's National Director of Leadership Coaching, to NLNS fellows in New York and Chicago ("November 6 E-mail"); and (3) a statement by NLNS or Principal Morse to third persons that plaintiff had called African American students "monkeys" and that he had terrified a pre-kindergarten student, made between November 7 and 11, 2003 ("November 7-11 Statements"). The Court shall consider each allegedly defamatory statement in turn.

Defamation requires proof of the following elements:

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's

6

>fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Oparaugo v. Watts*, 2005 D.C. App. LEXIS 501, at * 31 (D.C. Oct. 6, 2005) (citing *Crowley v. North Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997). "[A]n allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard University v. Best*, 484 A.2d 958, 988 (D.C. 1984) (quoting *Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 697 (D.C. 1970)). "If it appears that the statements are at least capable of a defamatory meaning, whether they were defamatory and false are questions of fact to be resolved by the jury." *Klayman v. Segal*, 783 A.2d 607, 607, 613 (D.C. 2001) (citations omitted).

To assert a claim for false light, plaintiff must allege: "(1) publicity; (2) about a false statement, representation, or imputation; (3) understood to be of and concerning plaintiff; and (4) which places the plaintiff in a false light that would be [highly] offensive to a reasonable person." *Id.* at 613-14.

### November 6 Statement

Defendant NLNS argues that plaintiff has not sufficiently alleged that any portion of the statement was false or defamatory. Plaintiff asserts that Ms. Davis told the D.C. NLNS fellows that plaintiff had committed a "serious offense." Pl.'s Am. Compl. ¶ 84. For the purposes of this motion, the Court assumes this statement is false, as plaintiff avers there was no good cause for the termination. *See Klayman*, 783 A.2d at 613 (citation omitted) (assuming, as alleged in the

7

complaint, "the falsity of any express or implied factual statements" made by defendant). The Court concludes this statement may also be defamatory, as it is possible that being accused of a "serious offense" may cause an administrator of an elementary school to appear odious or infamous. NLNS does not contest the remaining factors, therefore, the Court shall deny NLNS's Motion to Dismiss, regarding plaintiff's claim that the November 6 Statement was defamatory. Similarly, the Court shall deny NLNS's Motion to Dismiss plaintiff's false light claim with respect to the November 6 Statement, as it is possible that an accusation of having committed a serious offense would be highly offensive to a reasonable person.

### November 6 E-mail

NLNS argues that the November 6 E-mail contains no false statements. The Court agrees. The November 6 E-mail reads, in pertinent part: "Unfortunately, for both legal reasons and our desire to respect confidentiality, we are not in a position to discuss the details of Ken's removal from the program." Pl.'s Am. Compl. ¶ 84. It is not disputed that plaintiff was removed from NLNS, and it appears that NLNS had previously declined to discuss the details of plaintiff's termination for confidentiality reasons. Pl.'s Am. Compl. ¶ 75. Therefore, plaintiff cannot legitimately rely on the falsity of defendant's e-mail to support his claim for defamation.

Instead, plaintiff relies on defamation by implication, claiming "the email's tone and language (referring to 'legal reasons' and a desire to respect 'confidentiality') implied that Mr. McFarlane had committed a serious offense which could not be

8

explained publicly." Pl.'s Am. Compl. ¶ 86. Defamation by implication is recognized in the District of Columbia. *See White v. Fraternal Order of Police*, 909 F.2d 512, 518-19 (D.C. Cir. 1990) (stating that under District of Columbia law a true statement may be capable of a defamatory inference); *Guilford Trans. Indus. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000) (recognizing defamation by implication where defamatory statements are not expressly stated). Defamation by implication, however, requires "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory interest" in order for the statement to be deemed defamatory. *White*, 909 F.2d at 520. The *White* Court cautioned: "[i]n entertaining claims of defamation by implication, courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *Id.* at 519; *see also Guilford*, 760 A.2d at 596 (stating that defamation by implication "requires careful exegesis to ensure that imagined slights do not become the basis for costly litigation"). Here, the Court concludes there is no evidence that NLNS intended the email to be perceived in a defamatory manner and that the email is not reasonably capable of bearing a defamatory meaning. As to plaintiff's false light claim, the Court concludes that no reasonable person could perceive the November 6 E-Mail as highly offensive. Accordingly, as the e-mail is neither false, defamatory, nor highly offensive to a reasonable person, the Court shall grant NLNS's Motion to Dismiss with respect to the November 6 E-mail.

9

### November 7-11 Statements

Defendant argues that plaintiff has failed to state a claim for defamation with respect to the November 7-11 Statements because plaintiff has not alleged it was NLNS who published the statements nor has plaintiff alleged that NLNS made these statements to a specific third party. Plaintiff's complaint avers: "between November 7 and 11, 2003, NLNS or Principal Morse maliciously fabricated claims that [plaintiff] had called African American students 'monkeys' and that he had terrified a pre-kindergarten student. NLNS or Principal Morse published these false statements to third persons." Pl.'s Am. Compl. ¶ 90.

The District of Columbia has not adopted a higher pleading standard for defamation that would specifically require plaintiff to plead the time, place, content, speaker and listener of the allegedly defamatory statement. *Oparaugo*, 2005 D.C. App. LEXIS 501, at *35. Instead, the court must look at whether the complaint pleads sufficient facts to permit defendants to adequately respond. *Id.* Here, it appears that plaintiff's allegations are sufficient to allow NLNS to form a responsive pleading because plaintiff has alleged that the statements have occurred within a specific time period, and were published by either of two parties to the lawsuit. Further, taking the complaint in the light most favorable to plaintiff, it does not appear beyond a doubt that plaintiff can prove no set of facts allowing recovery. Should plaintiff fail to name a single person who heard the alleged statement after adequate discovery, summary judgment would be appropriate. *See Howard University v. Best*, 484 A.2d 958, 989 (D.C. 1984). At this stage, however, the Court concludes plaintiff

has pled adequate facts to survive a motion to dismiss with respect to the November 7-11 Statements. With respect to plaintiff's false light claim, the Court concludes plaintiff has sufficiently demonstrated publicity. Defendant does not contest the remaining factors. NLNS's Motion to Dismiss shall therefore be denied with respect to the November 7-11 Statements.

**(2) Defendant DCPS's Motion to Dismiss or for Summary Judgment**

In support of its motion, DCPS argues that plaintiff has failed to comply with D.C. Code § 12-309 (2001) and that plaintiff has failed to state a claim under the Whistleblower Protection Act, D.C. Code §§ 1-615.51 to 1.615.59 (2001). In Count 1, plaintiff asserts DCPS wrongfully discharged plaintiff in violation of public policy. In Count 2, plaintiff asserts that DCPS has violated the Whistleblower Protection Act ("WPA"). Count 3 alleges DCPS violated the DCHRA, and in Count 5, plaintiff claims that DCPS failed to pay his final paycheck.

Standard of Review

The applicable standard for a motion to dismiss was discussed earlier with respect to NLNS's Motion to Dismiss. Should the Court consider DCPS's affidavits, the Court must treat DCPS's motion as one for summary judgment. *Herron v. Veneman*, 305 F. Supp.2d 64, 70 (D.D.C. 2004). "To prevail upon a motion for summary judgment, the moving party must clearly demonstrate that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *O'Donnell v. Associated General Contractor's of America*, 645 A.2d 1084, 1086 (D.C. 1994) (citations omitted); *see Grant v. May Department Stores Co.*, 786 A.2d

11

580, 583 (D.C. 2001); *Galloway v. Safeway Stores, Inc.*, 632 A.2d 736, 738 (D.C. 1993) ("Summary judgment is appropriate only if there are no genuine issues of material fact in dispute and if the moving party is entitled to judgment as a matter of law."); *Young v. Sherwin Williams Co.*, 569 A.2d 1173, 1175 (D.C. 1990); *Holland v. Hannan*, 456 A.2d 807, 814 (D.C. 1983); *Nader v. Toledano*, 408 A.2d 31, 41 (D.C. 1979); Super. Ct. Civ. R. 56(e).

A motion for summary judgment should be granted when "(1) taking all reasonable inferences in the light most favorable to the non-moving party, (2) a reasonable juror, acting reasonably, could not find for the non-moving party, (3) under the appropriate burden of proof." *Galloway*, 632 A.2d at 738 (citing *Nader*, 408 A.2d at 42). The party moving for summary judgment has the burden of proving an "absence of material disputed issues and the right to judgment as a matter of law." *Id.* (citation omitted). Such a burden may be satisfied by demonstrating "that there is a lack of evidence to support the plaintiff's case." *Id.*

Once a party has set forth a prima facie showing, the burden shifts to the non-moving party to produce specific evidence demonstrating that a genuine issue of material fact does exist and that the moving party is not entitled to judgment as a matter of law. *Spellman v. American Security Bank, N.A.*, 504 A.2d 1119, 1122 (D.C. 1986). "Conclusory allegations by the nonmoving party are insufficient to establish a genuine issue of fact or to defeat the entry of summary judgment." *O'Donnell*, 645 A.2d at 1086 (quoting *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C. 1991)); *see Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 502 (D.C. 2002).

Section 12-309 of the District of Columbia Code sets out mandatory notification requirements that must be followed in order to maintain an action against the District of Columbia for unliquidated damages. D.C. Code § 12-309 (2001). Under § 12-309, a plaintiff must give notice in writing to the Mayor of the time, place, cause and circumstances of the damages within six months of date of injury. *Id.* This requirement can also be fulfilled by a written police report of the incident. *Id.* "Strict compliance with the terms of § 12-309 is 'mandatory as a prerequisite to filing suit against the District.'" *Chidel v. Hubbard*, 840 A.2d 689, 695 (D.C. 2004) (citations omitted). Section 12-309 is strictly construed because it "is in derogation of the common law principle of sovereign immunity." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995). The purpose of § 12-309 is "(1) to protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Id.*

Here, plaintiff argues that he gave sufficient notice to the D.C. government of plaintiff's claims by writing a letter to DCPS's general counsel. While admitting he did not address his letter to the Mayor, plaintiff asserts he "satisfied the spirit" of § 12-309. Pl.'s Opp. to DCPS's Mot. at 10. Plaintiff's argument is similar to one raised before the Court of Appeals in *Campbell v. District of Columbia*, 568 A.2d 1076, 1077 (D.C. 1990). In *Campbell*, the plaintiff argued that filing and serving a complaint, within the six-month period, on the Mayor "satisfied the intent and spirit of the notice requirement under § 12-309." *Id.* The Court of Appeals disagreed, emphasizing the

13

strict construction of § 12-309. *Id.* In light of § 12-309's strict construction, merely giving notice to DCPS's general counsel is not sufficient. Even if the District received actual notice of the potential claim through DCPS's general counsel, plaintiff's failure to satisfy § 12-309 is fatal. *See Doe v. District of Columbia*, 697 A.2d 23, 29 (D.C. 1997) ("Whether the District had actual notice of Jane Doe's potential claim is not an appropriate consideration under § 12-309."). As plaintiff has failed to give timely, written notice to the Mayor, Ex. 1, Dailey Aff., DCPS's Mot. to Dismiss or for Summ. J., the Court shall grant summary judgment in favor of DCPS with respect to Count 1 (public policy tort).

Plaintiff asserts that the DCHRA does not require compliance with § 12-309. The statute, however, clearly requires written notice to the Mayor, regardless of whether the claim is statutory or based on the common law. *See* § 12-309. It is well-established that a plaintiff with unliquidated statutory claims against the District must satisfy § 12-309, even if the particular statute under which the claim is brought does not specifically require it. *See Doe*, 697 A.2d at 25 (holding that plaintiff failed to satisfy the notice requirements of § 12-309 where plaintiff's claim was based on statutory law, the District of Columbia Prevention of Child Abuse and Neglect Act, D.C. Code §§ 6-2101 *et seq.* (1995), which did not mention § 12-309). Similarly, plaintiff's WPA claim must also fail, as plaintiff has not alleged compliance with § 12-309. The Court shall therefore grant summary judgment in favor of DCPS on Count 3 (DCHRA) and Count 2 (WPA). As such, the Court need not address DCPS's argument that plaintiff failed to establish a cause of action under the WPA.

14

Although DCPS asks the Court to dismiss all of plaintiff's claims, it does not specifically address Count 5, plaintiff's claim for unpaid wages. Plaintiff asserts DCPS did not pay his wages for the September 21, 2003 to October 4, 2003 pay period. The Court assumes plaintiff's salary is not disputed, therefore, plaintiff has a claim for liquidated damages and plaintiff need not give § 12-309 notice with respect to this claim. As such, the Court shall deny defendant's motion to dismiss with respect to Count 5.

**(3) NLNS's Motion for Sanctions**

NLNS asks the Court to award sanctions and costs against plaintiff and his counsel, Alan Banov ("Banov") based on Banov's inclusion of the November 6, 2003, e-mail informing Chicago and New York NLNS fellows that plaintiff had been terminated in the Amended Complaint.

"'The central purpose of Rule 11 is to deter baseless filing . . . and thus . . . streamline the administration and procedure of the . . . courts." *Williams et al. v. Bd. Of Trustees of Mount Jezreel Baptist Church, et al.*, 589 A.2d 901, 911 (D.C. 1991) (quoting *Cooter & Gell v. Hartmax Corp.*, 486 U.S. 384, 392 (1990)). The Court notes that excessive motions practice on the issue of sanctions will not serve Rule 11's purpose of streamlining the administration of justice. The Court hereby advises the parties that it strongly disfavors any further filings relating to the issue of sanctions while the case is still ongoing, as the Court fears an inundation with multiple tangential issues will prevent the resolution of this case.

15

Accordingly, the Court declines to rule on a motion for sanctions at this stage in the proceedings, without the benefit of a complete record. The Court shall therefore deny NLNS's Motion for Sanctions without prejudice, with leave to renew after the completion of the case.

### (4) Defendants' Motion for a Protective Order

Defendants NLNS and DCPS ask the Court to issue a protective order staying discovery pending resolution of Defendants' Motion to Dismiss. As the Court herein resolves all pending motions, Defendants' Motion for a protective order shall be denied as moot.

### (5) Plaintiff's Motion for Sanctions

Plaintiff's Motion for Sanctions seeks sanctions and costs against NLNS based on the filing of NLNS's Motion for Sanctions. For reasons set forth with respect to NLNS's Motion for Sanctions, the Court declines to rule on the parties' motions for sanctions at this juncture. Thus, Plaintiff's Motion for Sanctions shall be denied without prejudice, with leave to renew after the completion of the case.

Accordingly, it is this 10th day of November, 2005,

**ORDERED** that (1) Defendant NLNS's Motion to Dismiss Plaintiff's Amended Complaint shall be **GRANTED IN PART** and **DENIED IN PART**; and it is,

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) shall be **DENIED**; and it is

16

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 3 (DCHRA) shall be **DENIED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 4 (Defamation) shall be **GRANTED IN PART** and **DENIED IN PART**.

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 6 Statement shall be **DENIED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 6 E-mail shall be **GRANTED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 7-11 Statements shall be **DENIED**; and it is

**FURTHER ORDERED** that (2) DCPS's Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment shall be **GRANTED IN PART** and **DENIED IN PART**; and it is

**FURTHER ORDERED** that DCPS's Motion to Dismiss shall be **GRANTED** with respect to Count 1 (public policy tort), Count 2 (WPA), and Count 3 (DCHRA); and it is

**FURTHER ORDERED** that DCPS's Motion to Dismiss shall be **DENIED** with respect to Count 5 (failure to pay all plaintiff's wages); and it is

17

**FURTHER ORDERED** that (3) Defendant NLNS's Motion for Sanctions and Costs shall be **DENIED WITHOUT PREJUDICE**; and it is

**FURTHER ORDERED** that (4) Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss shall be **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that (5) Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS shall be **DENIED WITHOUT PREJUDICE**; and it is

**FURTHER ORDERED** that the parties shall agree on a proposed scheduling order, which shall be submitted to the Court within 10 days of the docketing of this Order.

*Russell F. Canan*
RUSSELL F. CANAN
JUDGE
(Signed in Chambers)

Copies to:

Alan Banov
Norberto Salinas
Alan Banov & Associates
1819 L Street, NW
Suite 700
Washington, DC 20036

18

Nicola N. Grey
Office of the Attorney General
441 4th Street, NW
6th Floor South
Washington, DC 20001

Jennifer Gardner Levy
Jamenda Briscoe
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005