Not Reported in F.Supp.  Page 1
Not Reported in F.Supp., 1983 WL 1296 (D.D.C.), Fed. Sec. L. Rep. P 99,153
**(Cite as: 1983 WL 1296 (D.D.C.))**

United States District Court; District of Columbia.
**Cross, et al.**
v.
**Price Waterhouse & Co., et al.**
**No. 80-410**

No.81-167.

April 7, 1983

PRATT, District Judge.

*1 This matter comes before the Court on plaintiffs' motion for leave to amend their complaint pursuant to Fed.R.Civ.P. 15(a) and the motion by third-party defendant I. Gordon Mosvold to dismiss the action against him for lack of subject matter and personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and (2), respectively, or, in the alternative, to dismiss the federal securities law claim on statute of limitations grounds. After full consideration of the extensive memoranda in support thereof and in opposition there-to, and the entire record herein, for the reasons stated below we must grant plaintiffs' motion for leave to amend their complaint and grant the motion by the third-party defendant, in the alternative, to dismiss the federal securities claim as barred by the applicable statute of limitations.

*Background*

This action was commenced on February 12, 1980 by the official liquidators of the Mercantile Bank & Trust Co., Ltd., Freeport, Bahamas (hereinafter Mercantile Freeport) on behalf of the Bank, its subsidiaries, its depositors and its creditors. This action, along with three others presently before this Court, arises from the insolvency of Mercantile Freeport, which was allegedly caused by questionable loan practices engaged in by the Bank over a period of several years. [FN1]

> FN1. The related actions before this Court stemming from the Bank's insolvency are: *Canadian Imperial Bank b. Ruppert, et al.,* C.A. No. 80- 02; *Cross, et al. v. Mosvold,* C.A. No. 80-411; *International Bank v. Price, Waterhouse & Co., et al.,* C.A.

The Mercantile Freeport was founded in 1962 and from its creation until 1973, a period of eleven years, it was controlled by third-party defendant I. Gordon Mosvold (Mosvold), who may be a citizen of Norway and who formerly resided in Freeport, Bahamas. [FN2] In 1973, International Bank (IB), a diversified banking and insurance holding company, which is incorporated under the laws of Arizona with its principal place of business in Washington, D.C., acquired two-thirds of the voting stock in Mercantile Freeport from Mosvold.

> FN2. Mosvold also controlled a second bank, Mercantile Bank & Trust Co. (Cayman), Ltd., located in George Town. Grand Cayman, B.W.I. (Mercantile Cayman). Mercantile Cayman did not go into liquidation and is apparently still in operation.

On May 25, 1977, Mercantile Freeport's insolvency became a matter of public record when the Bahamian Ministry of Finance suspended its license. Shortly thereafter, on December 14, 1977, the plaintiffs in this action were named as permanent official liquidators by the Supreme Court of the Bahamas and charged with winding up the corporation's affairs.

From the inception of Mercantile Freeport in 1962 until its demise in 1977, Price Waterhouse & Co., Chartered Accountants (Bahamas) (PWB), a partnership engaged in public accounting which is affiliated with Price Waterhouse International (PWI), the international network of Price Waterhouse partners, acted as independent accountants and auditors for Mercantile Freeport. According to the liquidators' complaint, during these years PWB and Mosvold, among other, misrepresented and intentionally concealed Mercantile Freeport's precarious financial condition from its depositors and creditors. This concealment was allegedly accomplished through sham transactions that overstated the Bank's assets and income.

*2 In their original complaint, the liquidators named

Not Reported in F.Supp.
Not Reported in F.Supp., 1983 WL 1296 (D.D.C.), Fed. Sec. L. Rep. P 99,153
**(Cite as: 1983 WL 1296 (D.D.C.))**

Page 2

as defendants: Price Water-house & Co. (PW-US), primarily a domestic partnership for the practice of accounting whose members are also partners in PWI, the international umbrela organization of Price Waterhouse partners; IB; George Olmstead, W. Hugh McNaughton and Henry N. Conway, Jr., former officers and directors of IB; and G. Dewey Arnold, John W. Gruber, James F. Rabenhorst and C. W. Ruppert, individual partners in PW-US. On July 11, 1980, we granted the motion of PWB to intervene as a defendant. In addition to the welter of counterclaims and cross-claims that ensnarl this case, defendant IB filed a third-party complaint against, among others, third-party defendant Mosvold.

On May 7, 1982, plaintiffs reached a settlement with defendant IB and the defendant IB officers and directors, which resulted in a dismissal of the complaint against these defendants pursuant to a Consent Order filed on May 6, 1982. The dismissal of the IB group of defendants essentially leaves the Price-Waterhouse entities and partners with primary exposure to liability in this multimillion dollar action.

A. *Motion of Plaintiff Liquidators*

*for Leave to Amend the Complaint*

Plaintiffs seek leave to file a first amended complaint to charge PWB with common law fraud, conspiracy to defraud Mercantile Freeport and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* (1976 & Supp. V 1981) (RICO). In addition, plaintiffs seek to charge the originally named defendants, PW-US and the individually-named partners in PW-US, with negligent supervision of the activities of PWB.

In determining whether or not to grant leave to amend, a district court is under the injunction contained in Fed.R.Civ.P. 15(a) that "leave shall be freely given when justice so requires." Rule 15 reflects "one of the basic policies of the federal rules - that pleadings are not an end in themselves but are only a means to assist the presentation of a case to enable it to be decided on the merits." 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1473 at 376 (1971) (hereinafter Wright & Miller). The Supreme Court, in emphasizing the policy of liberal leave to amend that lies behind Rule 15, stated:

> [i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

With these guidelines in mind, we turn to the additional claims which plaintiffs seek to add by their amended complaint.

1. *Claim of Negligent Supervision Against PW-US and the Named Individual Partners in PW-US*

Plaintiffs seek to charge PW-US and the individual defendant partners in PW-US with failure to supervise the accounting practices of PWB. The plaintiffs contend that PW-US' supervisory responsibilities over PWB were established only after the original complaint was filed and during the "tedious seventeen month [discovery] effort." Therefore, according to plaintiffs, they could not have alleged PW-US' failure to fulfill those responsibilities at the time the original complaint was filed. Thus, plaintiffs argue that this proposed addition to the complaint cannot be barred on the grounds of either undue delay or bad faith. Finally, they submit that since this new count will not require substantial additional discovery, it should also not be barred on the grounds of undue prejudice.

**\*3** Defendants PW-US and the individual partners in PW-US oppose the addition of a negligent supervision count on the ground that plaintiffs unduly delayed proposing such an amendment because plaintiffs were aware of evidence suggesting a supervisory relationship as early as May, 1981. As further grounds of opposition, defendants suggest that the negligent supervision count smacks of bad faith and dilatory motive, since the Court previously granted plaintiffs' motion for partial summary judgment on Counts VIII and IX, holding PW-US vicariously liable as a matter of law for negligence or breach of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1983 WL 1296 (D.D.C.), Fed. Sec. L. Rep. P 99,153
**(Cite as: 1983 WL 1296 (D.D.C.))**

Case 1:06-cv-00522-HHK   Document 44-2   Filed 05/11/2007   Page 3 of 5

contract, if any, of PWB in connection with the audits it performed of Mercantile Freeport. [FN3] Finally, according to defendants, the negligent supervision claim will only add "confusion and "duplication" to this action.

> FN3. Order of September 28, 1982.

For several reasons, we cannot accept defendants' arguments that leave to amend should be denied. Although plaintiffs propose these amendments some three years after this action was commenced it is well-established that delay is not sufficient by itself to warrant denial of leave to amend. *See SEC v. National Student Marketing Corp.,* 73 F.R.D. 444, 447 (D.D.C. 1977). A party opposing leave to amend must demonstrate that the delay works prejudice to the preparation of his defense. *Id.,* at 447-48; *see also* 6 Wright & Miller, *supra,* § 1488 at 439.

As evidence of prejudice defendants assert that the introduction of a new issue will require the expenditure of additional time and labor in discovery and that the issue of PW-US' negligent supervision, when coupled with the Court's ruling that PW-US is vicariously liable for the misconduct of PWB, will baffle the jury. Neither of these factors provides sufficient evidence of prejudice. First, amended complaints nearly always entail some additional time and labor. In this protracted and complicated litigation, in which discovery has spanned a period of years, the additional labor and time, if any, associated with this count are marginal and thus not prejudicial.

Secondly, defendants' argument that the injection of this new issue into the case will confuse the jury is not a valid consideration in weighing leave to amend, no more than it would be a reason to prohibt alternative theories of liability in a complaint or inconsistent defenses in an answer. Furthermore, any confusion associated with the admixture of issues is more properly addressed at trial, perhaps through the device of limiting instructions to the jury.

2. *Proposed Counts of Common Law*

*Fraud, Conspiracy to Defraud and*

*Violations of RICO Against*

*Defendant PWB*

For reasons similar to those articulated above in connection with the proposed negligent supervision count, against PW-US and it partners, we must also grant the plaintiffs' motion to amend with respect to the proposed common law counts against defendant PWB. Since the delay associated with these claims and the limited additional time and labor involved are not sufficient to demonstrate prejudice, leave must be granted.

**\*4** With respect to the two proposed RICO counts against defendant PWB, we are not persuaded by defendant PWB that the addition of these counts is sufficiently prejudicial to warrant denial to leave to **amend**. Defendant PWB contends that "the addition of such claims multiply threefold the potential monetary exposure of PW-Bahamas [PWB]." Memorandum of Points and Authorities of Defendant PWB in Opposition to Plaintiffs' Motion for Leave to **Amend**, at 1- 2. It is beyond peradventure, however, that the mere threat of greater **liability** stemming from an **amended** complaint is insufficient to justify refusing leave to **amend**. 6 Wright and Miller, *supra,* § **1487** at 431.

Defendant PWB also attempts to oppose plaintiffs' motion for leave to amend on the ground that the proposed RICO claims are futile. While futility may be a proper ground to deny leave to amend, we believe that defendant PWB's inquiry into the merits of plaintiffs' RICO counts is misdirected and inappropriate in the context of evaluating leave to amend. A moving party should not be denied leave to amend his complaint merely because the proposed claim is unlikely to succeed on the merits, unless the claim is clearly frivolous. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith,* 644 F.2d 690, 695 (8th Cir. 1981). Although plaintiffs' RICO claims may add nothing of substance to the alleged claim of common law fraud and therefore may ultimately be without merit, we are not willing to prevent plaintiffs from asserting those claims. [FN4]

> FN4. Although we find it inappropriate to reach the merits of plaintiffs RICO claims in the context of denying a motion to file an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

amended complaint, we take notice that the attempt to cloak common law fraud in RICO garb is frequently unsuccessful. *See* Adair v. Hunt International Resources Corp., 526 F. Supp. 736 (N.D. Ill. 1981). The legislative history behind RICO "forcefully supports the view that the major purpose of [RICO] is to address the infiltration of legitimate business by organized crime." United States v. Turkette, 452 U.S. 576, 591 (1981). Thus, courts have limited the otherwise expansive language of RICO's civil enforcement provisions by strictly applying the statute's requirement that a civil plaintiff must demonstrate injury to his business resulting from a specified RICO violation not merely from the predicate acts, such as mail fraud, which are required under the statute to show a "pattern of racketeering activity." *Moss v. Morgan Stanley, Inc.,* 533 F. Supp. 1347, 1363 (S.D. N.Y. 1983).

B. *Motion of Third-Party Defendant*

*Mosvold to Dismiss Third-Party*

*Complaint*

Counts I and II of IB's third-party complaint against third-party defendant Mosvold,and others, allege that Mosvold violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the Exchange Act) and SEC Rule 10b-5, 17 C.F.R. § 240: 10b-5, and that the conduct underlying this securities law claim also constitutes common law fraud, respectively. Mosvold moved to dismiss these counts on the grounds that this Court lacks subject matter jurisdiction over the claims and personal jurisdiction over Mosvold, or, in the alternative, to dismiss the federal securities law claim as barred by the statute of limitations.

**\*5** Mosvold argues that this Court lacks subject matter jurisdiction because, among other reasons, the acquisition of Mercantile Freeport falls within the judicially-created "sale of business" exception to the definition of "security" under the federal securities law and because IB fails to allege sufficient activities in the United States to trigger extraterritorial application of federal securities law. We find it unnecessary, however, to reach these admittedly thorny and contentious issues lying within the domain of securities law, because we conclude that defendant IB's Section 10(b) claim is time-barred under the local statute of limitations.

Implied causes of action under federal securities law are governed by the forum state's statute of limitations. *See* Ernst & Ernst v. Hochfelder, 425 U.S. 185, 210 n.29 (1976). Under D.C.Code Ann. § 2-2613(e), which embodies the local statute of limitations governing blue sky actions, an action must be brought within two years of the date that the claim arose. Forrestal Village, Inc. v. Graham, 551 F.2d 411 (D.C.Cir. 1977).

When applying the statute of limitations to an action for fraud, such as the present case, we apply the doctrine of equitable tolling. The statute of limitations is suspended until the plaintiff discovers, or should have discovered through the exercise of reasonable diligence, the fraudulent activity in question. Fitzgerald v. Seamans, 553 F.2d 220, 228 (D.C.Cir. 1978).

In this case, third-party plaintiff IB was sufficiently placed on notice of third-party defendant Mosvold's alleged fraud when Mercantile Freeport was publicly declared insolvent. The Bahamian Ministry of Finance suspended Mercantile Freeport's license to do business on May 25, 1977 and the Bahamian courts appointed permanent liquidators to wind up its affairs on December 14, 1977. These events, in our view, must be considered vivid "code blue" factors creating an unmistakable inference that IB was aware of Mosvold's possible fraud. *Cf.* Wachovia Bank & Trust Co. v. National Student Marketing Corp., 650 F.2d 342, 343 (D.C. Cir. 1980), *cert. denied,* 452 U.S. 954 (1981). Furthermore, the fact that on March 2, 1978, IB commenced a separate Section 10(b) action relating to Mercantile Freeport's failure against Mosvold's legal counsel in the United States District Court for the Middle District of Florida conclusively establishes that IB had notice of Mosvold's alleged fraud more than two years prior to the commencement of this third-party action.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00522-HHK   Document 44-2   Filed 05/11/2007   Page 5 of 5

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1983 WL 1296 (D.D.C.), Fed. Sec. L. Rep. P 99,153
**(Cite as: 1983 WL 1296 (D.D.C.))**

Although IB's claim under Section 10(b) of the Exchange Act is therefore time-barred, IB's second count charges Mosvold with common law fraud. IB alleges that we have subject matter jurisdiction over this count independently of the federal securities law claim on the basis of diversity of citizenship, 28 U.S.C. § 1332. While IB admits that it failed to plead Mosvold's citizenship in its third-party complaint, Third-Party Complaint P 17, in view of Mosvold's apparent transience, we take notice that Mosvold is not a citizen of the United States and that IB is an Arizona corporation with its principal place of business in Washington, D.C. Thus, this presumptive diversity of citizenship provides an adequate basis for this Court to exercise subject matter jurisdiction.

**\*6** In addition to lack of subject matter jurisdiction, Mosvold advances lack of *in personal* jurisdiction as ground for dismissal. Although our conclusion that the Section 10(b) claim is time-barred renders moot the discussion of personal jurisdiction under Section 27 of the Exchange Act, we find an alternate basis for personal jurisdiction under the D.C. Long Arm Statute, D.C.Code Ann. § 13-423(a)(1)(1981).

It is well-established that the reach of the "transacting any business' clause of the D.C.Long Arm is coextensive with the reach of the due process clause. *Mouzavires v. Baxter,* 434 A.2d 988 (D.C. 1981) (per curiam), *cert. denied,* 455 U.S. 1006 (1982). Mosvold personally and by his agents traveled to the District of Columbia to negotiate the sale of Mercantile Freeport to IB. In addition, Mosvold served thereafter on the Board of Directors of IB from 1973 to 1976. IB alleges that it suffered damages by reason of Mosvold's purposeful acts in the District of Columbia. On these facts, we agree with IB that it has made out sufficient "minimum contacts" between Mosvold and the District to comport with due process and thus permit us to exercise *in personam* jurisdiction over Mosvold.

Accordingly it is by the Court this 7th day of April, 1983,

ORDERED that plaintiffs' motion for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a) be and the same hereby is granted, and it is

FURTHER ORDERED that the motion by third-party defendant I. Gordon Mosvold, in the alternative, to dismiss the federal securities law claim on the ground of the statute of limitations, be and the same hereby is granted.

Not Reported in F.Supp., 1983 WL 1296 (D.D.C.), Fed. Sec. L. Rep. P 99,153

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.