UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARRINA BYRD, ANNETTE BURNS, DEMERA GASKINS, and CARMEN JEAN-BAPTISTE, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 06-0522 (HHK) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## THIRD AMENDED COMPLAINT

### Nature of Complaint

1.  Garrina Byrd, Annette Burns, Demera Gaskins, and Carmen Jean-Baptiste (hereinafter referred to as "Plaintiffs"), who are former employees of the government of the District of Columbia Department of Parks and Recreation (hereinafter "District of Columbia" or "Defendant"), bring this action to address systemic discrimination and retaliation that existed and continues to exist at the Defendant's Department of Parks and Recreation. This systemic discrimination and retaliation includes, but is not limited to, a sexually hostile work environment, *quid pro quo* discrimination, and/or retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"); the D.C. Human Rights Act, as amended; D.C. Code §2-1401.01 *et seq.* ("DCHRA"), 42 U.S.C. §1983 ("Section 1983"), and/or the D.C. Whistleblower Act, D.C. Code §§1-615.51, *et seq.*

2.  The Plaintiffs seek declaratory, injunctive, and other equitable relief, as well as nominal and compensatory damages at law.

3. Defendant has continuously engaged in, condoned, and ratified systemic harassing conduct resulting in a sexually hostile work environment. Common examples of this harassment include, but are not limited to: (1) inappropriate physical touching of female employees by a male manager(s) and/or supervisor(s); (2) management's *quid pro quo* solicitation to female employees, which has the purpose or effect of unreasonably interfering with work performance or creating an intimidating, hostile, or offensive working environment; (3) repeatedly ignoring or failing to remedy complaints and/or evidence of sexual harassment, which has created an atmosphere discouraging victims from coming forward with complaints because of the futility of doing so; and (4) requiring female employees to work in an environment in which they were either directly harassed or forced to work in an environment where harassment of other women was pervasive.

4. Defendant has also engaged in, condoned, and ratified systemic harassing conduct in the form of *quid pro quo* threats from supervisory and/or management personnel. This conduct includes, but is not limited to, the following: (1) unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that are either explicitly or implicitly made a term or condition of the employee's employment; and (2) submission to or rejection of such conduct by a female employee is used as the basis for employment decisions affecting the employee.

5. As a result, the harassing and discriminatory conduct described herein constitutes a continuing violation of Title VII, DCHRA, and Section 1983.

## Jurisdiction and Venue

6. This Court has jurisdiction over the claims alleged herein pursuant to 42 U.S.C. § 2000e-(5)(f)(3), 28 U.S.C. § 1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

7.      Proper venue is in this Court as all relevant events alleged herein have occurred within the District of Columbia.  *See* 42 U.S.C. § 2000e-(5)(f)(3).

## Exhaustion of Administrative Remedies

8.      Plaintiff Byrd filed and pursued her discrimination complaint with the government of the District of Columbia.  Byrd also filed a timely charge with the United States Equal Employment Opportunity Commission ("EEOC").  Byrd then sought and obtained a Notice of Right to Sue from the EEOC.  This action was filed within ninety (90) days of receipt of that notice.  Plaintiff Burns likewise filed a charge or complaint of discrimination with the District of Columbia and the EEOC and filed suit within ninety (90) days of receipt of her Notice of Right to Sue.  Plaintiff Jean-Baptiste has likewise pursued administrative exhaustion of her claims and is in the process of perfecting these claims.

## Parties

9.      **Plaintiff Garrina Byrd** was an employee of the Defendant District of Columbia's Department of Parks and Recreation from 2001 through December 31, 2005.  Byrd is a resident of the District of Columbia.

10.     **Plaintiff Annette Burns** was an employee of the Defendant District of Columbia's Department of Parks and Recreation from approximately 2000 through approximately 2004.  Burns is now a resident of North Carolina.

11.     **Plaintiff Demera Gaskins** was an employee of the Defendant District of Columbia's Department of Parks and Recreation from approximately 2004 through 2005.  Gaskins is a resident of the District of Columbia.

12. **Plaintiff Carmen Jean-Baptiste** was an employee of the Defendant District of Columbia's Department of Parks and Recreation from approximately April 2006 to approximately October 2006. Jean-Baptiste is a resident of the District of Columbia.

13. **Defendant District of Columbia** is a separate legal entity with responsibility for insuring that its employees have a workplace free of unlawful discrimination. Defendant District of Columbia is the municipal government for the District of Columbia.

### FACTS SUPPORTING THE PLAINTIFFS' ALLEGATIONS OF DISCRIMINATION AND RETALIATION

#### i. Plaintiff Byrd

14. In July 2001, Plaintiff Byrd was hired by Defendant through Project Empowerment, the District of Columbia's Welfare to Work program.

15. Plaintiff met with Darnell Thompson, Director of Facilities Management, about obtaining an office position.

16. During Byrd's interview for the office job with Thompson, Thompson told her that if she wanted a job, she had to lift up her shirt. Byrd was offended and startled. Thompson asked her again, making it clear that her job depended on whether she gave into his demands. Byrd finally gave in and received a 13-month appointment in 2002.

17. Plaintiff Byrd started working in Thompson's office, where he regularly touched her inappropriately and engaged in other harassing behavior. This behavior by Defendant's manager continued through at least March 31, 2005.

18. Plaintiff Byrd reported the harassment to Joyce Roberts, a supervisor. Roberts told Byrd to "tell him to stop" but did nothing else in response to Plaintiff's complaints. Byrd told Thompson to stop, but he did not.

19. In 2005, Plaintiff reported the harassment to another supervisor, Julie Banks.

4

20. Byrd also reported her manager's harassment to other managers and officials. However, no one did anything to stop Thompson's harassment or to lessen the hostility in the workplace created by Thompson's behavior, which was further amplified by Defendant's lack of response to Byrd's complaints.

21. Byrd was constantly afraid for her job security due to the harassment and *quid pro quo* demands. Although most of the harassment occurred in Thompson's office, he would also repeatedly call her on her cell phone late at night and on weekends, asking her for sex, dates and other inappropriate requests.

22. Each time that Byrd's term employment neared its end date, Thompson would escalate his demands for sexual favors in exchange for renewing her employment contract. Thompson eventually required Plaintiff to have sexual intercourse with him or lose her D.C. government position.

23. These behaviors, creating a hostile environment based on sexual harassment, continued at least until March 31, 2005, and interfered with Byrd's ability to do her job.

24. On April 5, 2005, Plaintiff Byrd filed a charge with the Department of Parks and Recreation's EEO office. It was immediately dismissed and no investigation of her complaint was performed.

25. The following day, Byrd filed a charge with Defendant's Office of Human Rights.

26. In November, 2005, Byrd was called into a meeting with a high level manager and Roberts, where Byrd's ability to perform her job was questioned. Byrd was asked about basic competencies in a number of areas in a position that she had held for over three years without complaints about her performance.

27. In December 2005, Byrd testified about the sexual harassment at a D.C. Council hearing regarding the Department of Parks and Recreation.

28. On Friday, December 30, 2005, the last work day before the expiration of Plaintiff's term appointment, Byrd received notification of her termination after she left work, effective the next day.

29. The actions of Byrd's supervisors and their behavior toward Plaintiff created a hostile work environment which interfered with her ability to perform her duties.

30. Adverse actions suffered by Plaintiff Byrd were a direct result of Defendant's discrimination based on her sex as well as a result of her protected conduct, which included, but was not limited to, her complaints about discrimination and her testimony before the D.C. Council.

31. Byrd is aware of numerous additional female employees who worked at Defendant's Department of Parks and Recreation and who were subjected to a hostile work environment and/or *quid pro quo* harassment.

32. As a result of Defendant's actions and/or lack thereof, Plaintiff has suffered extreme harm.

### ii. **Plaintiff Burns**

33. Between 2000 and 2004, Burns was an employee of the District of Columbia's Department of Parks and Recreation.

34. During Burns' employment she was subjected to routine sexual harassment by her manager, Darnell Thompson, including, but not limited to, his sexual assault of Burns when she was eight months pregnant and other physical and verbal sexual harassment that occurred on a regular basis. She also suffered retaliation.

35. In 2002, Burns reported Thompson's sexual harassment to her supervisor, James Boone. Boone responded that he "saw it coming" and stated that other females made similar complaints about Thompson.

36. Boone claimed he would speak with Thompson about her complaint, but it is unclear whether that conversation ever occurred.

37. Subsequently, Burns did not see any change in Mr. Thompson's behavior; rather, it got worse.

38. Burns had a meeting with Thompson in his office in 2002, about a work issue. When the meeting ended, Burns got up to leave but Thompson blocked her exit. Thompson grabbed Burns and forced her to lean back onto a table. Thompson then grabbed her left breast and tried to force his tongue into her mouth. Burns repeatedly told him to stop and tried to push him away. At that time, Burns was eight months pregnant and quite limited due to her condition. Burns was very frightened and completely dominated physically.

39. Immediately thereafter, Burns reported Thompson's sexual assault to Boone.

40. Burns also complained to Kennedy Kabo, who was Thompson's supervisor.

41. Burns also complained about the sexual harassment to Kabo's supervisor, Neil Albert, who was the Director of Department of Parks and Recreation ("DPR"). Burns also informed Albert and another official, Neil Stanley, that she knew of other female employees who had been sexually harassed by Thompson.

42. Burns provided the details of Thompson's harassment, as well as other female employees she had been told were also harassed, to Albert's staff.

43. In addition, Burns complained about the harassment to the ARISE program (the group through which she initially received the DPR job) and spoke with DeCarlo Washington

and Leslie Green. Washington told Burns that other female employees had complained about sexual harassment by Thompson.

44. Green drafted a report about Burns' complaint and told her that the report would be given to Albert. The ARISE Report was then signed by Plaintiff Burns.

45. Subsequently, in or about May of 2002, Burns was informed that both Washington and Green met with Albert, who was still the Director of DPR, about Thompson's sexually harassing behavior and also provided Albert with a copy of the report regarding Burns' complaints.

46. Several days later, Albert telephoned Burns' home. He claimed that Thompson would be removed from his position.

47. During this same time period, Mr. Albert met with the coordinator for the Department of Employment Services about the complaints of sexual harassment from women in the welfare to work program.

48. When Burns returned to work in August 2002 from leave, Thompson was still employed as the Chief of Maintenance.

49. Burns, on the other hand, was transferred to the Randall Recreation Center.

50. Burns was terminated from DPR in 2004.

51. The union reported complaints about sexual harassment that it received from other female employees to District of Columbia City Council Member Kathy Patterson.

52. In 2005, Union President Deborah Jackson, reported to the District of Columbia City Council that Thompson had been allowed to sexually harass women in the workplace and that the union was aware of at least 3-6 woman who had come forward to make such allegations.

53. Ms. Jackson reported that, although the Union had reported the incidents to Neil Stanley, then acting Director of DPR, no investigation had occurred. The Union further reported that all those who had complained of sexual harassment were "summarily dismissed from employment because they were temporary employees."

54. During the entire time Plaintiff Burns worked at DPR, she was never trained or otherwise informed about how to file an EEO complaint. Further, Burns did not see any posters or information regarding the EEO process or sexual harassment policies, and she did not receive any training about sexual harassment or what to do if such harassment occurred.

55. Indeed, Ms. Burns was never informed by anyone at DPR that a separate process for filing an EEO complaint even existed for District of Columbia government employees nor was Ms. Burns ever informed about sexual harassment and what to do when it occurred.

56. Since Ms. Burns still had not been informed about any EEO reporting process, she assumed that she had told the relevant supervisor(s) about the problems with Mr. Thompson's behavior.

57. As a result of Defendant's conduct and/or lack thereof, Burns has suffered extreme harm.

### iii. **Plaintiff Gaskins**

58. Between approximately 2004 and 2005, Demera Gaskins was an employee of the District of Columbia's Department of Parks and Recreation.

59. During Gaskins' employment she was subjected to routine and extreme sexual harassment by her manager, Darnell Thompson, including, but not limited to, sexual intercourse and other physical harassment, including groping and kissing, as well as verbal harassment that occurred on a regular basis. She was also subjected to retaliation.

60. In approximately 2004, Gaskins reported Thompson's sexual harassment to her supervisor, Richardson (FNU). Gaskins is not aware of any steps that were taken to remedy the situation.

61. Subsequently, Gaskins did not see any change in Mr. Thompson's behavior.

62. In approximately 2005, Thompson again physically groped and kissed Gaskins while she was working. Gaskins told Thompson to stop. Shortly thereafter, Gaskins was terminated in 2005.

63. After her termination, Gaskins also complained about the sexual harassment to Neil Albert and/or Neil Stanley.

64. During the entire time Plaintiff Gaskins worked at DPR, she was never trained or otherwise informed about how to file an EEO complaint. Further, Gaskins did not see any posters or information regarding the EEO process or sexual harassment policies, and she did not receive any training about sexual harassment or what to do if such harassment occurred.

65. Indeed, Gaskins was never informed by anyone at DPR that a separate process for filing an EEO complaint even existed for District of Columbia government employees nor was Gaskins ever informed about sexual harassment and what to do when it occurred.

66. Since Gaskins still had not been informed about any EEO reporting process, she assumed that she had told the relevant supervisor(s) about the problems with Mr. Thompson's behavior.

67. As a result of Defendant's conduct and/or lack thereof, Gaskins has suffered extreme harm.

### iv.  **Plaintiff Jean-Baptiste**

68. In 2006, Carmen Jean-Baptiste was an employee of the District of Columbia's Department of Parks and Recreation.

69. During Jean-Baptiste's employment she was subjected to sexual harassment including, but not limited to, inappropriate physical touching and offensive verbal harassment that occurred on a regular basis. This harassment was perpetrated by a male supervisor.

70. The harassment involved routinely occuring comments including, but not limited to, asking whether Jean-Baptiste "had somebody"; whether she was married or single; pointing to Jean-Baptiste's vaginal area and stating something to the effect of "I want some of that for my birthday"; and asking Jean-Bapiste if she could cook and to bring him breakfast in the morning.

71. This supervisor also asked Jean-Baptiste to go on dates with him and invited her to spend the night with him in Atlantic City.

72. After Jean-Baptiste refused to give in to his advances, the supervisor began to unfairly criticize her work, treat her differently with respect to job assignments, and threatened to discontinue her employment.

73. Jean-Baptiste reported the sexual harassment to the male Pool Manager. Although the Manager assured Jean-Baptiste that he would remedy the situation, Jean-Baptiste saw no change in the harasser's behavior.

74. Jean-Baptiste then complained to the Evening Pool Manager, a female.

75. Shortly thereafter, the male supervisor who had been harassing Jean-Baptiste asked Jean-Baptiste why she had complained to the Evening Pool Manager about his conduct.

76. In October 2006, Jean-Baptiste complained again, this time to the relevant Department officials and the EEOC.

77. Jean-Baptiste also spoke with Neil Albert about her employment situation.

78. Jean-Baptiste was terminated by Defendant in October 2006.

79. As a result of Defendant's conduct and/or lack thereof, Jean-Baptiste has suffered extreme harm

### Joinder of Claims

80. In accordance with Fed. R. Civ. P. 20, the claims of the Plaintiffs are subject to joinder because they arise out of the same series of transactions or occurrences and involve common questions of law or fact. For example, the Plaintiffs all worked in the Defendant's Department of Parks and Recreation, many of the Plaintiffs allege discrimination and/or retaliation based on the conduct of the same supervisor(s), all Plaintiffs complained about the discrimination to many of the same supervisors and/or officials within the Department, each of the Plaintiffs' employment was terminated within close temporal proximity to each other, and all Plaintiffs allege violations of Title VII, DCHRA, and Section 1983.

### Causes of Action

### Count One

**(Plaintiffs' discrimination claims regarding hostile work environment and/or *quid pro quo* claims in violation of Title VII, 42 U.S.C. §2000e *et seq.*)**

81. The Plaintiffs restate and re-allege paragraphs 1 through 79 as though set forth here in full.

82. Defendant has engaged in systemic gender discrimination against the Plaintiffs and other female employees by subjecting them to a hostile work environment, harassment, and/or *quid pro quo* discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, as amended.

83. Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiffs.

84. By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout the liability period, the Plaintiffs are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

85. By reason of Defendant's discrimination, the Plaintiffs are entitled to legal and equitable remedies available under Title VII.

## Count Two

**(Plaintiffs' discrimination claims regarding hostile work environment and/or *quid pro quo* claims in violation of District of Columbia Human Rights Act, as amended, D.C. Code §2-1401.01 *et seq.*)**

86. The Plaintiffs restate and re-allege paragraphs 1 through 79 as though set forth here in full.

87. Defendant has engaged in systemic gender discrimination against the Plaintiffs and other female employees by subjecting them to a hostile work environment, harassment, and/or *quid pro quo* discrimination in violation of the District of Columbia Human Rights Act, as amended, D.C. Code § 2-1401.01 *et seq*.

88. Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiffs.

89. By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout the liability period, the Plaintiffs are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

90. By reason of Defendant's discrimination, the Plaintiffs are entitled to legal and equitable remedies available under the DCHRA.

### Count Three

**(Plaintiffs' claims of violations of 42 U.S.C. § 1983, through the Fifth Amendment to the U.S. Constitution)**

91. The Plaintiffs restate and re-allege paragraphs 1 through 79 as though set forth here in full.

92. Defendant's failure to respond adequately to complaints and/or evidence of sexual harassment, as well as its failure to adequately train, supervise, hire, and/or retain its employees constitutes deliberate indifference toward the Fifth Amendment constitutional rights of the Plaintiffs.

93. By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout the liability period, the Plaintiffs are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

94. Defendant's violations of the federal rights of Plaintiffs occurred pursuant to government policy or custom.

95. By reason of Defendant's discrimination, the Plaintiffs are entitled to legal and equitable remedies available under 42 U.S.C. § 1983.

### Count Four

**(Plaintiffs' claims for retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)**

96. Plaintiffs restate and re-allege paragraph 1 through 79 as though set forth here in full.

97. Defendant has engaged in systemic retaliation against Plaintiffs and other employees, who protested, opposed, and/or spoke out against Defendant's sexual discrimination.

98. The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiffs.

99. In retaliation for engaging in protected activity, Defendant subjected the Plaintiffs to adverse employment actions.

100. Defendant's retaliation against Plaintiffs for opposing sex discrimination and/or exercising their legal rights violates Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*.

101. As a result of Defendant's retaliation, the Plaintiffs suffered extreme harm.

102. By reason of the Defendant's illegal retaliation, the Plaintiffs are entitled to equitable and legal remedies available under Title VII.

## Count Five

### (Plaintiffs' claims for retaliation in violation of the District of Columbia Human Rights Act, as amended, D.C. Code §2-1401.01 *et seq.*)

103. Plaintiffs restate and re-allege paragraph 1 through 79 as though set forth here in full.

104. Defendant has engaged in systemic retaliation against Plaintiffs and other employees who protested, opposed, and/or spoke out against Defendant's sexual discrimination.

105. The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiffs.

106. In retaliation for engaging in protected activity, Defendant subjected the Plaintiffs to adverse employment actions.

107. Defendant's retaliation against Plaintiffs for opposing sex discrimination and/or exercising their legal rights violates District of Columbia Human Rights Act, as amended, D.C.

Code §2-1401.01 *et seq*.

108. As a result of Defendant's retaliation, the Plaintiffs suffered extreme harm.

109. By reason of the Defendant's illegal retaliation, the Plaintiffs are entitled to equitable and legal remedies available under DCHRA.

## Count Six

### (Plaintiffs' claims for retaliation in violation of 42 U.S.C. § 1983 through the First Amendment to the U.S. Constitution)

110. Plaintiffs restate and re-allege paragraph 1 through 79 as though set forth here in full.

111. The Plaintiffs engaged in speech protected by the First Amendment regarding the sexual harassment and hostile work environment to which they were subjected by, *inter alia*, reporting the discrimination to management, filing EEO charges, and/or testifying at a D.C. Council hearing.

112. Defendant has engaged in systemic retaliation against Plaintiffs and other employees for speaking out regarding a matter of public concern, and subjected Plaintiffs to adverse employment actions including, but not limited to, termination.

113. Defendant's retaliation against Plaintiffs for opposing sex discrimination and exercising their legal rights violates 42 U.S.C. § 1983, through the First Amendment to the U.S. Constitution.

114. The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiffs.

115. Defendant's violations of Plaintiffs' federal rights occurred pursuant to government policy or custom.

116. As a result of Defendant's retaliation, the Plaintiffs suffered extreme harm.

16

117. By reason of the Defendant's illegal retaliation, the Plaintiffs are entitled to equitable and legal remedies available under 42 U.S.C. § 1983.

### Count Seven

**(Plaintiffs Byrd's and Jean-Baptiste's claims for retaliation in violation of the D.C. Whistleblower Act, D.C. Code §§ 1-615.51 *et seq.*)**

118. Plaintiffs Byrd and Jean-Baptiste restate and re-allege paragraph 1 through 79 as though set forth here in full.

119. Byrd and Jean-Baptiste made protected disclosures speaking out against the sexual harassment and hostile work environment to which they were subjected by, *inter alia*, reporting the discrimination to management, filing an EEO charge, and/or testifying at a D.C. Council hearing.

120. In retaliation for Plaintiffs Byrd and Jean-Baptiste making protected disclosures, Defendant subjected them to prohibited personnel actions including but not limited to, termination, discipline, transfer, reassignment, disparate treatment, and/or harassment.

121. Defendant's retaliation against Plaintiffs Byrd and Jean-Baptiste for opposing sex discrimination and/or exercising their legal rights violates the D.C. Whistleblower Act, D.C. Code §§ 1-615.51 *et seq.*

122. The Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the above-named Plaintiffs.

123. As a result of Defendant's retaliation, the above-named Plaintiffs suffered extreme harm.

124. By reason of the Defendant's illegal retaliation, the above-named Plaintiffs are entitled to equitable and legal remedies available under the D.C. Whistleblower Act.

**Prayer for Relief**

125. Plaintiffs seek the following relief:

a. Acceptance of jurisdiction of this case;

b. Permissive joinder of their claims under Federal Rules of Civil Procedure Rule 20(a);

c. Reinstatement, promotion, or placement into the highest positions which Plaintiffs would have achieved but for the Defendant's discrimination and/or retaliation, as well as any other appropriate job relief and/or other appropriate equitable relief;

d. A declaratory judgment that the Defendant's employment practices challenged herein are illegal and have violated the rights of Plaintiffs under Title VII, DCHRA, D.C. Whistleblower Act, and/or Section 1983;

e. A permanent injunction enjoining the Defendant, their agents, successors, and employees from continuing to violate Title VII, DCHRA, D.C. Whistleblower Act, and/or Section 1983;

f. An award of back pay; front pay; lost benefits; restoration of seniority; preferential rights to jobs; and/or relief for lost compensation and job benefits;

g. An Order directing Defendant to adjust the seniority, wage rates, and benefits for the Plaintiffs to the level that they would be enjoying but for Defendant's discriminatory and/or retaliatory policies, practices and procedures;

h. An award of nominal and compensatory damages, including damages for humiliation and embarrassment, against the Defendant in an amount to be determined at trial;

i. An award of litigation costs and expenses, including reasonable attorneys' fees;

j. Prejudgment interest; and

k. Such other and further relief as the Court may deem just and proper.

### Jury Demand

126. The Plaintiffs demand trial by jury of all issues triable of right to a jury.

Respectfully submitted this 11th day of May, 2007.

/s/ Eric Bachman
Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Eric K. Bachman (DC Bar No. 481993)
**WIGGINS, CHILDS, QUINN & PANTAZIS, PLLC**
2031 Florida Avenue, NW, Suite 300
Washington, DC 20009
(202) 467-4123
(202) 467-4489 (facsimile)

Gary T. Brown (D.C. Bar No. 246314)
**GARY T. BROWN & ASSOCIATES, P.C**.
320 Maryland Avenue, N.E.
Suite 100
Washington, D.C. 20002
 (202) 393-4900

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2007, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

> By:   /s/ Eric K. Bachman    .
> *Attorney for Plaintiff*