UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARRINA BYRD and
ANNETTE BURNS

          Plaintiffs,

v.

DISTRICT OF COLUMBIA,

          Defendant.

Civil Action No. 06-522 (HHK)(AK)

## MEMORANDUM ORDER

Pending before this Court are [44] Plaintiffs' Motion for Leave to File a Third Amended Complaint ("Motion" or "Motion to Amend"), [45] Defendant's Opposition thereto, and [47] Plaintiffs' Reply. For the reasons set forth below, Plaintiff's Motion shall be **GRANTED**.

**I.    Background**

Plaintiffs Garrina Byrd and Annette Burns, former employees of the D.C. Department of Parks and Recreation ("DPR"), bring this class action against the District of Columbia on behalf of themselves and a class of similarly situated female employees. Among other things, Plaintiffs allege hostile work environment and/or *quid pro quo* gender discrimination and retaliation[1] in violation of Title VII, the D.C. Human Rights Act ("DCHRA") and 42 U.S.C. § 1983 ("Section

---

[1] Plaintiffs Byrd and Burns bring their retaliation claims individually.

1983"). Plaintiffs claim that the District of Columbia discriminated against them "by maintaining and condoning discriminatory practices against women in the workplace." (Second Am. Compl. ("SAC") ¶ 2.)

    A.    **Plaintiffs Garrina Byrd and Annette Burns**

According to the Second Amended Complaint, Plaintiff Byrd worked at the D.C. Department of Parks and Recreation from July 2001 through December 2005. In 2002 she obtained an office position within DPR under the supervision of Darnell Thompson. According to Byrd, she obtained the office position only after capitulating to Thompson's demand that she lift up her shirt in front of him. During her time in Mr. Thompson's office, Ms. Byrd alleges that Thompson "regularly touched her inappropriately and engaged in other harassing behavior." (SAC ¶ 16.) Byrd claims that she reported the harassment to several supervisors, including Joyce Roberts and Julie Banks, but no one did anything to stop it. Thompson also allegedly escalated his demands for sexual favors each time that Byrd's employment contract with DPR neared its completion date. Byrd was terminated in December 2005 – sometime after complaining to the DPR's EEO office, the D.C. Office of Human Rights and also testifying about the harassment at a D.C. Council hearing.

Plaintiff Annette Burns alleges that she was a DPR employee between 2000 and 2004. (SAC ¶ 32.) Like Byrd, Ms. Burns claims to have endured regular physical and verbal sexual harassment by Darnell Thompson during her employment. Burns allegedly complained to several DPR supervisors about Thompson's behavior, including James Boone, Kenny Kabo (Thompson's supervisor), Neil Albert and Neil Stanley. (*Id.* ¶¶ 34-41.) In or around May 2002, Burns was told by Mr. Albert that Thompson would be removed from his position. However,

according to Burns, when she returned from leave in August 2002, Thompson still held his same position while she was transferred to another position. (Id. ¶¶ 47-48.) She was terminated in 2004. (*Id.* ¶ 49.)

    **B.**    **Plaintiffs' Motion for Leave to Amend**

On May 11, 2007, Plaintiffs filed the instant request for leave to file a Third Amended Complaint ("TAC"). If granted, the Third Amended Complaint would add two new plaintiffs, Demera Gaskins and Carmen Jean-Baptiste, and withdraw the class action allegations.[2] As with Byrd and Burns, the two would-be plaintiffs bring gender discrimination and retaliation claims against Defendant under, *inter alia*, Title VII, DCHRA and Section 1983. According to the proposed Complaint, the four would-be Plaintiffs "bring this action to address systemic discrimination and retaliation that existed and continues to exist at the Defendant's Department of Parks and Recreation." The Plaintiffs seek damages, as well as declatory and injunctive relief. (*See* Proposed TAC ¶ 125.)

    **C.**    **Proposed Plaintiffs Demera Gaskins and Carmen Jean-Baptiste**

According to the proposed Third Amended Complaint, Demera Gaskins was an employee of DPR from approximately 2004 through 2005. (Proposed TAC ¶ 58.) Like Plaintiffs Byrd and Burns, Gaskins claims to have been subjected to "routine and extreme" sexual harassment by Darnell Thompson, her manager. (*Id.* ¶ 59.) Moreover, she claims to have reported the harassment to her supervisor, "Richardson," in 2004 and also to "Neil Albert and/or Neil Stanley" after her termination in 2005. (*Id.* ¶¶60-63.) According to Gaskin, her termination followed shortly after resisting a particular sexual advance from Thompson at work. (*Id.* ¶ 62.)

---

[2]Defendant does not oppose the withdrawal of class allegations.

According to the proposed TAC, Carmen Jean-Baptiste was a DPR employee during part of 2006. (Proposed TAC ¶ 68.) Unlike Byrd, Burns and Gaskins, Jean-Baptiste's claims involve harassment by an unspecified male supervisor, not Darnell Thompson. This male supervisor allegedly subjected her to regular "inappropriate physical touching and offensive verbal harassment." (*Id.* ¶ 69.) Jean-Baptiste claims that she reported the harassment to "relevant Department officials and the EEOC" in October 2006 and "also spoke with Neil Albert about her employment situation." (*Id.* ¶¶ 73-77.) She was terminated in October 2006.

## II.     Legal Standard

### A.     Motion to Amend

Federal Rule 15(a) states that a party may amend a pleading by leave of court and that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has explained that, although granting or denying leave to amend surely falls within the discretion of the court, denying leave without any justification is an abuse of discretion and "inconsistent with the spirit of the rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Justifications for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*

Because Rule 15(a) aims to provide for a resolution of the case on its merits, there is a strong policy for allowing amendments at any point in the litigation. *See* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1488 (2d ed. 1990). In keeping with this spirit, however, a party should request an amendment as soon

as the need for it becomes apparent. *Id.* Even if a party is guilty of delay in seeking an amendment, delay alone does not justify denying leave. *Wilson v. ABN AMRO Mortgage Group*, No. 05-CV-0108, 2005 WL 3508658, at *2 (D.D.C. Dec. 21, 2005) (citation omitted). Rather, the delay should be weighed in conjunction with other factors, such as prejudice to the opposing party, and the reason given for the delay. *See* WRIGHT ET AL., *supra*, at § 1488.

### B.   Permissive Joinder Under Rule 20

Because Plaintiff's Motion to Amend seeks to join additional parties to the action, the Court must also consider the legal standard for joinder under Rule 20 of the Federal Rules of Civil Procedure. There are two requirements for joinder according to Rule 20(a): *First*, "a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences." *M.K. v. Tenet*, 216 F.R.D. 133, 138 (D.D.C. 2002). *Second*, "a question of law or fact common to all of the parties must arise in the action." *Id.* The purpose behind the rule is "to promote trial convenience and expedite the resolution of lawsuits." *Puricelli v. CNA Inurance Co.*, 185, F.R.D. 139, 142 (N.D.N.Y. 1999). Also, a decision as to whether the circumstances warrant granting a request for joinder of parties is within the sound discretion of the court. *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).

**III.   Analysis**[3]

    **A.   Joinder**

The Court will first address the central issue of whether the present circumstances warrant joinder of the additional parties.

    *1.   Same Transaction or Occurrence*

As stated above, permissive joinder requires that "a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences." *M.K. v. Tenet*, 216 F.R.D. at 138. In determining whether particular facts constitute a single "transaction or occurrence" within the meaning of Rule 20, courts employ a case-by-case approach. *Radtke v. Caschetta*, 2007 WL 1438488, *2 (D.D.C. May 15, 2007) (citation omitted). The phrase "transaction or occurrence" has been interpreted broadly, and encompasses claims that are "logically related" to one another. *See Mosley*, 497 F.2d at 1333.

In its Opposition to Plaintiffs' Motion, Defendant claims that the facts of each claim "differ significantly." (Opp'n at 2.) Defendant points out that, unlike the other three Plaintiffs, Ms. Jean-Baptiste does not allege harassment by Mr. Thompson. Defendant also notes that Jean-Baptiste's claims are not "temporally proximate to the allegations raised by Ms. Byrd or Ms. Gaskins." (*Id.*)

Despite Defendant's objections, the Court finds that the facts alleged by all four

---

[3] In a passing footnote, Defendant observes that Plaintiffs have failed to allege exhaustion of administrative remedies, "a jurisdictional prerequisite to filing a Title VII lawsuit." (Opp'n at 2.) The Court notes that exhaustion of administrative remedies is not a jurisdictional prerequisite to filing a Title VII lawsuit. *See Hammond v. Chao*, 383 F. Supp. 2d 47, 55 (D.D.C. 2005). Rather, *failure* to exhaust is an affirmative defense, and Defendant bears the burden of pleading it and proving it. *See Bowden v. U.S.*, 106 F.3d 433, 437 (D.C. Cir. 1997). Thus, the Court will not address the question of Plaintiffs' exhaustion of administrative remedies at this time.

individuals bear sufficient logical relation to one another.  Most significantly, the each Plaintiff alleges injury by systemic gender discrimination and retaliation on the part of the D.C. Department of Parks and Recreation. (*See* Proposed TAC ¶ 1.)  The Court concludes that such a systemic pattern arises out of the same series of transaction or occurrences within the meaning of Rule 20.  It is of no moment, then, that Ms. Jean-Baptiste alleges a different particular harasser, or that her abuse occurred at least a year after that alleged by the other claimants.  The Plaintiffs all allege that the discrimination continued over a number of years and continues to this day. (*Id.*)  They further indicate that it arises not so much from any particular harasser as it does from a company-wide practice.  For these reasons, the Court finds that Plaintiffs have satisfied the first prong for joinder under Rule 20(a).  *See Mosley*, 497 F.2d at 1333-34 (finding "same transaction or occurrence" among ten plaintiffs who each alleged injury by same general policy of racial discrimination at General Motors and union.)

        2.        *Common Question of Law or Fact*

As mentioned previously, Rule 20(a) also requires the presence of "*any* question of law or fact common to all of the parties[.]" Fed. R. Civ. P. 20(a) (emphasis added).  As the language of the rule makes evident, commonality of all questions of law and fact is not required.  *Puricelli*, 185 F.R.D. at 143.

The Court also finds that Plaintiffs have satisfied  "common question" requirement of Rule 20.  A common question of law exists because the parties all bring gender discrimination claims against Defendant under Title VII, DCHRA and Section 1983.  *See Puricelli*, 185 F.R.D. at 143 (finding "common question" prong met because, among other things, both plaintiffs brought same three claims against same employer).  Also, common factual issues exist among

the four plaintiffs' cases. For example, three of the four Plaintiffs were allegedly harassed by the same manager, Darnell Thompson. There is also a significant overlap between the upper-level managers to whom the Plaintiffs allegedly reported their harassment. For instance, Burns and Gaskins both claim to have reported their harassment to Neil Stanley, a supervisor at DPR. (Proposed TAC ¶¶ 41, 63.) Furthermore, Burns, Gaskins and Jean-Baptiste all claim to have reported their harassment to Neil Albert, another DPR official. (*Id.* ¶¶ 41, 63, 77.) Finally, although factual differences obviously exist between the claims, all four claims involve the following significant factual issue: whether systemic discrimination and retaliation existed at the D.C. Department of Parks and Recreation. *See Mosley*, 497 F.2d at 1334 (finding common question of fact   The Court thus concludes that Plaintiffs have satisfied this second prong for joinder under Rule 20(a).

        3.      *Efficiency Concerns*

Defendant argues that the case involves different facts for each Plaintiff, and will thus result in the presentation of different evidence regarding the different claims. (Opp'n at 2.) For example, each Plaintiff will require testimony from different eyewitnesses and supervisors, and different documentary evidence such as personnel files and reports. (*See id.*) Thus, according to Defendant, "judicial economy will not be served by keeping the claims together." (*Id.* at 3.)

Plaintiffs, in their Reply, argue that, differences among the Plaintiffs' claims notwithstanding, there will also be much evidence in common – especially during the discovery phase of litigation. According to Plaintiff, such common discovery would include: (1) evidence of Defendant's policies and procedures for receiving complaints of discrimination and retaliation; (2) employee handbooks; (3) evidence of discipline policies and any discipline imposed pursuant

to harassment complaints; (4) the collective bargaining agreement and evidence of union complaints on behalf of its members regarding sexual harassment; (5) records of sexual harassment complaints received by DPR; and (6) deposition testimony by common Rule 30(b)(1) and 30(b)(6) depositions. (Reply at 5-6.)

The Court agrees with Plaintiffs' position that Defendant's concerns are, at this stage, premature. As discussed above, joinder does not require complete factual identity among the claims. At this stage, there is sufficient logical relation and factual overlap among the four Plaintiffs' claims to create efficiencies warranting joinder.

### B.  Undue Prejudice to Defendant[4]

The Court will also address the question of undue prejudice resulting from granting Plaintiffs' Motion to Amend. Defendant argues that allowing Gaskins and Jean-Baptiste to join this action will cause it prejudice in the form of confusion to the jury. Defendant contends, for example, that a jury will be unable to disregard evidence admissible as to one plaintiff but not another. (Opp'n at 3.)

The Court does not deny the potential prejudice to Defendant arising from joinder of additional plaintiffs. However, such concerns are premature. At present, the litigation is at an early stage. A scheduling order has not yet issued, and discovery has not yet commenced in full. As discussed above, joinder of the four Plaintiffs' claims would promote efficiency during discovery and perhaps at trial. Should the facts of the case, when more fully developed, warrant severance of claims, Defendant is not foreclosed from seeking such relief at that time. For these

---

[4]Although Defendant alleges that it will be unduly prejudiced if the new complaint is permitted, it does not allege that Plaintiffs unduly delayed seeking amendment of the motion, or harbored any bad faith or dilatory motive.

reasons, the Court finds that any resulting prejudice to Defendant, when balanced against the present benefits of joinder, does not warrant denial of Plaintiff's Motion to Amend.

### IV.     Conclusion

For the foregoing reasons, it is on this   5th    day of July, 2007, hereby

**ORDERED** that Plaintiff's Plaintiffs' Motion for Leave to File a Third Amended Complaint is **GRANTED**.

**SO ORDERED**.

                                                          /s/
                                             ALAN KAY
                                             UNITED STATES MAGISTRATE JUDGE