# EXHIBIT 1

t53p      DC Parks and Recreation    2026732087

Standard Form 50
Rev 7/06
District of Columbia Government

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle)<br>Burns, Annette | 2. Social Security Number<br>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 | 3. Date of Birth<br>11-16-1977 | 4. Effective Date<br>01-19-2004 |
|---|---|---|---|

| FIRST ACTION | | | SECOND ACTION | | |
|---|---|---|---|---|---|
| 5-A. Code<br>357 | 5-B. Nature of Action<br>Termination | NTE:<br>01-19-2004 | 6-A. Code | 6-B. Nature of Action | |
| 5-C. Code<br>065 | 5-D. Legal Authority<br>DPM Chapter 31B<br>Def Termination & Non Pay | | 6-C. Code | 6-D. Legal Authority | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority | |

| 7. FROM: Position Title and Number<br><br>MISSING TITLE<br>PD: 003199          Position:    00018987 | 15. TO: Position Title and Number |
|---|---|

| 8. Pay Plan<br>WS | 9. Occ. CD<br>4749 | 10. Grd/Lvl<br>05 | 11. Step/Rate<br>3 | 12. Tot. Salary<br>$14.97 | 13. Pay Basis<br>PH | 16. Pay Plan | 17. Occ. CD | 18. Grd/Lvl | 19. Step/Rate | 20. Tot. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay<br>$14.97 | 12B. Locality Adj<br>$0 | 12C. Adj. Basic Pay<br>$14.97 | 12D. Other Pay<br>$0 | | | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay | | |

| 14. Name and Location of Position's Organization<br><br>Parks and Recreation, Department of<br>Parks and Recreation Agency<br><br><br>Washington DC USA | 22. Name and Location of Position's Organization |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference<br>1-None    3-10 Point/Disability    5-10 Point/Other<br>2-5 Point    4-10 Point/Compensable    6-10 Point/Compensable/30%<br>1 | 24. Tenure<br>0-None    2-Conditional<br>1-Permanent    3-Indefinite<br>0 | 25. Agency Use | 26. Veterans Preference for RIF<br>YES    X    NO |
|---|---|---|---|
| 27. FEGLI<br>C0    Basic + Option C (4x) | 28. Annuitant Indicator<br>9    Not Applicable | | 29. Pay Rate Determinant<br>0    Regular Rate |
| 30. Retirement Plan<br>5    MPD Retirement 7%<br>-With Med | 31. Service Comp. Date (Leave)<br>11-05-2001 | 32. Work Schedule<br>F    Full Time | 33. Part-Time Hours Per Biweekly<br>Pay Period |

## POSITION DATA

| 34. Position Occupied<br>1-Competitive Service 3-SES General<br>2-Excepted Service 4-SES Career Reserved<br>1 | 35. FLSA Category<br>E-Exempt<br>N-Nonexempt    N | 36. Appropriation Code | 37. Union Code / Barg Unit<br>/ |
|---|---|---|---|
| 38. Employee Class | 39. Other Benefits<br>DCB: | | |

| 40. EMPLID/RCD<br>00019132 / 0 | 41. DRBCD<br>11-05-2001 | 42. DEPT ID<br>HA10000000 | 43. Location ID<br>LOCDC00014 | 44. Date Processed<br>12-06-2004 |
|---|---|---|---|---|

Address:    1363 BARNABY TER SE
              WASHINGTON DC 200324306

45. Remarks

| 46. Employing Department or Agency<br>District Of Columbia Govt<br>Parks and Recreation, Department of | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| 47. Agency Code<br>DCGHA | 48. Personnel Office ID<br>BF40 | 49. Approval Date | |

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANNETTE BURNS, AND DEMERA
GASKINS
      **Plaintiffs,**

      v.

DISTRICT OF COLUMBIA,

      **Defendant.**

Civil Action No. 06-0522 (HHK)

### AFFIDAVIT OF BRENDA SUTTON

I, BRENDA SUTTON , being duly sworn, state that the following is true to the best of my knowledge, information and belief:

1.        I Lead Claim Specialist, Settlements and Judgments for the Tort Liability Division, District of Columbia Office of Risk Management. The Tort Liability Division receives, processes and investigates potential claims against the District of Columbia, pursuant to D.C. Official Code § 12-309 (2001 ed.). The Office of Risk Management commenced to receive potential claims on January 15, 2004.

2.        Receipt of written notice of claims against the District of Columbia, are forwarded directly to the Tort Liability Division for processing. When the Tort Liability Division receives notices of claims from either the Mayor's Office or directly, the Tort Liability Division records the receipt of such notice in its claims management system.

3.  Claims previously handled by the Claims Unit for the Office of the Attorney General still under investigation as of January 15, 2004, were also transferred to the Office of Risk Management and recorded in its claims management system.

4.  I have conducted a diligent search of the records placed in the Risk Management system in the DC Office of Risk Management. The result of this search has revealed that the Tort Liability Division of the District of Columbia Office of Risk Management, has received no claim notice from Annette Burns and Demera Gaskins that referred to claims described in the complaint in Civil Action No. 06-0522 (HHK). Complaint: Alleged sexual harassment and retaliation.

_____
**BRENDA SUTTON**

**DISTRICT OF COLUMBIA, ss:**

I, _Susana Suarez_ , a Notary Public in and for the District of Columbia, do hereby certify that BRENDA SUTTON , whose name is signed to the foregoing affidavit, bearing the date of the _3_ day of August, 2007, personally appeared before me and executed the said release, and acknow-ledged the same to be her act and deed.

Given under my hand and official seal this _3_ day of August, 2007.

_____
**NOTARY PUBLIC**

My Commission Expires: _SUSANA SUAREZ_
NOTARY PUBLIC OF COLUMBIA
My Commission Expires
August 14, 2010

# EXHIBIT 3

Standard Form 50
Rev 3/06
District of Columbia Government

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| Gaskins,Demera | ▐▐▐▐▐ | ▐▐▐▐▐ | 03-23-2005 |

| FIRST ACTION | | | SECOND ACTION | | |
|---|---|---|---|---|---|
| 5-A. Code **385** | 5-B. Nature of Action  NTE: Term. during prob/trial period | | 6-A. Code | 6-B. Nature of Action | |
| 5-C. Code **098** | 5-D. Legal Authority  Sec 814  DC PeReg | | 6-C. Code | 6-D. Legal Authority | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| MAINTENANCE HELPER  PD: 008700          Position:    00014309 | |

| 8.Pay Plan | 9.Occ. CD | 10.Grd/Lvl | 11.Step/Rate | 12.Tot. Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. CD | 18.Grd/Lvl | 19.Step/Rate | 20.Tot. Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WS | 4749 | 06 | 1 | $12.95 | PH | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $12.95 | $0 | $12.95 | $0 | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| Parks and Recreation, Department of  Parks and Recreation Agency  Park Facility Mngt (P&FM)  P & FM (5400) - Maintenance  Maintenance 12541006  Washington DC USA | |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1  1-None   3-10 Point/Disability   5-10 Point/Other  2-5 Point   4-10 Point/Compensable   6-10 Point/Compensable/30% | 1  0-None   2-Conditional  1-Permanent   3-Indefinite | | YES   X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0  Basic + Option C (4x) | 9  Not Applicable | 0  Regular Rate |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 5  MPD Retirement 7%  -With Med | 07-20-2004 | F  Full Time | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Union Code / Barg Unit |
|---|---|---|---|
| 1  1-Competitive Service 3-SES General  2-Excepted Service   4-SES Career Reserved | N  E-Exempt  N-Nonexempt | | / |

| 38. Employee Class | 39. Other Benefits |
|---|---|
| | DCN : |

| 40. EMPLID/RCD | 41.DRBCD | 42.DEPT ID | 43.Location ID | 44. Date Processed |
|---|---|---|---|---|
| 00014429  /   0 | | HA54001006 | LOCDC00014 | 04-04-2005 |

Address:    1540 BUTLER STREET SE
            WASHINGTON DC 200200000

45. Remarks

| 46. Employing Department or Agency  District Of Columbia Govt  Parks and Recreation, Department of | 50. Signature/Authentication and Title of Approving Official |
|---|---|

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DCGHA | BE40 | 03-25-2005 |

1 -          Employee Copy

# EXHIBIT 4

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **JASON CAGE,** | ) | **CASE NO.   2005 CA 000991 B** |
| | ) | |
| **Plaintiff(s),** | ) | **CALENDAR 8** |
| | ) | |
| **vs** | ) | **JUDGE RONNA LEE BECK** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant(s).** | ) | |

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR A STAY

Before the court are two motions, 1) defendant's motion for judgment on the pleadings and/or alternatively, motion for summary judgment ("motion for summary judgment") and; 2) defendant's motion for a stay of the proceedings.

In its motion for summary judgment, defendant argues that the statute of limitations is a bar to plaintiff's action and that plaintiff failed to satisfy the mandatory notice requirement of D.C. Code § 12-309. Plaintiff filed an opposition disputing both points. In an order dated April 4, 2007, the court ordered defendant to file a comprehensive reply to each of the arguments made in plaintiff's opposition. Defendant filed a reply addressing only plaintiff's §12-309 contention. Thus, the court concludes that defendant has abandoned its contention that the statute of limitations is a bar to plaintiff's action and will address only the § 12-309 issue.

Defendant's motion for a stay of the proceedings was filed on April 12, 2007. The court will deny this motion.

## I.    Background

Plaintiff, Jason Cage, filed his complaint on February 5, 2005, asserting that he was unlawfully discriminated against based on his disability. Plaintiff was employed by the District of Columbia Fire and Emergency Medical Services Department (DCFEMS) from July 1999 to May 2003. At the time he was hired by DCFEMS in 1999, Mr. Cage claims he had fully disclosed that he had been previously diagnosed with cystic fibrosis, and as a result, had a non-reversible obstructive airway disease.

Mr. Cage left employment with DCFEMS for a position as a Firefighter-EMT with the Loudon County, Virginia, Fire and Rescue Department. Then, in September 2003, Mr. Cage sought reinstatement with DCFEMS. Mr. Cage was examined by the D.C. Police and Fire Clinic on November 25, 2003, as a prerequisite to his return to DCFEMS. On December 16, 2003, Mr. Cage was told that he was medically disqualified from returning to DCFEMS because of his prior history of cystic fibrosis.

Mr. Cage asserts that his medical history has never interfered with his ability to perform the essential functions of the EMT-Paramedic position. In addition, he asserts that he has never had any problems caused by cystic fibrosis during his tenure at DCFEMS or with the Loudon County, Virginia, Fire and Rescue Department. He contends he was unlawfully discriminated against on the basis of his disability when he was denied reinstatement with DCFEMS on December 16, 2003. He seeks injunctive relief, reinstatement, and damages pursuant to the D.C. Human Rights Act (DCHRA).

## II. The Standard for Summary Judgment

Defendant has submitted an affidavit in support of its §12-309 position. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not

2

excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Super. Ct. Civ. R. 12(c).

To prevail on a motion for summary judgment, the moving party must demonstrate, based on the pleadings, discovery, and any affidavits submitted, that there is no genuine issue as to any material fact and that it is thus entitled to judgment as a matter of law. *Grant v. May Department Stores Co.,* 786 A.2d 580, 583 (D.C. 2001); Super. Ct. Civ. Rule 56(c). A trial court considering a motion for summary judgment must view the pleadings, discovery materials, and affidavits in the light most favorable to the non-moving party and may grant the motion only if a reasonable jury, having drawn all reasonable inferences in favor of the non-moving party, could not find for the non-moving party based on the evidence in the record. *Id.* at 583 (citing *Nader v. De Tolendano*, 408 A.2d 31, 42 (D.C. 1979)); *Bailey v. District of Columbia*, 668 A.2d 817, 819 (D.C. 1995).

The moving party has the initial burden of proving that there is no genuine issue of material fact in dispute. If the moving party carries its initial burden, then the non-moving party assumes the burden of establishing that there is a genuine issue of material fact in dispute. Grant, 786 A.2d at 593 (citing *O'Donnell v. Associated Gen. Contractors of America, Inc.*, 645 A.2d 1084, 1086 (D.C. 1994)).

The non-moving party may not simply rest on conclusory allegations to establish that a genuine issue of material fact is in dispute. *Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 502 (D.C. 2002). Instead, the non-moving party must set forth specific facts showing there is a genuine issue for trial. Super. Ct. Civ. R. 56(e).

3

### III. Analysis - Compliance with D.C. Code § 12-309

This case is based on plaintiff's claims of unlawful discrimination by DCFEMS which allegedly occurred on or about December 16, 2003, when the plaintiff was denied reinstatement with DCFEMS. In its motion, the defendant asserts that plaintiff's claims should be dismissed for failure to comply with D.C. Code § 12-309. Defendant has submitted an affidavit from the District of Columbia Office of Risk Management stating that there is no record of any notice letter that was sent to the Mayor of a potential claim against the District. Def.'s Exhibit 1.

Section 12-309 of the District of Columbia Code sets out mandatory notification requirements that must be followed in order to maintain an action against the District of Columbia for unliquidated damages. D.C. Code § 12-309 (2001). Under § 12-309, a plaintiff must give notice in writing to the Mayor of the time, place, cause and circumstances of the damages within six months of date of injury. *Id.* This requirement can also be fulfilled by a written police report of the incident. *Id.* "Strict compliance with the terms of § 12-309 is 'mandatory as a prerequisite to filing suit against the District.'" *Chidel v. Hubbard*, 840 A.2d 689, 695 (D.C. 2004) (citations omitted). Section 12-309 is strictly construed because it "is in derogation of the common law principle of sovereign immunity." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995). The purpose of § 12-309 is "(1) to protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Id.*

Plaintiff asserts that the DCHRA does not require compliance with § 12-309 because § 12-309 applies only to common law claims, not statutory claims, and because the DCHRA does not state that notice under § 12-309 is required. Section 12-309 does not, however,

4

distinguish between statutory claims and common law claims – it applies to all claims for unliquidated damages and has been held to apply to all claims that sound in tort, as opposed to contract. *District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C. 1990). Moreover, the Court of Appeals has held that notice must be given for a statutory claim, even when the statute under which the claim is brought does not specifically require it. *See Doe by Fein v. District of Columbia*, 697 A.2d 23, 25 (D.C. 1997) (holding that plaintiff failed to satisfy the notice requirements of § 12-309 where plaintiff's claim was based on statutory law, the District of Columbia Prevention of Child Abuse and Neglect Act, D.C. Code §§ 6-2101 *et seq.* (1995), which did not mention § 12-309).

Plaintiff has failed to cite persuasive authority that notice under § 12-309 is not required for a claim for unliquidated damages under the DCHRA. Based on the plain language of § 12-309 and the decisions interpreting it, the court concludes that notice in compliance with § 12-309 is a prerequisite to a claim for unliquidated damages under the DCHRA.[1]

Section 12-309 states that notice is required in cases where plaintiff is seeking unliquidated damages from the District. It imposes no such requirement on a plaintiff seeking other forms of relief, such as injunctive or declaratory relief or reinstatement. While the District of Columbia Court of Appeals apparently has not decided this question,[2] a judge on the United States District Court for the District of Columbia has indicated *in dicta* that notice under § 12-309 is not required for claims other than damages. *See Pinkney v. District of Columbia*, 439 F.Supp. 519, 534, n. 5 (D.D.C. 1977). The court stated:

---

[1] At least two other Superior Court judges have so ruled. *See McFarlane v. New Leaders for New Sch..*, No. 04-8506 (D.C. Super. Ct. Nov. 10, 2005); *Descutner v. District of Columbia*, No. 04-7214 (D.C. Super. Ct. March 4, 2005);
[2] In *District of Columbia v. North Washington Neighbors*, 367 A.2d 148 (D.C. 1976) the Court stated the plaintiffs, who were seeking injunctive relief and reimbursement under a theory of tort liability, were required to comply with

5

> Plaintiff seeks an array of remedies including various injunctive orders
> and, as is necessary to trigger §309, an award of damages. There is thus
> no doubt that §309 is implicated in regard to some but not all of plaintiff's
> claims.

439 F.Supp. at 534, n. 5.

In this case, Mr. Cage is seeking injunctive relief, declaratory relief, and reinstatement in addition to monetary damages. He may not maintain claims against the District of Columbia for unliquidated damages without complying with § 12-309's notice requirements. Mr. Cage has not provided any evidence of such notice, and summary judgment will be granted for the defendant as to Mr. Cage's unliquidated damages claims. The court concludes, however, that notice under § 12-309 is **not** a prerequisite for Mr. Cage's claims for injunctive relief, declaratory relief, and reinstatement[3]. Thus, defendant's motion for summary judgment as to these claims will be denied.

Accordingly, it is this 19th day of June, 2007

**ORDERED** that the defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**;

**FURTHER ORDERED** that the defendant's motion for summary judgment is **GRANTED** to defendant with respect to plaintiff's claims for unliquidated damages;

---

§ 12-309, but the Court did not specify whether notice was required for all of the claims or just the claims for damages. *Id.* at 149.

[3] Defendant asserts in its reply that injunctive relief is not available to the plaintiff in a court proceeding as contrasted with an administrative proceeding. However, this court has jurisdiction to grant injunctive relief pursuant to D.C. Code § 2-1403.16. D.C. Code § 2-1403.16 creates a private right of action and grants the court authority to order " any relief it deems appropriate, including, the relief provided in §§ 2-1403.07 and 2-1403.13(a)." Sections 2-1403.07 and 2-1403.13(a) provide injunctive and other equitable relief as appropriate remedies for victims of unlawful discriminatory practices.

6

**FURTHER ORDERED** that the defendant's motion for summary judgment is **DENIED**

with respect to plaintiff's remaining claims, i.e., his claims for injunctive relief, declaratory relief,

and reinstatement.

**FURTHER ORDERED** that defendant's motion for a stay of the proceedings is **DENIED**;

**FURTHER ORDERED** that the mediation scheduled on July 10, 2007, at 9:30 a.m. with

Gerald Lorentz remains.

*Ronna Lee Beck*

Judge Ronna Lee Beck
(Signed in Chambers)

**Copies served electronically on counsel through eFiling for Courts**

Diana A. Seltzer, Esq.
*Counsel for Plaintiff*

Rachel Hranitzky, Esq.
Office of the Attorney General
*Counsel for Defendant*

7

# EXHIBIT 5

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

GEORGE KENNETH MCFARLANE,          :
    Plaintiff,                      :
                                    :  **Case No. 04-CA-8506**
    **v.**                          :  **Cal. No. 8**
                                    :  **Judge Russell F. Canan**
**NEW LEADERS FOR**                 :
**NEW SCHOOLS, et al.,**            :
    **Defendants.**                 :

## ORDER

This matter is before the Court on the following motions:

(1)  Defendant New Leaders for New Schools's ("NLNS") Motion to Dismiss Plaintiff's Amended Complaint ("NLNS's Motion to Dismiss"), filed March 1, 2005, plaintiff's opposition thereto, and defendant NLNS's reply;

(2)  Defendant District of Columbia Public Schools's ("DCPS") Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment ("DCPS's Motion to Dismiss or for Summary Judgment"), filed April 20, 2005, plaintiff's opposition thereto, and defendant DCPS's reply;

(3)  Defendant NLNS's Motion for Sanctions and Costs ("NLNS's Motion for Sanctions"), filed May 27, 2005, and plaintiff's opposition thereto;

(4)  Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss ("Defendants' Motion for a Protective Order"), filed June 21, 2005, and plaintiff's opposition thereto; and

(5)  Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS ("Plaintiff's Motion for Sanctions"), filed July 13, 2005; and defendant NLNS's opposition thereto.

## (1)  NLNS's Motion to Dismiss

Plaintiff George Kenneth McFarlane ("McFarlane") was terminated from

the NLNS fellowship program and from employment with the DCPS in November



2003. Plaintiff filed a complaint against NLNS on November 3, 2004 based on his November 2003 termination. The Board of Education of the District of Columbia was also named in the original complaint. Subsequently, plaintiff filed a verified amended complaint, substituting DCPS for the Board of Education on February 2, 2005. It is this verified amended complaint ("Plaintiff's Amended Complaint") that is the subject of NLNS's Motion to Dismiss. In Plaintiff's Amended Complaint, plaintiff asserts the following claims: (1) a public policy tort by NLNS and DCPS; (2) violation by DCPS of the Whistleblower Protection Act, D.C. Code §§ 1-615.51 to1.615.59 (2001); (3) racial discrimination under the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 to 2-1403.17 (2001) by NLNS and DCPS; (4) defamation and false light by NLNS; and (5) failure of DCPS to pay all of plaintiff's wages.

NLNS's Motion to Dismiss asserts that plaintiff has failed to state a claim for relief with regard to Count 1 (public policy tort); Count 3 (DCHRA); and Count 4 (defamation and false light). Regarding Counts 1 and 3, defendant argues that plaintiff has failed to state a claim for relief under Superior Court Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), because plaintiff has failed to allege that NLNS was an employer of plaintiff. Regarding Count 4, defendant argues that plaintiff has failed to adequately plead the elements of defamation and false light.

2

<u>Standard of Review</u>

Dismissal for failure to state a claim under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Owens v. Tiber Island Condominium Ass'n, et al.*, 373 A.2d 890, 893 (D.C. 1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). In the context of a Rule 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff, and plaintiff's allegations must be taken as true. *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C. 1979).

<u>Counts 1 and 3: Public Policy Tort and DCHRA</u>

An employee may bring an action for wrongful discharge in violation of public policy only against a former employer. *Adams v. George W. Cochran & Co., Inc.*, 597 A.3d 28, 34 (D.C. 1991). Likewise, the DCHRA permits claims for discrimination only against employers, employment agencies, and labor organizations. *See* D.C. Code § 2-1402.11(a). Under the DCHRA, an employer is: "any person who, for compensation, employs an individual . . . ; any person acting in the interest of such employer, directly or indirectly; and any professional association." § 2-1401.02. District of Columbia courts apply the following factors in determining whether an employment relationship exists: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer."

3

*Moorehead v. District of Columbia*, 747 A.2d 138, 143 (D.C. 2000) (citations omitted). The fourth factor, whether the entity has the power to control the servant's conduct, is the most important. *Judah v. Burton Reiner and Morris Mgmt.*, 744 A.2d 1037, 1039 (D.C. 2000). Two distinct entities may be deemed joint employers if they "share or co-determine those matters governing essential terms and conditions of employment." *Dunkin' Donuts Mid-Atlantic Distribution Ctr., Inc. v. NLRB*, 363 F.3d 437, 440 (D.C. Cir. 2004).

First, plaintiff has sufficiently alleged that NLNS participated in selecting and hiring plaintiff. The fact that plaintiff's contract with NLNS provided that DCPS would hire all NLNS fellows in the District of Columbia public schools, Pl's Am. Compl. ¶ 17, tends to show that NLNS participated in the hiring process for DCPS employees, at least with respect to NLNS fellows. Plaintiff also alleged he received a letter from Ms. Jacqueline Davis, Executive Director of NLNS's Washington Office, on July 16, 2003, confirming plaintiff's contract with NLNS and confirming that plaintiff would be employed by DCPS at the rate of $68,000 for the following school year. *Id.* ¶ 21. This letter similarly tends to show NLNS's participation in the hiring process. Plaintiff also avers that NLNS assigned plaintiff to Adelaide Davis Elementary School, against the wishes of that school's principal, with whom plaintiff would be working. *Id.* ¶ 28. This further evidences NLNS's participation in the selection and hiring process.

Second, DCPS paid plaintiff's salary. This factor weighs in favor of NLNS, however, it is not dispositive. Third, plaintiff sets forth several facts

4

tending to show that NLNS possessed the power to terminate plaintiff, through

its participation in plaintiff's termination from both entities. Plaintiff claims that

Ms. Davis, director of NLNS's District of Columbia office, ordered plaintiff not to

return to his former school and took his DCPS identification and keys to the

school. *Id.* ¶ 80. If true, this would tend to show NLNS's participation in

plaintiff's termination. Further, plaintiff asserts that on November 6, 2003, "Ms.

Davis terminated plaintiff's employment with NLNS and the DCPS, effective the

same day." Pl.'s Am. Compl. ¶ 71. Ms. Davis then told plaintiff that he could

be placed in another DCPS school, if NLNS was pleased with him. *Id.* ¶ 78.

NLNS, however, was not pleased with plaintiff and therefore terminated him.

*Id.* The fact that NLNS could have placed plaintiff in another DCPS school but

chose not to, demonstrates NLNS's participation in plaintiff's termination from

DCPS.

Fourth, the Court finds that plaintiff has alleged sufficient indicia of

NLNS's power to control plaintiff's conduct. Plaintiff asserts that NLNS (along

with DCPS) supervised and evaluated plaintiff. *Id.* ¶ 96. Plaintiff further

alleges he attended NLNS weekly meetings and met regularly with his NLNS

leadership coach, who in turn met with plaintiff's co-workers at Adelaide Davis

Elementary. *Id.* ¶¶ 34, 46. Plaintiff's allegation that NLNS had the power to

transfer him to another school within DCPS, *id.* ¶ 78, further supports plaintiff's

argument that NLNS had the power to control plaintiff's conduct.

5

The fifth factor, whether the work is part of the employer's regular business, weighs in favor of NLNS, because NLNS provides leadership training and guidance, and DCPS runs the District of Columbia public schools. The Court may only grant a motion to dismiss, however, if it appears that no set of facts supporting plaintiff's claim would entitle him to relief. Here, plaintiff has alleged facts that may support plaintiff's claim that NLNS and DCPS were joint employers. As such, the Court shall deny NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) and Count 3 (DCHRA).

### Count 4: Defamation and False Light

NLNS argues plaintiff has failed to adequately allege the elements of defamation and false light. Plaintiff bases his complaint for defamation and false light on three events: (1) a November 6, 2003 statement by Ms. Davis to the District of Columbia NLNS fellows that plaintiff had committed a serious offense ("November 6 Statement"); (2) a November 6 e-mail by Ms. Coles, NLNS's National Director of Leadership Coaching, to NLNS fellows in New York and Chicago ("November 6 E-mail"); and (3) a statement by NLNS or Principal Morse to third persons that plaintiff had called African American students "monkeys" and that he had terrified a pre-kindergarten student, made between November 7 and 11, 2003 ("November 7-11 Statements"). The Court shall consider each allegedly defamatory statement in turn.

Defamation requires proof of the following elements:

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's

6

fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Oparaugo v. Watts*, 2005 D.C. App. LEXIS 501, at * 31 (D.C. Oct. 6, 2005) (citing

*Crowley v. North Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997).

"[A]n allegedly defamatory remark must be more than unpleasant or offensive; the

language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard*

*University v. Best*, 484 A.2d 958, 988 (D.C. 1984) (quoting *Johnson v. Johnson*

*Publishing Co.*, 271 A.2d 696, 697 (D.C. 1970)). "If it appears that the statements

are at least capable of a defamatory meaning, whether they were defamatory and

false are questions of fact to be resolved by the jury." *Klayman v. Segal*, 783 A.2d

607, 607, 613 (D.C. 2001) (citations omitted).

    To assert a claim for false light, plaintiff must allege: "(1) publicity; (2) about

a false statement, representation, or imputation; (3) understood to be of and

concerning plaintiff; and (4) which places the plaintiff in a false light that would be

[highly] offensive to a reasonable person." *Id.* at 613-14.

<u>November 6 Statement</u>

    Defendant NLNS argues that plaintiff has not sufficiently alleged that any

portion of the statement was false or defamatory.  Plaintiff asserts that Ms. Davis

told the D.C. NLNS fellows that plaintiff had committed a "serious offense."  Pl.'s

Am. Compl. ¶ 84.  For the purposes of this motion, the Court assumes this

statement is false, as plaintiff avers there was no good cause for the termination.

*See Klayman*, 783 A.2d at 613 (citation omitted) (assuming, as alleged in the

complaint, "the falsity of any express or implied factual statements" made by

defendant).  The Court concludes this statement may also be defamatory, as it is

possible that being accused of a "serious offense" may cause an administrator of

an elementary school to appear odious or infamous.  NLNS does not contest the

remaining factors, therefore, the Court shall deny NLNS's Motion to Dismiss,

regarding plaintiff's claim that the November 6 Statement was defamatory.

Similarly, the Court shall deny NLNS's Motion to Dismiss plaintiff's false light claim

with respect to the November 6 Statement, as it is possible that an accusation of

having committed a serious offense would be highly offensive to a reasonable

person.

<u>November 6 E-mail</u>

NLNS argues that the November 6 E-mail contains no false statements.  The

Court agrees.  The November 6 E-mail reads, in pertinent part: "Unfortunately, for

both legal reasons and our desire to respect confidentiality, we are not in a position to

discuss the details of Ken's removal from the program."  Pl.'s Am. Compl. ¶ 84.  It is

not disputed that plaintiff was removed from NLNS, and it appears that NLNS had

previously declined to discuss the details of plaintiff's termination for confidentiality

reasons.  Pl.'s Am. Compl. ¶ 75.  Therefore, plaintiff cannot legitimately rely on the

falsity of defendant's e-mail to support his claim for defamation.

Instead, plaintiff relies on defamation by implication, claiming "the email's tone

and language (referring to 'legal reasons' and a desire to respect 'confidentiality')

implied that Mr. McFarlane had committed a serious offense which could not be

explained publicly." Pl.'s Am. Compl. ¶ 86. Defamation by implication is recognized in the District of Columbia. *See White v. Fraternal Order of Police*, 909 F.2d 512, 518-19 (D.C. Cir. 1990) (stating that under District of Columbia law a true statement may be capable of a defamatory inference); *Guilford Trans. Indus. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000) (recognizing defamation by implication where defamatory statements are not expressly stated). Defamation by implication, however, requires "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory interest" in order for the statement to be deemed defamatory. *White*, 909 F.2d at 520. The *White* Court cautioned: "[i]n entertaining claims of defamation by implication, courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *Id.* at 519; *see also Guilford*, 760 A.2d at 596 (stating that defamation by implication "requires careful exegesis to ensure that imagined slights do not become the basis for costly litigation"). Here, the Court concludes there is no evidence that NLNS intended the email to be perceived in a defamatory manner and that the email is not reasonably capable of bearing a defamatory meaning. As to plaintiff's false light claim, the Court concludes that no reasonable person could perceive the November 6 E-Mail as highly offensive. Accordingly, as the e-mail is neither false, defamatory, nor highly offensive to a reasonable person, the Court shall grant NLNS's Motion to Dismiss with respect to the November 6 E-mail.

9

<u>November 7-11 Statements</u>

Defendant argues that plaintiff has failed to state a claim for defamation with respect to the November 7-11 Statements because plaintiff has not alleged it was NLNS who published the statements nor has plaintiff alleged that NLNS made these statements to a specific third party. Plaintiff's complaint avers: "between November 7 and 11, 2003, NLNS or Principal Morse maliciously fabricated claims that [plaintiff] had called African American students 'monkeys' and that he had terrified a pre-kindergarten student. NLNS or Principal Morse published these false statements to third persons." Pl.'s Am. Compl. ¶ 90.

The District of Columbia has not adopted a higher pleading standard for defamation that would specifically require plaintiff to plead the time, place, content, speaker and listener of the allegedly defamatory statement. *Oparaugo*, 2005 D.C. App. LEXIS 501, at *35. Instead, the court must look at whether the complaint pleads sufficient facts to permit defendants to adequately respond. *Id.* Here, it appears that plaintiff's allegations are sufficient to allow NLNS to form a responsive pleading because plaintiff has alleged that the statements have occurred within a specific time period, and were published by either of two parties to the lawsuit. Further, taking the complaint in the light most favorable to plaintiff, it does not appear beyond a doubt that plaintiff can prove no set of facts allowing recovery. Should plaintiff fail to name a single person who heard the alleged statement after adequate discovery, summary judgment would be appropriate. *See Howard University v. Best*, 484 A.2d 958, 989 (D.C. 1984). At this stage, however, the Court concludes plaintiff

10

has pled adequate facts to survive a motion to dismiss with respect to the November 7-11 Statements. With respect to plaintiff's false light claim, the Court concludes plaintiff has sufficiently demonstrated publicity. Defendant does not contest the remaining factors. NLNS's Motion to Dismiss shall therefore be denied with respect to the November 7-11 Statements.

**(2) Defendant DCPS's Motion to Dismiss or for Summary Judgment**

In support of its motion, DCPS argues that plaintiff has failed to comply with D.C. Code § 12-309 (2001) and that plaintiff has failed to state a claim under the Whistleblower Protection Act, D.C. Code §§ 1-615.51 to 1.615.59 (2001). In Count 1, plaintiff asserts DCPS wrongfully discharged plaintiff in violation of public policy. In Count 2, plaintiff asserts that DCPS has violated the Whistleblower Protection Act ("WPA"). Count 3 alleges DCPS violated the DCHRA, and in Count 5, plaintiff claims that DCPS failed to pay his final paycheck.

<u>Standard of Review</u>

The applicable standard for a motion to dismiss was discussed earlier with respect to NLNS's Motion to Dismiss. Should the Court consider DCPS's affidavits, the Court must treat DCPS's motion as one for summary judgment. *Herron v. Veneman*, 305 F. Supp.2d 64, 70 (D.D.C. 2004). "To prevail upon a motion for summary judgment, the moving party must clearly demonstrate that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *O'Donnell v. Associated General Contractor's of America*, 645 A.2d 1084, 1086 (D.C. 1994) (citations omitted); *see Grant v. May Department Stores Co.*, 786 A.2d

11

580, 583 (D.C. 2001); *Galloway v. Safeway Stores, Inc.*, 632 A.2d 736, 738 (D.C.

1993) ("Summary judgment is appropriate only if there are no genuine issues of

material fact in dispute and if the moving party is entitled to judgment as a matter of

law."); *Young v. Sherwin Williams Co.*, 569 A.2d 1173, 1175 (D.C. 1990); *Holland v.*

*Hannan*, 456 A.2d 807, 814 (D.C. 1983); *Nader v. Toledano*, 408 A.2d 31, 41 (D.C.

1979); Super. Ct. Civ. R. 56(e).

A motion for summary judgment should be granted when "(1) taking all

reasonable inferences in the light most favorable to the non-moving party, (2) a

reasonable juror, acting reasonably, could not find for the non-moving party, (3) under

the appropriate burden of proof." *Galloway*, 632 A.2d at 738 (citing *Nader*, 408 A.2d

at 42). The party moving for summary judgment has the burden of proving an

"absence of material disputed issues and the right to judgment as a matter of law."

*Id.* (citation omitted). Such a burden may be satisfied by demonstrating "that there is

a lack of evidence to support the plaintiff's case." *Id.*

Once a party has set forth a prima facie showing, the burden shifts to the non-

moving party to produce specific evidence demonstrating that a genuine issue of

material fact does exist and that the moving party is not entitled to judgment as a

matter of law. *Spellman v. American Security Bank, N.A.*, 504 A.2d 1119, 1122 (D.C.

1986). "Conclusory allegations by the nonmoving party are insufficient to establish a

genuine issue of fact or to defeat the entry of summary judgment." *O'Donnell*, 645

A.2d at 1086 (quoting *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198

(D.C. 1991)); *see Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 502 (D.C. 2002).

12

Section 12-309 of the District of Columbia Code sets out mandatory
notification requirements that must be followed in order to maintain an action against
the District of Columbia for unliquidated damages. D.C. Code § 12-309 (2001).
Under § 12-309, a plaintiff must give notice in writing to the Mayor of the time, place,
cause and circumstances of the damages within six months of date of injury. *Id.*
This requirement can also be fulfilled by a written police report of the incident. *Id.*
"Strict compliance with the terms of § 12-309 is 'mandatory as a prerequisite to filing
suit against the District.'" *Chidel v. Hubbard*, 840 A.2d 689, 695 (D.C. 2004)
(citations omitted). Section 12-309 is strictly construed because it "is in derogation of
the common law principle of sovereign immunity." *District of Columbia v. Dunmore*,
662 A.2d 1356, 1359 (D.C. 1995). The purpose of § 12-309 is "(1) to protect the
District of Columbia against unreasonable claims and (2) to give reasonable notice to
the District of Columbia so that the facts may be ascertained and, if possible,
deserving claims adjusted and meritless claims resisted." *Id.*

Here, plaintiff argues that he gave sufficient notice to the D.C. government of
plaintiff's claims by writing a letter to DCPS's general counsel. While admitting he did
not address his letter to the Mayor, plaintiff asserts he "satisfied the spirit" of § 12-
309. Pl.'s Opp. to DCPS's Mot. at 10. Plaintiff's argument is similar to one raised
before the Court of Appeals in *Campbell v. District of Columbia*, 568 A.2d 1076, 1077
(D.C. 1990). In *Campbell*, the plaintiff argued that filing and serving a complaint,
within the six-month period, on the Mayor "satisfied the intent and spirit of the notice
requirement under § 12-309." *Id.* The Court of Appeals disagreed, emphasizing the

13

strict construction of § 12-309. *Id.* In light of § 12-309's strict construction, merely

giving notice to DCPS's general counsel is not sufficient. Even if the District received

actual notice of the potential claim through DCPS's general counsel, plaintiff's failure

to satisfy § 12-309 is fatal. *See Doe v. District of Columbia*, 697 A.2d 23, 29 (D.C.

1997) ("Whether the District had actual notice of Jane Doe's potential claim is not an

appropriate consideration under § 12-309."). As plaintiff has failed to give timely,

written notice to the Mayor, Ex. 1, Dailey Aff., DCPS's Mot. to Dismiss or for Summ.

J., the Court shall grant summary judgment in favor of DCPS with respect to Count 1

(public policy tort).

      Plaintiff asserts that the DCHRA does not require compliance with § 12-309.

The statute, however, clearly requires written notice to the Mayor, regardless of

whether the claim is statutory or based on the common law. *See* § 12-309. It is well-

established that a plaintiff with unliquidated statutory claims against the District must

satisfy § 12-309, even if the particular statute under which the claim is brought does

not specifically require it. *See Doe*, 697 A.2d at 25 (holding that plaintiff failed to

satisfy the notice requirements of § 12-309 where plaintiff's claim was based on

statutory law, the District of Columbia Prevention of Child Abuse and Neglect Act,

D.C. Code §§ 6-2101 *et seq.* (1995), which did not mention § 12-309). Similarly,

plaintiff's WPA claim must also fail, as plaintiff has not alleged compliance with § 12-

309. The Court shall therefore grant summary judgment in favor of DCPS on Count

3 (DCHRA) and Count 2 (WPA). As such, the Court need not address DCPS's

argument that plaintiff failed to establish a cause of action under the WPA.

Although DCPS asks the Court to dismiss all of plaintiff's claims, it does not specifically address Count 5, plaintiff's claim for unpaid wages. Plaintiff asserts DCPS did not pay his wages for the September 21, 2003 to October 4, 2003 pay period. The Court assumes plaintiff's salary is not disputed, therefore, plaintiff has a claim for liquidated damages and plaintiff need not give § 12-309 notice with respect to this claim. As such, the Court shall deny defendant's motion to dismiss with respect to Count 5.

### (3) NLNS's Motion for Sanctions

NLNS asks the Court to award sanctions and costs against plaintiff and his counsel, Alan Banov ("Banov") based on Banov's inclusion of the November 6, 2003, e-mail informing Chicago and New York NLNS fellows that plaintiff had been terminated in the Amended Complaint.

"'The central purpose of Rule 11 is to deter baseless filing . . . and thus . . . streamline the administration and procedure of the . . . courts.'" *Williams et al. v. Bd. Of Trustees of Mount Jezreel Baptist Church, et al.*, 589 A.2d 901, 911 (D.C. 1991) (*quoting Cooter & Gell v. Hartmax Corp.*, 486 U.S. 384, 392 (1990)). The Court notes that excessive motions practice on the issue of sanctions will not serve Rule 11's purpose of streamlining the administration of justice. The Court hereby advises the parties that it strongly disfavors any further filings relating to the issue of sanctions while the case is still ongoing, as the Court fears an inundation with multiple tangential issues will prevent the resolution of this case.

15

Accordingly, the Court declines to rule on a motion for sanctions at this stage in the proceedings, without the benefit of a complete record. The Court shall therefore deny NLNS's Motion for Sanctions without prejudice, with leave to renew after the completion of the case.

**(4) Defendants' Motion for a Protective Order**

Defendants NLNS and DCPS ask the Court to issue a protective order staying discovery pending resolution of Defendants' Motion to Dismiss. As the Court herein resolves all pending motions, Defendants' Motion for a protective order shall be denied as moot.

**(5) Plaintiff's Motion for Sanctions**

Plaintiff's Motion for Sanctions seeks sanctions and costs against NLNS based on the filing of NLNS's Motion for Sanctions. For reasons set forth with respect to NLNS's Motion for Sanctions, the Court declines to rule on the parties' motions for sanctions at this juncture. Thus, Plaintiff's Motion for Sanctions shall be denied without prejudice, with leave to renew after the completion of the case.

Accordingly, it is this $\underline{10}$th day of November, 2005,

**ORDERED** that (1) Defendant NLNS's Motion to Dismiss Plaintiff's Amended Complaint shall be **GRANTED IN PART** and **DENIED IN PART**; and it is,

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) shall be **DENIED**; and it is

16

FURTHER ORDERED that NLNS's Motion to Dismiss with respect to Count 3 (DCHRA) shall be **DENIED**; and it is

FURTHER ORDERED that NLNS's Motion to Dismiss with respect to Count 4 (Defamation) shall be **GRANTED IN PART** and **DENIED IN PART**.

FURTHER ORDERED that NLNS's Motion to Dismiss with respect to the November 6 Statement shall be **DENIED**; and it is

FURTHER ORDERED that NLNS's Motion to Dismiss with respect to the November 6 E-mail shall be **GRANTED**; and it is

FURTHER ORDERED that NLNS's Motion to Dismiss with respect to the November 7-11 Statements shall be **DENIED**; and it is

FURTHER ORDERED that (2) DCPS's Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment shall be **GRANTED IN PART** and **DENIED IN PART**; and it is

FURTHER ORDERED that DCPS's Motion to Dismiss shall be **GRANTED** with respect to Count 1 (public policy tort), Count 2 (WPA), and Count 3 (DCHRA); and it is

FURTHER ORDERED that DCPS's Motion to Dismiss shall be **DENIED** with respect to Count 5 (failure to pay all plaintiff's wages); and it is

17

FURTHER ORDERED that (3) Defendant NLNS's Motion for Sanctions and Costs shall be **DENIED WITHOUT PREJUDICE**; and it is

FURTHER ORDERED that (4) Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss shall be **DENIED AS MOOT**; and it is

FURTHER ORDERED that (5) Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS shall be **DENIED WITHOUT PREJUDICE**; and it is

FURTHER ORDERED that the parties shall agree on a proposed scheduling order, which shall be submitted to the Court within 10 days of the docketing of this Order.

**RUSSELL F. CANAN**
**JUDGE**
**(Signed in Chambers)**

Copies to:

Alan Banov
Norberto Salinas
Alan Banov & Associates
1819 L Street, NW
Suite 700
Washington, DC 20036

18

Nicola N. Grey
Office of the Attorney General
441 4th Street, NW
6th Floor South
Washington, DC 20001

Jennifer Gardner Levy
Jamenda Briscoe
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005

# EXHIBIT 6

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| WILLIAM DESCUTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04ca7214 |
| | ) | Calendar 1 – Judge Fisher |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

This matter is before the court for consideration of Defendant District of

Columbia's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment,

Plaintiff's Opposition thereto, and Defendant's Reply to Plaintiff's Opposition.  For the

reasons set forth in the accompanying Memorandum of Points and Authorities it is this

1ST day of March 2005 hereby

ORDERED that the Defendant's Motion to Dismiss is GRANTED.

Gerald L. Fisher
Associate Judge

1

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| WILLIAM DESCUTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04ca7214 |
| | ) | Calendar 1 – Judge Fisher |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF ORDER GRANTING MOTION TO DISMISS

In this case the Plaintiff alleges that the District of Columbia engaged in unlawful discrimination against him on the basis of disability, in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401, *et seq.* (2004) ("Human Rights Act"), when the D.C. Fire and Emergency Medical Services Clinic withdrew Plaintiff's conditional job offer for a position as a Firefighter-Basic Paramedic due to deficient vision in his left eye.  Plaintiff seeks immediate instatement as an unrestricted Paramedic/Firefighter, back and front pay including benefits, compensatory damages, costs and attorney's fees.  Defendant, the District of Columbia, asserts that this case should be dismissed under D.C. Code §12-309 (2001) for failure of the Plaintiff to provide the District of Columbia timely notice of the complaint.  Plaintiff supplies two arguments in opposition to Defendant's motion.  First, he argues that under the exhaustion doctrine the matter has not accrued for purposes of triggering the duty to comply with the notice requirement of §12-309, because he filed a request for reconsideration with the Police and Fire Clinic, which has yet to be decided.  Second, he

2

contends that claims filed under the Human Rights Act are not subject to §12-309's time requirement.

A. Compliance with D.C. Code § 12-309

D.C. Code §12-309 states, in pertinent part,

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

Congress enacted §12-309 in 1933 "to deal with cases in which suits were filed against the District before the statute of limitations expired but long after the occurrence of the underlying event, a circumstance which often made it impossible for the District of Columbia to obtain evidence for use in litigation which may result." H.R. REP. No. 2010, 72d Cong., 2d Sess. 1 (1933). The notice requirement of §12-309 differs from the statute of limitations requirement and was designed specifically to avoid the pitfalls of the statute of limitations. Gwinn v. District of Columbia, 434 A.2d 1376 (D.C. 1981). The statute of limitations is triggered from the time the right to maintain an action accrues. District of Columbia v. Dunmore, 662 A.2d 1356, 1359 (D.C. 1995). However, the point in time when the action accrues is irrelevant for purposes of triggering § 12-309. DeKine v. District of Columbia, 422 A.2d 981, 985 (D.C. 1980). Instead, §12-309 is triggered the moment the plaintiff sustains the alleged injury, not from the moment the cause of action accrues. Id.; see also Brown v. District of Columbia, 853 A.2d 733 (D.C. 2004).

The Plaintiff relies on Pinkney v. District of Columbia, 439 F. Supp. 519 (D.D.C. 1977), to support his argument that under the exhaustion doctrine he is not required to comply with §12-309 until the reconsideration process is finalized by the Police and Fire

3

Clinic. (Opp. at 6–8). <u>Pinkney</u> held that where exhaustion is a necessary condition of

bringing a suit the notice requirement of §12-309 is not triggered until the completion of

the administrative appeal. <u>Pickney</u>, 439 F. Supp. at 519. This Court, as the Defendant

notes in its Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, is not

bound by the decision in <u>Pinkney</u>. <u>See</u> <u>M.A.P. v. Ryan</u>, 285 A.2d 310 (D.C. 1971).

This Court is bound by the decisions of our Court of Appeals which have strictly

construed the time limitation contained in §12-309, <u>see</u> <u>Gross v. District of Columbia</u>,

734 A.2d 1077, 1081 (D.C. 1999); <u>Doe by Fein v. District of Columbia</u>, 697 A.2d 23, 29

(D.C. 1997), even when that interpretation has brought about harsh results, including

extinguishment of meritorious claims. <u>See, e.g.</u>, <u>District of Columbia v. Arnold &</u>

<u>Porter, et al.</u>, 756 A.2d 427, 436-37 (D.C. 2000) (Although some plaintiffs had

demonstrated District of Columbia's negligence at trial, claims of other plaintiffs

dismissed for failure to comply with notice requirement of §12-309).

This Court also is influenced by the reasoning of the Supreme Court in the

analogous anti-discrimination case of <u>Delaware State College v. Ricks</u>, 449 U.S. 250

(1980). At issue in <u>Ricks</u> was whether the 180-day time limit for filing with the Equal

Employment Opportunity Commission (EEOC) began at the time Mr. Ricks was

informed by Delaware State College that he was not granted tenure or, instead, when the

Board of Trustees informed Mr. Ricks that the grievance he had filed was denied. The

Supreme Court held that the time limit for filing with the EEOC began at the first

communication by the college to Mr. Ricks that he would not receive tenure. The Court

reasoned that, "entertaining a grievance complaint of the tenure decision does not suggest

that the earlier decision was in any respect tentative. The grievance procedure, by its

4

nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made." Id. at 261. This Court similarly holds that the requirement to comply with the notice requirement of §12-309 was triggered when the Plaintiff received the letter informing him that his conditional job offer was withdrawn, not when the Police and Fire Clinic decides his request for reconsideration.

## B. D.C. Human Rights Act

In his opposition, Plaintiff also argues that providing notice under §12-309 is not a requirement for brining a claim under the Human Rights Act because the Act contains no references to §12-309 or any other notice requirement. (Opp. at 9). Plaintiff further argues that the inclusion of language in other D.C. statutes, such as the Whistleblower Protection Act, D.C. Code §1-615.54(a) (2001), directing compliance with §12-309 "evidences a legislative intent that the §12-309 notice is not required for claims under D.C. Human Rights Act." (Opp. at 9-10). Plaintiff's argument is unsupported by any authority and ignores the plain language of §12-309 which clearly states that "an action *may not be maintained* against the District of Columbia" unless the notice requirement of §12-309 is complied with. D.C. Code, §12-309 (2001) (emphasis added). In addition, the Court of Appeals has held that §12-309 "imposes a notice requirement on everyone with a tort claim against the District of Columbia." Dunmore, 662 A.2d at 1358. Plaintiff's argument fails because a claim under the Human Rights Act, like any other tort claim against the District of Columbia, must comply with the requirements of §12-309.

## C. Conclusion

Compliance with D.C. Code, §12-309 is mandatory. See District of Columbia v. Dunmore, 662 A.2d 1356 (D.C. 1995); Hardy v. District of Columbia, 616 A.2d 338, 340

(D.C. 1992); Romer v. District of Columbia, 449 A.2d 1097, 1101 (D.C. 1982); Gwinn v. District of Columbia, 434 A.2d 1376, 1378 (D.C. 1981). Plaintiff's notice requirement under §12-309 was triggered at the time he received the letter from the D.C. Fire and Emergency Medical Services Clinic withdrawing his conditional job offer. Plaintiff received the letter withdrawing his conditional job offer on February 11, 2004 and sent a claim letter to Mayor Anthony Williams on September 10, 2004, approximately a month after his time limit had expired. Plaintiff was required to comply with §12-309 when filing a claim under the Human Rights Act and failed to do so. Therefore, Defendant's Motion to Dismiss must be and is granted.

Gerald I. Fisher
Associate Judge

Copies to:

Diane A. Seltzer, Esq.
5301 Wisconsin Avenue, N.W.
Suite 570
Washington, DC 20015

Carl Schifferle, Esq.
Assistant Attorney General
Suite 600S
441 4th Street, N.W.
Washington, DC 20001

6