UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GARRINA BYRD, ANNETTE BURNS, DEMERA GASKINS, AND CARMEN JEAN-BAPTISTE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.  06-0522 (HHK/AK) |
| DISTRICT OF COLUMBIA, | ) ) | |
| Defendant. | ) ) | |

_____)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT,
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiffs, through their undersigned counsel, hereby submit their Opposition to

Defendant's Motion to Dismiss the Third Amended Complaint or, in the Alternative, for

Summary Judgment ("Motion to Dismiss").  For the reasons presented below, Defendant's

Motion to Dismiss should be denied.

**I.      BACKGROUND**

Plaintiffs Garrina Byrd, Annette Burns, Demera Gaskins, and Carmen Jean-Baptiste

allege that they, and other female employees, were subjected to severe sexual harassment and

*quid pro quo* demands from management personnel.  Despite myriad complaints by the

Plaintiffs, other female employees, and the union to District of Columbia managers and officials,

the systemic harassment and discrimination persisted.   Through this case, the Plaintiffs seek

injunctive and other appropriate relief to redress discrimination, harassment, and retaliation they

suffered while employed by the District of Columbia.

In its motion, Defendant has not moved for dismissal or judgment with regard to all of Plaintiffs' claims.  Instead, Defendant seeks to dismiss only the following claims:

- 42 U.S.C. § 1983 ("Section 1983") claims for all Plaintiffs;[1]

- Title VII claims for Plaintiffs Burns, Gaskins, and Jean-Baptiste; and

- District of Columbia Human Rights Act ("DCHRA") claims for Plaintiffs Burns and Gaskins.

Defendant has not moved to dismiss any of the following claims:

- Plaintiff Byrd's Title VII , DCHRA, and DC Whistleblower Act claims;

- Plaintiff Jean-Baptiste's DCHRA and DC Whistleblower Act claims;

As to Defendant's arguments regarding Plaintiff's claims under Section 1983, Defendant misapplies the relevant standards and precedents governing these claims and ignores the detailed factual allegations in the Third Amended Complaint, which, as described below, are sufficient to withstand a motion to dismiss regarding Plaintiffs' claims of constitutional violations and regarding the bases for municipal liability.  Similarly, Defendant's assertions as to alleged procedural deficiencies in the Title VII and DCHRA claims of Plaintiffs Burns, Gaskins, and Jean-Baptiste are without merit, and Defendant's motion should be denied.

## II.    ARGUMENT

### A.    The applicable legal standards

"When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  *Rahman v. Johanns,* No. 06CV1283, 2007 WL 2248048, at *6 (D.D.C. Aug. 7, 2007) (quoting *Leatherman v. Tarrant County Narcotics & Coordination Unit,*

---

[1]  Although Defendant states in passing that it moves to dismiss Plaintiffs' claims under the First Amendment as well as the Fifth Amendment to the Constitution, Defendant provides no substantive argument regarding Plaintiffs' First Amendment claims.  Nonetheless, Plaintiffs briefly address these claims *infra* at Section II.B.3.

507 U.S. 163, 164 (1993)).  As such, the "plaintiff must be given every favorable inference that

may be drawn from the allegations of fact."  *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974)).  A claim should not be dismissed for failure to state a claim even if it appears on the

face of the pleadings that the chance of "recovery is remote and unlikely."  *Id.* (quoting *Scheuer*

at 236).

Further, the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007),

specifically emphasized the continuing validity of its prior holding in *Swierkiewicz v. Sorema*

*N.A.,* 534 U.S. 506, 508 (2002), in which the Court held that a plaintiff alleging discrimination is

not subject to a heightened pleading requirement and, instead, need only state his claims and the

grounds showing entitlement to relief.  *Twombly*, 127 S.Ct. at 1973-74; *see also Leatherman,*

507 U.S. at 163-69 (plaintiffs alleging municipal liability under Section 1983 may not be held to

a heightened pleading standard).

Defendant's motion is properly treated as a motion to dismiss under Fed. R. Civ. P.

12(b)(6).  However, if the Court determines that the motion is, instead, one for summary

judgment, Plaintiffs submit that the motion should likewise be dismissed or, in the alternative,

stayed pending discovery, which is necessary for the reasons discussed in this Opposition as well

as the attached Fed. R. Civ. P. 56(f) Declaration of Plaintiffs' Counsel.  Ex. 1.[2]

For the reasons described below, Plaintiffs have met their burden to state a claim for

relief that is plausible on its face.

**B.    Plaintiffs' allegations state a claim for relief under 42 U.S.C. § 1983**

Section 1983 provides a cause of action for monetary damages and injunctive relief

against "[e]very person who, under color of [law] . . . subjects or causes to be subjected, any

---

[2]  Plaintiffs do not dispute the following paragraphs in Defendant's Undisputed Material Facts:  ¶¶ 1-6, 9, 11-13.  As to ¶ 14, *see infra* at Section II.D.3.  Because discovery has not been conducted regarding Plaintiffs Burns and Gaskins, the remaining alleged facts cannot be admitted or disputed at this time.

person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." *Daskalea v. District of Columbia*, 227 F.3d 433, 440 (D.C. Cir. 2000) (quoting 42 U.S.C. § 1983). "Although a municipality's liability cannot rest on a *respondeat superior* theory . . . a municipality can be liable under Section 1983 'when execution of a government's *policy* or *custom* . . . inflicts [an] injury.'" *Atchison v. District of Columbia,* 73 F.3d 418, 420 (D.C. Cir. 1996) (emphasis in original) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 691, 694 (1978)).

To determine municipal liability under Section 1983, a two-step analysis is used. First, the court determines whether the plaintiff has established a predicate constitutional violation. *Turner v. District of Columbia,* 383 F. Supp.2d 157, 166 (D.D.C. 2005) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). Second, the court determines whether "a policy or custom of the District of Columbia caused the constitutional violation alleged under the first prong." *Id.* (quoting *Baker*, 326 F.3d at 1306; *Monell*, 436 U.S. at 694.

### 1.    *Plaintiffs have alleged a predicate constitutional violation(s)*

The D.C. Circuit has held that a plaintiff has a constitutional right not to be discriminated again on the basis of her sex. *Oates v. District of Columbia,* 824 F.2d 87, 90 (D.C. Cir. 1987) ("To make out her claim under 42 U.S.C. § 1983, [a plaintiff] must establish that, acting under color of law, defendants deprived her of her constitutional right not to be discriminated against on account of her sex.") (citing *Davis v. Passman*, 442 U.S. 228 (1979)). This Court has also held that the District may be liable under Section 1983 when its employees inflict injury on women while executing a government custom of sexual harassment, notwithstanding the defendant's official policies regarding sexual misconduct. *Women's Prisoners of District of Columbia Dep't of Corrections v. District of Columbia*, 877 F. Supp. 634, 666 (D.D.C. 1994),

*rev'd on other grounds*, *Women's Prisoners of District of Columbia Dep't of Corrections v.*

*District of Columbia*, 93 F.3d 910 (D.C. Cir. 1996).[3]

Here, Plaintiffs have alleged specific facts which state a claim that they have been

discriminated against on account of their sex.  Even a small sampling of the Third Amended

Complaint yields clear allegations of sexual discrimination/harassment:[4]

- ■ systemic discrimination and retaliation [which] includes, but is not limited to, a sexually hostile work environment, *quid pro quo* discrimination, and/or retaliation in violation of [various statutes] (¶ 1);

- ■ each time that Byrd's term employment neared its end date, Thompson [her manager] would escalate his demands for sexual favors in exchange for renewing her employment contract.  Thompson eventually *required Plaintiff to have sexual intercourse with him or lose her D.C. government position* (¶ 22);

- ■ during Burns' employment she was subjected to routine sexual harassment by her manager, Darnell Thompson, including, but not limited to, his *sexual assault of Burns when she was eight months pregnant* and other physical and verbal sexual harassment that occurred on a regular basis (¶ 34);

- ■ during Gaskins' employment she was subjected to routine and extreme sexual harassment by her manager, Darnell Thompson, including, but not limited to, *sexual intercourse and other physical harassment, including groping and kissing*, as well as verbal harassment that occurred on a regular basis (¶ 59);

- ■ during Jean-Baptiste's employment she was subjected to *sexual harassment including, but not limited to, inappropriate physical touching and offensive verbal harassment* that occurred on a regular basis.  This harassment was perpetrated by a male supervisor"(¶ 69) (emphasis added).

*See also* Third Am. Compl.  ¶¶ 3, 4, 16, 17, 21-23, 26, 29, 30, 31, 37, 38, 43, 49, 50, 51, 60, 62,

70, 71, 72, 91-95, 110-17.[5]  Simply put, Defendant's claim that Plaintiffs failed to allege a

---

[3]  Moreover, this Court has held that Section 1983 claims for sexual harassment should be governed by Title VII standards.  *Turner*, 383 F. Supp.2d at 166-67; *see also Oates*, 824 F.2d at 90 (citing, *inter alia*, *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C. Cir. 1984)).  Defendant here has made no argument that Plaintiffs failed to state a substantive claim for relief under Title VII; instead, Defendant asserts that certain Plaintiffs have not administratively exhausted their claims, a requirement which is inapplicable to Section 1983 claims.  *Jenkins v. Washington Convention Center*, 59 F. Supp. 2d 78, 84-85 (D.D.C. 1999) (citing *Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 104 (1981)).

[4]  Plaintiffs incorporated by reference Complaint paragraphs 1-79 into their request for relief under the Fifth Amendment through Section 1983.  *See* Third Am. Compl. ¶ 91.

"factually supported inference of intent to harass" (Def.'s Mot. Dismiss at 11), fails the straight-face test.  Consistent with *Oates, Women's Prisoners*, *Turner,* and *Lerner,* Plaintiffs have pled sufficient facts to support a predicate constitutional violation(s).

**2.    *A policy or custom of the District of Columbia caused the alleged constitutional violations***

Defendant's Motion to Dismiss does not discuss the appropriate standards to determine municipal liability under the Fifth Amendment through Section 1983.  Plaintiffs do so here.  The District of Columbia Circuit has held that a "policy" can be set by a municipality in a number of ways which cause it to be liable under Section 1983:  (1) the explicit setting of a policy by the government that violates that Constitution; (2) the action of a policy maker within the government; (3) the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom;" or (4) the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.  *Turner*, 383 F. Supp. 2d at 166 (quoting *Baker*, 326 F.3d at 1306-07).[6]  In the case at bar, Plaintiffs' bases for municipal liablity encompass all but the first prong.  The second and third prongs are addressed together in the next section; the fourth prong is addressed separately in Section II.B.2.b.

---

[5]  Each Plaintiff also alleges that she was denied continued employment with the District of Columbia as a result of sexual discrimination and/or retaliation.  Third Am. Compl. ¶¶ 28, 50, 62, 78.  *See Lerner v. District of Columbia,* 362 F. Supp. 2d 149, 159 (D.D.C. 2005) (noting that the District concedes that plaintiff has a property right in continuing employment with the District).

[6]  *Turner* involved, *inter alia,* a sexual harassment claim under Section 1983 in which the District of Columbia, but no individual officials, were sued.

   a.   *Even though it is not a requirement at this stage, Plaintiffs have identified persons who may have policy-making authority*

As to prongs two and three, it is not a pleading requirement – as Defendant wrongly asserts – that Plaintiffs name an individual (either as a party or a witness) with policy-making authority in their Complaint.  *See* Def.'s Mot. Dismiss at 11-12 (relying upon *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997)).  Notably, the *Triplett* holding involved a case in which all discovery had been completed and a verdict had been reached after a trial. *Triplett*, 108 F.3d at 1452.  More importantly, this Court has specifically rejected such a pleading requirement.  *Amons v. District of Columbia*, 231 F. Supp. 2d 109, 115-16 (D.D.C. 2002) ("*Triplett* does not stand for the proposition that a plaintiff, at the pleading stage, must name a policy-making official in his complaint . . . .") (quoting *Atchison,* 73 F.3d at 421; *Williams v. District of Columbia*, 916 F. Supp. 1 (D.D.C. 1996) (citations omitted); *see also Leatherman,* 507 U.S. at 163-69 (plaintiffs alleging municipal liability under Section 1983 may not be held to a heightened pleading standard).

Even so, Plaintiffs have identified certain District of Columbia officials, including Facilities Manager Darnell Thompson, one of the primary harassers.   Third Am. Compl. ¶¶ 15, 24-26, 27, 39, 40, 51-52, 73, 74, 76.  Other officials include, but are not limited to, Neil Albert and Neil Stanley, who failed to respond adequately to persistent complaints of extreme sexual harassment and intimidation, such that this conduct had become a "custom" within the Department.  *See id.* ¶¶ 41, 42, 44-47, 53, 63, 77.  Albert and Stanley were high-ranking officials within the Department (the former was Director of the Department, and the latter was General Counsel and Interim Director).  As to Albert, Stanley, and Thompson, it may be inferred that some or all had policy-making authority.  *See Lerner,* 362 F. Supp. 2d at 160 ("No case from our Court of Appeals holds, as a matter of law, that only the Mayor, the City Council, and the

Director the Department of Corrections can be final policymakers") (quoting *Caldwell v. Hammonds*, 53 F. Supp. 2d 1, 8 (D.D.C. 1999)).  Defendant has further failed to provide any evidence regarding the policy-making status of these, or other, individuals named in the Complaint.[7]  *See Ashford v. District of Columbia,* Civ. 95-2334, 1997 WL 31008, at *3 (D.D.C. Jan. 21, 1997) (because the record is silent as to the nature and scope of the officer's authority, the motion to dismiss must be denied).  On this basis alone, therefore, Defendant's motion to dismiss should be denied.

In addition, the Third Amended Complaint alleges that other individuals in the Department of Parks and Recreation engaged in and/or condoned a well-known pattern of sexual harassment, discrimination, and/or retaliation.  *See, e.g.,* Third Am. Compl. ¶¶ 16, 17, 21, 22, 31, 38, 41-44, 51-53, 59, 62, 69-74.  Because discovery has not yet commenced for Plaintiffs Burns, Gaskins, and Jean-Baptiste, Plaintiffs are uncertain as to each specific District of Columbia government official who was involved in the alleged perpetuation of sexual harassment and discrimination and/or who failed to act even though such harassment had become a "custom" within the Department of Parks and Recreation.  *See* Ex. 1.  Even though discovery has not yet commenced, given the sufficiency of the allegations in the Third Amended Complaint, Defendant's motion to dismiss should be denied.

> b.    *The Third Amended Complaint alleges that the District of Columbia demonstrated "deliberate indifference" to the risk of constitutional violations*

As to the fourth prong, the Third Amended Complaint delineates allegations regarding the failure of the District of Columbia to respond to a need for training and/or supervision of its

---

[7]    Nor should Defendant be permitted to do so in its reply brief.

employees which demonstrates "deliberate indifference" regarding potential constitutional violations.  Third Am. Compl. ¶¶ 18, 20, 46-49, 53, 54, 60, 64, 73, 92.[8]

"Deliberate indifference" may be established through evidence related to a failure to train or supervise individuals as well as through other municipal "inaction giving rise to or endorsing a custom."  *See, e.g., Triplett*, 108 F.3d at 1453; *Warren*, 353 F.3d at 39 ("faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction"); *Women's Prisoners v. District of Columbia*, 877 F. Supp. at 665-67 ("deliberate indifference" toward sexual harassment may be inferred from the fact that women prisoners filed complaints to prison administrators, that the District of Columbia failed to respond reasonably to such complaints, that its staff did not receive training regarding sexual harassment, and that there were no posted procedures for reporting harassment); *City of Canton v. Harris,* 489 U.S. 378, 388-89 n. 7 (1989) (recognizing municipal liability under Section 1983 for failure to train adequately); *Board of County Comm'rs v. Brown,* 520 U.S. 397, 407-08 (1997); *Daskalea*, 227 F.3d at 441 ("a city's inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain."); *Rogala v. District of Columbia,* 161 F.3d 44, 56 (D.C. Cir. 1998) (recognizing liability for failure to train or supervise); *Atchison,* 73 F.3d at 419 (failure to train); *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (same).

Here, the number and frequency of complaints made to various District of Columbia managers and officials are staggering, and the Third Amended Complaint clearly alleges

---

[8]  Under this fourth prong, a defendant may be liable even if no official with policy making authority is identified or implicated in the complaint.  *See Warren v. District of Columbia,* 353 F.3d 36, 39-40 (D.C. Cir. 2004) ("If [plaintiff] can prove the [constitutional] violations, and prove as well that the District had actual or constructive knowledge of them, he will have established the District's liability.").

"deliberate indifference" under the fourth prong. *See, e.g.,* Third Am. Compl. ¶ 92 ("Defendant's failure to respond adequately to complaints and/or evidence of sexual harassment, as well as its failure to adequately train, supervise, hire, and/or retain its employees constitutes deliberate indifference toward the Fifth Amendment constitutional rights of the Plaintiffs"); *id.* ¶ 20 ("Byrd also reported her manager's harassment to other managers and officials. However, no one did anything to stop Thompson's harassment or to lessen the hostility in the workplace created by Thompson's behavior, which was further amplified by Defendant's lack of response to Byrd's complaints."); *id.* ¶ 35 ("In 2002, Burns reported Thompson's sexual harassment to her supervisor, James Boone. Boone responded that he "saw it coming" and stated that other females made similar complaints about Thompson.") *id.* ¶ 37 (after complaining, "Burns did not see any change in Mr. Thompson's behavior; rather, it got worse"); *see also id.* ¶¶ 18, 19, 24, 25, 27, 39, 40-45, 47, 51-53, 60, 63, 73, 74, 76, 92, and 94. Further, in a four-page, written complaint, Plaintiff Burns detailed the sexual harassment she suffered at the Department and stated that "other female co-workers who shared similar stories of being touched improperly [felt] scared, violated and powerless to do anything." Ex. 2.

Like *Women's Prisoners v. District of Columbia,* 877 F. Supp. at 666, Defendant here also failed to post procedures, and properly train its employees, about sexual harassment. *See* Third Am. Compl. ¶ 54 ("During the entire time Plaintiff Burns worked at DPR, she was never trained or otherwise informed about how to file an EEO complaint. Further, Burns did not see any posters or information regarding the EEO process or sexual harassment policies, and she did not receive any training about sexual harassment or what to do if such harassment occurred."); *see also id.* ¶¶ 55-56, 64-66. Defendant also failed to adequately train or supervise its employees. *See* Ex. 3, at GB00044 (noting that management officials, including the Labor

Relations Coordinator, believed, wrongly, that if an employee did not want to file a formal

complaint of sexual harassment, no further action was required by the Department); Ex. 4, at

GB00047-48 (noting that the Director and General Counsel of the Department failed to conduct

investigations regarding sexual harassment, failed to discipline the alleged harasser, and that the

Director was "reluctant to do anything to terminate this seemingly acceptable practice and

behavior.").

　　　　This Court and the D.C. Circuit have refused to dismiss Section 1983 claims regarding

Complaints with similar, or significantly less detailed, allegations.  *See, e.g., Amons*, 231 F.

Supp. 2d at 114; *Atchison*, 73 F.3d at 422; *Williams,* 916 F. Supp. 1; *Warren,* 353 F.3d at 39-40.

As such, Plaintiffs' allegations establish Defendant's potential liability, and Defendant's motion

is due to be denied.

　　　　**3.　　　Plaintiffs' First Amendment claims should not be dismissed**

　　　　Although Defendant states in passing that it seeks to dismiss Plaintiffs' claims under the

First Amendment as well as the Fifth Amendment to the Constitution, Defendant provides no

substantive argument regarding Plaintiffs' First Amendment claims,. s*ee* Def.'s Mot. Dismiss at

7-12, and, for this reason alone, this portion of Defendant's motion should be denied.

Nonetheless, Plaintiffs will briefly address these issues as well.

　　　　"The speech of public employees . . . enjoys considerable First Amendment protection . .

. ." *Lerner,* 362 F. Supp. 2d at 166 (quoting *O'Donnell v. Barry,* 148 F.3d 1126, 1133 (D.C. Cir.

1998) (citation omitted)).  A claim for retaliation under the First Amendment is subject to a four-

factor test:  (1) whether the plaintiff was speaking on a matter of public concern; (2) whether the

governmental interest in promoting the efficiency of the public services it performs through its

employees without disruption outweighs plaintiff's interest, as a citizen, in commenting upon

matters of public concern; (3) whether the speech was a "substantial or motivating factor" in prompting the retaliatory act; and (4) whether the defendant would have reached the same decision even in the absence of the protected conduct.  *Lerner*, 362 F. Supp. 2d at 167 (citing *Tao v. Freeh,* 27 F. 3d 635, 638 (D.C. Cir. 1994); *O'Donnell,* 148 F.3d at 1133; *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

"The first two factors are 'questions of law for the court to resolve;' the second two are 'questions of fact ordinarily for the jury.'"  *Id*. (citations omitted).[9]  As to the first factor, in their Complaint, Plaintiffs allege they spoke about matters of public concern; *i.e.,* rampant sexual harassment, discrimination, and retaliation within the Department of Parks and Recreation.  *See, e.g.,* Third Am. Compl. ¶¶ 18, 19, 24, 25, 27, 35, 39-44, 60, 63, 73, 74, 76, 111-13.[10]  *See Tao v. Freeh,* 27 F.3d at 639-40.  Regarding the second factor, Defendant has offered no governmental interest that would outweigh Plaintiffs' interest in commenting upon these matters of public concern.  Plaintiffs have further alleged facts relevant to the third factor, that the speech was a "substantial or motivating factor" in prompting the retaliatory act.  *See id.* ¶¶ 26, 28, 30, 49, 50, 53, 60, 62, 78, 110-16.  Regardless, as this Court has noted, the third and fourth facts are "questions of fact ordinarily for the jury," such that a motion to dismiss for such claims should be denied.  *See Lerner*, 362 F. Supp. 2d at 167.

Moreover, the constitutional deprivations alleged in the Third Amended Complaint include the loss of Plaintiffs' jobs, sexual discrimination, and retaliation for complaints regarding sexual discrimination.  As discussed *supra* at Section II.B.1, sexual discrimination and/or loss of employment may constitute constitutional deprivations.  The Supreme Court has held that

---

[9]   Again, Defendant has made no argument that Plaintiffs failed to meet any of the above criteria.  Nor should Defendant be permitted to raise such arguments in its reply brief.

[10]   Plaintiffs incorporated by reference Complaint paragraphs 1-79 into their request for relief under the First Amendment through Section 1983.  *See* Third Am. Compl. ¶ 110.

retaliation should be treated as a form of sexual discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (holding in a Title IX case that "retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint:  an allegation of sex discrimination").  These allegations comport with binding precedent regarding the definition of a predicate constitutional violation. *See Oates,* 824 F.2d at 90.  Finally, the legal bases for municipal liability are set forth *supra* at Section II.B.2, and have been alleged in the Third Amended Complaint. *See, e.g.,* Third Am. Compl. ¶53 ("Ms. Jackson [union president] reported that, although the Union had reported the incidents to Neil Stanley, then acting Director of DPR, no investigation had occurred.  The Union further reported that *all those who had complained of sexual harassment were 'summarily dismissed from employment* because they were temporary employees.'") (emphasis added); *see also* Third Am. Compl. ¶¶ 18-20, 24-28, 39-52, 60, 62, 63, 73-78.  Thus, Plaintiffs' First Amendment claims should not be dismissed.

**C.    The notice provision of § 12-309 is inapplicable to DCHRA claims**

The mandatory notice requirement in § 12-309 does not apply to employment discrimination actions brought under the DCHRA.[11]  Indeed, the D.C. Circuit has observed that when Congress enacted Section 12-309 in 1933, "there is no evidence that Congress envisioned itself to be acting as other than a local legislature protecting a municipality from the threat of excessive common law tort liability." *Brown v. United States*, 742 F.2d 1498, 1501-02 (D.C. Cir. 1984) (*en banc*).  Thus, the § 12-309 notice requirement applies only to "common law" type actions. *See District of Columbia v. Campbell*, 580 A.2d 1295, 1301-02 (D.C. 1990) (holding that the mandatory notice requirement of § 12-309 applies only to actions sounding in tort).  The court in *Campbell* reasoned that the notice requirement applied only to tort actions because of

---

[11]    Plaintiffs Burns and Gaskins did not file a § 12-309 notice.  Plaintiffs Byrd and Jean-Baptiste did so regarding their DC Whistleblower Act claims and, solely out of an abundance of caution, for their DCHRA claims.

"the District's greater need to receive notice in order to ascertain the facts in the tort context, where the District will often be unaware of any injury caused by a breach of its duty . . . ."  *Id.* at 1302.

This view is confirmed in decisions by this Court.  In *Bowie v. Gonzales*, 433 F. Supp. 2d 24, 33 (D.D.C. 2006), the district court granted summary judgment in favor of the District of Columbia with regard to the D.C. Whistleblower Protection Act because the plaintiff, who was an employee of the District of Columbia, had failed to provide § 12-309 notice.[12]  However, the court denied summary judgment regarding the plaintiff's DCHRA claims.  *Id.* at 33-34.  The court held that it had jurisdiction over the plaintiff's DCHRA claims, and, in so doing, the court implicitly, but clearly, recognized that notice under § 12-309 is not required for a plaintiff to maintain claims brought under DCHRA, even where the employee is the District rather than a private company.

In addition, the administrative process set forth in the District of Columbia Human Rights Act serves the purposes of § 12-309 notice.  For District employees, the process of filing an administrative EEO complaint is mandatory, similar to the mandatory federal EEO complaint process pursuant to Title VII.  D.C. MUN. REGS. tit. 4.[13]  Compliance with this process meets the purposes of § 12-309, *i.e.*, (1) the D.C. government is quickly notified of actions or inactions which may subject it to liability; and (2) D.C. gets an early opportunity to conciliate through the administrative process.  Any attempt to impose an additional burden on victims of discrimination

---

[12]  Importantly, the court in *Bowie v. Gonzales* reached the result it did, applying § 12-309's mandatory notice requirement to the D.C. Whistleblower Protection Act claim, because express statutory language in the D.C. Whistleblower Protection Act states, "A civil action brought pursuant to this section shall comply with the notice requirements of § 12-309."  D.C. CODE § 1-615.54(a).  Thus, the Whistleblower Protection Act is an exception to the rule that the notice requirement applies only to tort-like actions.  The DCHRA, by contrast, has no such provision requiring notice pursuant to § 12-309, even though the DCHRA also applies to the District of Columbia.

[13]  The regulations detail the requirements for reporting discrimination, but do *not* provide notice to employees that each must also comply with the notice requirement of § 12-309.

is inequitable, as well as inconsistent with binding caselaw and contrary to the policy underlying the notice requirement.

Defendant cites unpublished D.C. Superior Court cases, *Cage v. District of Columbia,* No. 05-CA-0991, at 4-7 (D.C. Super. Ct. June 19, 2007), and *McFarlane v. New Leaders for New Schools*, Case No. 04-CA8506 (D.C. Super. Ct. Aug. 7, 2006), for the proposition that claims under the DCHRA are subject to § 12-309's mandatory notice requirement. Defendant fails to note that these cases are of limited precedential value, given that they conflict with established case law in a higher court, *i.e.,* the D.C. Court of Appeals' holding in *District of Columbia v. Campbell*, 580 A.2d 1295, 1301-02 (D.C. 1990). Notably, the court in *McFarlane* cites *Campbell* for another proposition, *i.e.,* that notice on anyone but the Mayor does not comply with the notice requirement, thus implicitly acknowledging *Campbell* as a binding precedent. Def.'s Mot. Dismiss, Ex. 5 at 13. However, the court paid no heed to the other critical holding in *Campbell* — that based on the "plain meaning of the language of § 12-309, it applies only to actions *sounding in tort*." *Campbell*, 580 A.2d at 1302 (emphasis added). In sum, *McFarlane* and *Cage* are inapt because they contradict binding case law.

The District also cites *Descutner v. District of Columbia*, No. 04-CA-8506, at 14 (D.C. Super. Ct. Nov. 10, 2005), a non-binding D.C. Superior Court case, to say that "a claim under the Human Rights Act, like any other tort claim against the District of Columbia, must comply with the requirements of § 12-309." Def.'s Mot. Dismiss, Ex. 6, at 5. However, *Descutner* fails to address the argument that an action pursuant to the DCHRA is not, in its entirety, an action for "unliquidated damages," discussed below, and, therefore, Plaintiffs respectfully submit that for this reason, *Descutner* was decided incorrectly.[14]

---

[14]  The DCHRA is different from tort actions in many respects. DCHRA authorizes relief in the form of temporary restraining orders, injunctions, or any other damages that are appropriate, which would include equitable relief.

Even assuming, *arguendo,* this Court determines that § 12-309 applies to certain claims under the DCHRA, the notice provision does not apply to DCHRA claims involving equitable and/or injunctive relief.

Here, Plaintiffs Burns and Gaskins have sought declaratory judgment, reinstatement, backpay, affirmative job relief, a permanent injunction, and other injunctive relief to remedy Defendant's discrimination against women. *See* Third Am. Compl. ¶ 125(c)-(g). In short, because § 12-309's mandatory notice requirement only applies to actions for "unliquidated damages," a DCHRA action for equitable and/or injunctive relief is not a suit that is subject to the notice requirement. *See* D.C. CODE § 12-309. Notably, *Cage v. District of Columbia*, a case relied upon by Defendant, explicitly holds that § 12-309 does *not* apply to claims for injunctive and/or equitable relief under DCHRA. Def.'s Mot. Dismiss, Ex. 4, at 6. Therefore, insofar as Plaintiffs Burns and Gaskins seek injunctive and/or equitable relief, their DCHRA claims should not be dismissed for failure to provide § 12-309 notice. Defendant's Motion to Dismiss is thus due to be denied.

**D.    The Title VII claims of Plaintiffs Burns, Gaskins, and Jean-Baptiste are properly before the Court**

The District argues that it is entitled to dismissal of Plaintiffs Burns' and Gaskins' Title VII claims because they failed to file a timely charge of discrimination. Def.'s Mot. Dismiss at 17-19. In addition, Defendant claims that Plaintiff Jean-Baptiste's Title VII claims must be dismissed because she has not yet received a right-to-sue notice. *Id.* at 19. Defendant's motion regarding the timeliness of these claims should be denied for three reasons. First, discovery is

---

D.C. CODE §§ 2-1403.07, 2-1403.16. Thus, a DCHRA action is not purely a "tort-like" action. Supreme Court precedent establishes that, at least regarding equitable relief, Title VII (which is very similar to DCHRA) is not "tort-like." *United States v. Burke*, 504 U.S. 229, 237-42 (1992) (Title VII claims are not tort-like and therefore Title VII awards are not excludable from gross income for federal income tax purposes); *see also Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (distinguishing suits for money damages from equitable actions for specific relief).

necessary to determine whether Plaintiff Burns' and Gaskins' Title VII claims should be considered timely. Plaintiff Burns and Gaskins assert that the EEOC deadline in their case is subject to waiver, estoppel, or equitable tolling due to, *inter alia*, Defendant's failure to respond to their numerous complaints of discrimination. Second, even assuming the Court determines that neither Gaskins nor Burns had a timely EEOC charge, both Plaintiffs may rely upon Plaintiff Garrina Byrd's timely filed EEOC charge through the single-filing rule. Third, Plaintiff Jean-Baptiste's claims should not be dismissed pending receipt of her right-to-sue notice.

      1.    *Discovery is necessary to demonstrate that Burns' and Gaskins' Title VII claims should be considered timely under waiver, estoppel and/or equitable tolling theories*

"Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 US. 385, 393 (1982). Here, Plaintiffs assert that waiver, estoppel, and/or equitable tolling should apply to Burns' and Gaskins' cases based on the District of Columbia's conduct regarding their complaints and its subsequent investigation, or lack thereof. *See* Third Am. Compl. ¶¶ 54-56, 64-66. Burns filed a charge with the EEOC/DC Office of Human Rights in February 2006 (Ex. 5); Gaskins did not file a charge with these agencies.

As the D.C. Circuit has expressed, district courts are required to undertake a "specific inquiry into and findings on the existence or non-existence of such [equitable] considerations" before summarily dismissing discrimination claims. *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982).

Importantly, no discovery has been conducted regarding Plaintiff Burns' and Gaskins' claims. Discovery regarding the applicability of equitable tolling to EEOC charge deadlines

should be permitted so that the Court may decide this issue only after the development of the factual record. *See Campbell v. Nat'l R.R. Passenger Corp.,* 163 F. Supp. 2d 19, 26 (D.D.C. 2001). Burns asserts that she complained about the extreme sexual harassment to, among other people, Neil Albert, the Director of the Department of Parks and Recreation. Indeed, Burns complained in writing, detailing the sexual harassment she had suffered. *See* Ex. 2. Likewise, Gaskins alleges she reported the discrimination to a supervisor and to Neil Albert and/or Neil Stanley. *See* Third Am. Compl. ¶¶ 60, 63. Plaintiffs believe discovery will show that, as Director, Albert and/or Stanley had the responsibility to investigate the complaint promptly, impose any necessary discipline, assist Plaintiffs with processing their complaints, and inform them of the results of any investigation. Plaintiffs allege that Defendant failed in these responsibilities.

Discovery which Plaintiffs assert is necessary to decide the issues related to Burns' and Gaskins' EEOC charge includes, but is not limited to, evidence regarding (1) Defendant's policies, practices, and procedures regarding complaints of employment discrimination, including the role and responsibility of Neil Albert, Director of the Department of Parks and Recreation (to whom Burns and Gaskins complained), and/or Neil Stanley, in implementing these procedures; (2) the policies, practices, and procedures, if any, governing the investigation that is supposed to occur after a complaint is received including, but not limited to, the policies outlined in DCMA 4 Chapter 1, § 104.1(a)-(b); (3) the numerous complaints made by Burns including, but not limited to, complaints she made to supervisor James Boone (Third Am. Compl. ¶ 35), and Albert (*id.* ¶ 41-42), as well as Gaskins' complaints to her supervisor and Albert and/or Stanley (¶¶ 60, 63); (4) the numerous complaints of sexual harassment related to Thompson which were made by at least 3 to 6 other female employees (*id.* ¶¶ 51-52); (5) what

investigation, if any, occurred in response to Burns', Gaskins, and the other female employees' complaints, (6) when, if ever, Defendant notified Burns or Gaskins of the results of its investigation, (7) whether Defendant informed employees about or otherwise posted information regarding sexual harassment and an employee's right to complain and/or file a charge of discrimination; (8) any representations Defendant or its agent, employee, and/or representatives made to Plaintiffs regarding the status of their complaints; and (9) whether Burns, Gaskins and other female employees, many of whom were hired through "welfare-to-work" programs, had any knowledge regarding sexual harassment and/or the EEO process for District of Columbia employees. *See also* Ex. 1.

The D.C. Circuit has held that evidence of the nature Plaintiffs seek through discovery here (*i.e*., that Defendant misled Burns and Gaskins regarding the status of their complaints and/or was grossly negligent in processing their repeated complaints of discrimination), is sufficient to withstand a motion for summary judgment under the equitable estoppel theory. *See Currier v. Radio Free Europe*, 159 F. 3d 1363, 1367-68 (D.C. Cir. 1999) (holding that an employer's alleged statement to an employee, "Mr. Gillette said that Mr. Morgan was my boss and would always be my boss," was sufficient to survive summary judgment under equitable estoppel because the statement may constitute a misleading statement that a complaint would be resolved in the employee's favor).

Consistent with *Campbell* and *Currier,* at this early stage in the litigation, before any discovery has been conducted, much less completed, it would be inappropriate to dismiss Burns' or Gaskins' Title VII claims. The facts pled in the Third Amended Complaint state a viable claim of waiver, estoppel, or equitable tolling as it relates to Burns' and Gaskins' EEOC charges, and Defendant's motion should therefore be denied.

**2.      The "Single-filing rule" allows Burns and Gaskins to rely upon Byrd's timely filed EEOC charge**

Garrina Byrd, co-Plaintiff in this action, filed a timely DCOHR/EEOC charge in which she alleges that she was regularly sexually harassed by Darnell Thompson while she worked for the Department of Parks and Recreation – the same manager who allegedly harassed Burns and Gaskins.  *See* Ex. 6.  Therefore, even assuming, *arguendo*, the Court determines that Burns' and Gaskins' did not personally exhaust the EEOC charge requirements and that these requirements are not subject to waiver, estoppel, or equitable tolling, both Plaintiffs may rely upon Byrd's EEOC charge under the "single-filing rule."

"The single file rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff."  *Campbell*, 163 F. Supp. 2d at 25 (citing *DeMedina v. Reinhardt,* 686 F.2d 997, 1013 (D.C. Cir. 1982); *Foster v. Gueory,* 655 F.2d 1319, 1321-22 (D.C. Cir. 1981); *EEOC v. Air Line Pilots Assoc.*, 885 F. Supp. 289 (D.D.C. 1995)).  The single-filing rule was established because "[t]he 'principal functions of the EEOC filing requirement' are to enable 'the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation.'"  *DeMedina*, 686 F.2d at 1013 (citation omitted); *see also Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 196 (6th Cir. 1995) ("[A] charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed").

The scope of claims covered in a judicial complaint is not limited to the face of an EEOC Charge, but, rather, encompasses the entire scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.  *Sanchez v. Standard*

*Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *see also President v. Vance*, 627 F.2d 353, 362

n.65 (D.C. Cir. 1980) (citing *Sanchez*, 431 F.2d at 466, with approval).[15]

Where a "substantially related" claim "arises out of the same time frame as the timely

filed claim, the complainant need not satisfy Title VII's filing requirement to recover." *E.E.O.C.*

*v. Wilson Metal Casket Co.*, 24 F.3d 836, 839-40 (6th Cir. 1994). The claims of the filing

plaintiff and non-filing plaintiffs need not be identical, but merely related:

> [T]he test for application of the single-filing rule is not whether the claims are
> identical but whether the EEOC complaints are similar enough such that the
> policies behind Title VII are not contravened by excusing the filings. . . . A Title
> VII complaint may include any 'discrimination like or reasonably related to the
> allegations of the EEOC charge and growing out of such allegations.'

*Zuckerstein v. Argonne National Laboratory*, 663 F. Supp. 569, 574-75 (N.D. Ill. 1987)

(citations omitted); *see also Howlett*, 49 F.3d at 195-96.

The single-filing rule applies to Burns' and Gaskins' Title VII claims because their

discrimination claims are very similar to the discrimination alleged in Byrd's EEOC charge.

Indeed, in the case at bar, the Court has held that the claims of Plaintiff Byrd, Burns, and Gaskins

constitute the "same transaction or occurrence" and that their claims are tied together by

common questions of law and fact. Memorandum Order of Mag. J. Kay at 6-7 [Dkt. 50]. In the

context of the single-filing rule, the D.C. Circuit has held that where two plaintiffs "allege that

they were similarly situated and received the same discriminatory treatment, the purposes of the

exhaustion requirement are adequately served if one plaintiff has filed an EEOC complaint."

*DeMedina*, 686 F.2d at 1013. The *DeMedina* court found that where two plaintiffs were GS-11

---

[15]     Under *Sanchez*, the scope of claims covered in a judicial complaint may encompass the entire scope of the
EEOC investigation which can reasonably expected to grow out of the charge of discrimination. 431 F.2d at 466.
The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a
precursor to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and
conciliatory procedures of the EEOC. *Id.* Thus, the subsequent civil action is much more intimately related to the
EEOC investigation than to the words of the charge which originally triggered the investigation. *Id.*

Agency employees, they were "virtually identical" because each claimed intentional sex discrimination related to promotions as well as equal pay claims.  *Id.*  Likewise, in the case at bar, Plaintiffs Burns, Gaskins, and Byrd are similarly situated for purposes of the single-filing rule as their respective allegations, and the Court's prior Memorandum Order, demonstrate.  All three plaintiffs worked as hourly employees for the Department of Parks and Recreation, all assert claims of intentional sex discrimination, and, importantly, these claims are directly related to harassment by the same manager, Darnell Thompson.  Byrd, Burns, and Gaskins allege that the discrimination occurred regularly and that their complaints about the harassment were not adequately addressed.

Further, under the single-filing rule, the discriminatory conduct must have occurred within the same time frame.  Assuming, as Defendant did in its motion to dismiss, that Burns' last day of work was January 19, 2004, her claims accrued less than one-and-a-half years before Byrd's EEOC charge was filed in April 2005.  Likewise, Defendant asserts that Gaskins' was terminated on March 23, 2005.  Def.'s Mot. Dismiss at 5.  Her claims of sexual harassment and discrimination occurred during 2004 and 2005.  Third Am. Compl. ¶ 58.  Thus, Gaskins' claims are very close in time to Byrd's claims.

Federal courts of appeal have held that claims accruing farther apart in time than the time periods at issue here can be proceed under the single-filing rule.  For example, in *Wilson Metal Casket Co.*, 24 F.3d at 840, the court rejected a narrow definition of "similar discriminatory treatment in the *same time frame*," for purposes of the single-filing rule.  In *Wilson Metal Casket,* one plaintiff, Ellis, was harassed in 1982 and 1984 and was eventually terminated in 1984.  *Id.* at 839.  Ellis then filed an EEOC charge in 1984.  *Id.*  A second plaintiff, McMullan, did not begin working for the company until 1987.  *Id.*  She too was harassed and terminated, both of which

occurred in 1987. *Id.* McMullan, however, did not file an EEOC charge. *Id.* Thus, McMullan did not even begin her employment with the company until *three years after* Ellis' EEOC charge, upon which McMullan eventually sought to piggyback, was filed. The defendant argued that McMullan's claims must be dismissed because she did not file an EEOC charge and because her claim did not arise during the same time frame as Ellis' claim. *Id.* Nevertheless, the court rejected defendant's argument holding that McMullan could piggyback onto the EEOC charge, even though a three-year period elapsed between McMullan's claim and the filing of Ellis' EEOC charge. *See also Snell v. Suffolk Co.*, 782 F.2d 1094, 1101 (2nd Cir. 1986) (applying the single-filing rule and holding that additional EEOC charges would be "wholly fruitless" where discrimination of a similar nature occurred during a three-year period).

Here, it must be inferred that Burns' claims accrued with one-and-a-half years of the filing of Byrd's EEOC charge and that Gaskins' claims accrued very close in time to Byrd's claims. Thus, like *DeMedina,* Plaintiff Burns, Gaskins, and Byrd are similarly situated for purposes of the single-filing rule and Defendant's Motion to Dismiss should be denied.[16]

---

[16] Defendant may argue that Burns' claims are not subject to the single-filing rule. In *Campbell,* the court determined that the single-filing rule is inapplicable where a plaintiff files an EEOC charge but does not file a lawsuit within 90 days of receipt of the right-to-sue notice. *See Campbell,* 163 F. Supp. 2d at 22 (referencing claims of plaintiffs who previously filed a charge "but failed to sue"); *id.* at 26 (discussing the single-filing rule in the context of "the statute of limitations in her right to sue letter"). Plaintiff respectfully submits that *Campbell* was decided incorrectly and that the cases cited above, particularly *Wilson Metal Casket Co.* and *Howlett*, are more applicable to the case at bar. Further, based on Plaintiff's counsel's research, it does not appear that the D.C. Circuit Court of Appeals has addressed the issue of whether a plaintiff who has filed her own EEOC charge may rely upon the single-filing rule.

Nonetheless, *Campbell* supports Plaintiff Burns' ability to use the single-filing rule in this case for two reasons. First, unlike some of the *Campbell* plaintiffs, Burns did file her lawsuit within 90 days of receipt of her right-to-sue notice. Second – and more importantly – the holding in *Campbell* expressly states that the single-filing rule *does* apply to plaintiff's claims which were not covered by a timely EEOC charge. *Campbell,* 163 F. Supp. 2d at 26 n.6 (the single-filing rule may be applied to "conduct that has not been the subject of a *now stale* EEOC charge") (emphasis added). The use of the term "now stale" demonstrates that the court was referring to an EEOC charge which was filed timely but became "stale" when no case was filed in court within 90 days after the receipt of the right-to-sue notice. Here, if the Court determines that equitable principles should not toll Burns' EEOC deadline, then Burns never had a timely filed EEOC charge. If so, then the discrimination claims at issue in Burns' lawsuit have not been subject to a timely filed EEOC charge. Indeed, the EEOC dismissed Burns' charge because her "charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge." Thus, under *Campbell,* Burns' claims should be subject to the single-filing rule

###    3.    *Plaintiff Jean-Baptiste's Title VII claims are properly before the Court*

Defendant argues incorrectly that Plaintiff Jean-Baptiste's Title VII claims should be dismissed because she has not received her right-to-sue notice.  Notably, Defendant does not dispute that Jean-Baptiste timely filed her charge of discrimination.  This Court has held that "receipt by plaintiff of right-to-sue letter after the complaint was filed cures the failure to receive the notice before filing a federal lawsuit."  *Quarles v. Gen. Inv. & Dev't Co.*, 260 F. Supp. 2d 1, 17 n. 13 (D.D.C. 2003); *Rauh v. Coyne*, 744 F. Supp. 1186, 1189 (D.D.C. 1990) (same); *see also Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d 110, 123 (D.D.C. 2006) (holding that a complaint should not be dismissed if, after filing the complaint but before dismissal, the plaintiff receives a right-to-sue letter from the EEOC) (citing *Gomes v. Trustees for Harvard Univ.*, No. 87-148, 1987 WL 16335, at *1 (D.D.C. Aug. 18, 1987); *Quarles*, 260 F. Supp.2d at 17 n. 13; *Rauh*, 744 F. Supp. at 1189)).  Here, Plaintiff has requested her right-to-sue letter from the EEOC and will notify the Court and Defendant upon receipt.  Importantly, the case relied upon by Defendant, *Christopher v. Billington*, 43 F. Supp. 2d 39, 47 (D.D.C. 1999), did not address the situation at issue here:  a plaintiff who has filed a timely EEOC charge and has requested a right-to-sue notice, and is simply awaiting receipt of same.  Therefore, *Christopher v. Billington* is inapposite.

Plaintiffs submit that the interests of justice and judicial efficiency will be best served by allowing Plaintiff Jean-Baptiste to notify the Court and Defendant upon receipt of the right-to-sue letter, rather than dismissing her claims (only to have her re-file an additional complaint upon receipt of the right-to-sue letter).  Accordingly, Defendant's motion should be denied.

---

because her late-filed charge is not "now stale" – it was never timely and therefore was never a valid charge. Plaintiff Gaskins did not file an EEOC charge and, thus, this analysis is inapplicable to her claims.

**E.    Plaintiffs Burns' and Gaskins' DCHRA claims are properly before the Court**

For the reasons described *supra* at Section II.D.1, Plaintiff Burns and Gaskins should be permitted discovery to demonstrate that their DCHRA charges should be considered timely under waiver, estoppel, and/or equitable tolling theories.  In addition, for the reasons described *supra* at Section II.D.2, Plaintiffs Burns' and Gaskins' DCHRA claims should be permitted to proceed under the "single-filing rule" based upon Plaintiff Byrd's timely filed charge with DCOHR as well as her timely filed Complaint.  Ex. 6.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.


Respectfully submitted this 17th day of August, 2007.


/s/ Eric K. Bachman_____
Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Eric K. Bachman (DC Bar No. 481993)
**Wiggins, Childs, Quinn & Pantazis, PLLC**
2031 Florida Avenue, N.W., Suite 300
Washington, DC 20009
(202) 467-4123
(202) 467-4489 (facsimile)


Gary T. Brown, D.C. Bar # 246314
**GARY T. BROWN & ASSOCIATES, P.C**.
320 Maryland Avenue, N.E.
Suite 100
Washington, D.C. 20002
(202) 393-4900

***ATTORNEYS FOR PLAINTIFFS***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 17th day of August, 2007, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


By:     /s/ Eric K. Bachman             .
          *Attorney for Plaintiff*