# EXHIBIT 2

| | |
|---|---|
| Date of Interview: | May 21, 2002 |
| Time: | 10:00 a.m. |
| Case: | Sexual Harassment |
| Date of Incident: | April 30, 2002 |
| Place: | Accused Office |
| Time of Incident: | Between 10:30 – 10:45 a.m. |

**Description of Incident:**

The accused, Mr. Darnell Thompson called the complainant, Ms. Annette Burns to his office to learn why she had missed a mandatory customer service training that she was required to attend on March 20, 2002. The complainant went to the accused's office to explain her absence from the training. Once she entered, the accused closed the door and sat across from the complainant. The accused proceeded to show the complainant the document that was sent to him that made reference to her not having attended the training and the $80.00 reimbursement that was required for non-attendees. The complainant reminded the accused that she had notified him that she had a scheduled medical appointment on the same day of the training. The accused proceeded to write her explanation on the document. After he did so, the complainant asked if she could be excused. He responded in the affirmative, and as she walked towards the door the accused got up from his seat and grabbed her from the side. His grabbing forced her to lean on the table. The accused proceeded to try to place his tongue in her mouth and grab her left breast. The complainant stated that she consistently told him to stop and at the same time tried to push him away from her. She further stated that it was extremely difficult to push him away because he is very large and also because she was pregnant (8 months). The accused eventually let her go and she immediately left the office very upset and feeling violated. The complainant went back to her worksite at approximately 10:45 and later went to lunch at her customary time of 11:00 a.m. During the lunch period the complainant notified her grandmother of the incident and later returned to work after

GB 00010

lunch. She stayed at work until her normal departure time of 5 p.m. The complainant did not see the accused for the remainder of the day.

Later that evening, the complainant informed her colleague, Ms. Norvella Barnes, of the incident. The following morning, May 1, 2002 the complainant phoned her supervisor, Mr. James Boone at 1515 Half Street, S.W. at approximately 6:30 a.m. and informed him of what had transpired in the accused's office the day before. The complainant stated that she had explained the entire incident. According to the complainant, Mr. Boone, expressed that he would tell the accused to apologize and promise that it would never happen again. Mr. Boone also advised the complainant that she could take the complaint to the union. Before hanging up the phone, Mr. Boone stated that he was going directly to the accused's office to discuss the matter personally. Before hanging up, the complainant also reminded Mr. Boone of a previous incident that she had reported to him when the accused had hugged her inappropriately back in January of 2002, in which she felt very uncomfortable.

At approximately 8:00 on May 1, 2002, the complainant contacted headquarters and spoke with Ms. Margie Clarke. The purpose of her call was to learn the proper procedure to follow for registering a complaint towards a supervisor. Ms. Clarke responded by asking who her supervisor was and the complainant stated that it was Darnell Thompson. Ms. Clarke expressed that she needed to speak with Ms. Deborah Jackson, the union representative. Ms. Clarke then asked if the complainant was upset about something and if she was crying? The complainant said yes and proceeded to inform her that the accused had improperly placed his hand on her. Upon learning this, Ms. Clarke told the complainant that she should speak to Mr. Kennedy Khabo, the accused's supervisor. Ms. Clarke asked her name and phone number and informed the complainant that Mr. Khabo would call her later. Mr. Khabo subsequently contacted the complainant, made a general inquiry regarding the case, and took the matter to the Director. The Director, upon learning the sensitive nature of the complaint, called the EEO Counselor to his office and officially assigned him to investigate the case.

GB 00011

### Antecedents to Incident

The complainant informed me that she had been working for the Department of Parks and Recreation (DPR) for approximately 2 years, and that she was referred to the agency through a DC Government program called ARISE. The complainant informed me that early into her tenure the accused publicly referred to her as his daughter. She interpreted this display of affection as an indication that the accused had sort of taken her under his wing and had established a paternal, carrying relationship. From the interview it seems that she was the only female employee under the accused's authority that he referred to as "daughter."

Starting around January, 2002, the complainant testified that the accused requested a hug every time she came in contact with him. This habit continued and became more frequent and progressively more intimate (closer contact and body rubbing). The complainant began to feel uncomfortable and offended.

In the month of January, 2002 the complainant approached Mr. James Boone, her supervisor, and told him that the accused was making her uncomfortable by the frequent hugs and body rubbing. After hearing this, Mr. Boone invited the complainant to lunch to discuss the matter in a more private setting. Mr. Boone's reaction surprised the complainant. She stated that Mr. Boone said, I saw it coming, and further confided that other females had made similar complaints to him. According to the complainant, Mr. Boone expressed that he was going to talk to the accused regarding her complaints and to ask him to apologize. He further recommended to the complainant that she should not permit the accuser to hang around her office. She exclaimed that it would be absurd for her to deny her boss access to her worksite.

When I asked the complainant if any co-workers had witnessed any unwelcome advance she stated that besides the hugging behavior there was only one incident that took place inside the accused's office in the month of February or March, 2002. At this particular time the complainant was inside the accused's office and the accused planted a very

GB 00012

"loud wet kiss" on the complainant's cheek that was heard by her co-worker who was standing outside the office. When the complainant exited the office, the co-worker, Gladys Jeter made a reference to the kiss by saying it sounded gross.

The other testimony that the complainant presented was from a communication she had with other female co-workers who shared similar stories of being touched improperly and feeling scared, violated and powerless to do anything. The general sentiment of some of the female worker, according to the complainant, was of resignation and frustration. They felt that if they were to report his unwelcome advances to a higher level it would be their word against the accused, and because the accused had a senior position and had worked for the department for a long time, he was basically untouchable.

**Specific Action/Relief Sought:**
- Accused should be fired, in the very least get some treatment or help.
- Complainant likes her job because is convenient (near her son's daycare). Complainant would be amenable to work in some other site provided is located in the same area.

*Annette Burns*
Signature of Complainant/Date

_____      202-561-1220
EEO Counselor                     Telephone Number