**WIGGINS, CHILDS, QUINN & PANTAZIS, PLLC**
A PROFESSIONAL LIMITED LIABILITY COMPANY
———

2031 FLORIDA AVE, N.W.
SUITE 300
WASHINGTON, DC 20009
TELEPHONE (202) 467-4123
FACSIMILE (202) 467-4489

September 5, 2007

**Via E-Mail & First Class U.S. Mail**
Toni Michelle Jackson
Assistant Attorney General
441 Fourth Street, NW, Suite 6S052
Washington, DC 20001
Toni.Jackson@dc.gov

<u>*Re: Garrina Byrd, et al.. v. District of Columbia*</u>

Dear Ms. Jackson:

I write in response your August 1, 2007 letter regarding Defendant's discovery responses. The purpose of this letter is to promptly resolve as many of the outstanding discovery disagreements as possible without Court intervention. However, if we are not able to settle these disputes by September 20, 2007, we will file a motion to compel discovery with the Court.

As stated previously, it is our position that Defendant has waived its objections to Plaintiff's discovery requests. Even so, we will respond to certain of Defendant's objections below in an attempt to informally work out our differences.

Interrogatory Nos. 7 & 8

Defendant now states that it will produce all complaints of sexual harassment from 2002 through 2005. However, please confirm that this production will include, as requested in Interrogatory No. 7, "all complaints of retaliation, sex discrimination and/or harassment made by any employee of the Defendant's Department of Parks and Recreation describing the substance of the complaints and to whom they were made, when the complaints were made, about whom the complaints were made, and in which department or subdivision . . . ."

Further, Defendant's refusal to produce complaints that occurred prior to 2002 is improper for the reasons set forth below. On a number of occasions, this Court has permitted discovery about conduct which occurred many years prior to the discrimination alleged in the lawsuit. *See, e.g., Pleasants v. Allbaugh,* 208 F.R.D. 7, 9 (D.D.C. 2002) (permitting discovery on denied promotions dating back to January 1, 1992, despite the fact that the promotion denial challenged by plaintiff occurred in 1995); *Waters v. U.S. Capitol Police Board*, 216 F.R.D. 153, 159-60 (D.D.C. 2002) (allowing discovery pertaining to all persons terminated, as well as all complaints of discrimination against the defendant, dating back five years to January 1, 1996 even though the discriminatory conduct at issue, plaintiff's termination, occurred in 2001).

THE KRESS BUILDING
301 19TH STREET NORTH
BIRMINGHAM, AL 35203
(205) 328-0640

2031 FLORIDA AVE, N.W.
SUITE 300
WASHINGTON, D.C. 20009
(202) 467-4123

*Letter to T. Jackson, Esq.*
*September 5, 2007*
*Page 2 of 6*

A similar temporal scope of five years prior to Plaintiff's employment is appropriate for the requests of sexual harassment, sex discrimination and/or retaliation complaints in this case as well. However, in order to reach a compromise, Plaintiff will further limit the temporal scope of Interrogatory No. 7 to 1999 through 2005. We trust that this compromise will be acceptable and that Defendant will produce responsive information accordingly.

Several bases exist for producing information about events that occurred prior to Plaintiff's allegations of specific discriminatory conduct. First, "other decisions by the same decision-maker(s) may establish discriminatory intent and are, therefore, admissible as prior bad acts under Fed. R. Evid. 404(a)". *Waters*, 216 F.R.D. at 158 (alteration added). Therefore, any prior complaints made against Darnell Thompson (who Plaintiff alleges harassed her) or complaints investigated by any of the individuals listed in Plaintiff's Request for Production No. 4 (to whom Plaintiff either complained directly and/or were otherwise knowledgeable of the complaints and failed to remedy Plaintiff's complaints) are certainly relevant, and thus should be produced.

Second, *Waters* also noted that relevant information was not limited solely to specific, individual decision makers:

> An agency or business organization can act only through its agents and employees. To permit discovery only of a single decision-maker's prior decisions so atomizes the organization that it ignores the possibility that isolated decisions are the result of an organizational culture or ethos that encourages or condones discriminatory behavior. What may superficially appear to be decisions made by individual decision-makers may, when linked together, form what the courts call a "pattern or practice" of treating people of a certain protected class in a certain way. Thus, to say, that only the acts of the decision-maker who made the decision in plaintiff's case are discoverable takes as established what has never been proven, that this decision-maker acted in splendid isolation without the possibility of being influenced by anyone else in the organization. That may well be true, but to assume it is gratuitous. *Id.* at 158.

Similar to *Waters,* Plaintiff has alleged she was subject to "*systemic discrimination and retaliation* that existed . . . at the Defendant's Department of Parks and Recreation." Third Am. Compl. ¶ 1 (emphasis and alteration added). This allegation, coupled with her hostile work environment claim, requires broad discovery to determine the severity and/or pervasiveness of Defendant's illegal conduct. At a minimum, the requested information will show (1) when Defendant received notice of gender discrimination, harassment, and/or retaliation problems within the Department of Parks and Recreation; (2) when, and how, Defendant took action, if any, to address these complaints; and (3) the existence of additional documents and/or witnesses with relevant knowledge regarding gender discrimination issues within the Department of Parks and Recreation. Even prior to Plaintiff's employment, such information is relevant for the reasons set forth above. Plaintiff's suggested temporal scope dating back to 1999 is narrowly tailored given the type of systemic allegations made in this case, and thus, discovery of these answers and documents should be produced.

*Letter to T. Jackson, Esq.*
*September 5, 2007*
*Page 3 of 6*

Interrogatory No. 9

Please supplement this answer with a proper response, including all the information requested about any discipline that was imposed. In addition, please supplement the response with detailed information about the reason(s) for Thompson's termination.

Interrogatory No. 18

Please provide a written response to Interrogatory No. 18, namely: did Thompson have a criminal record; if so, describe the nature and extent of the criminal record and the approximate date on which Defendant had notice of any criminal conviction(s).

Interrogatory No. 19

Defendant states in its August 1, 2007 letter that it will supplement this response separately. By September 20, 2007, please confirm the date by which we will receive this response. Further, Defendant's attempt to limit its response solely to training (if any) which occurred after 2002 is meritless. As discussed in Interrogatory Nos. 7 & 8, *supra*, case law demonstrates that Plaintiff's request is temporally relevant, particularly given the systemic nature of the sexual harassment claims Plaintiff alleges. Specific to this discovery request, information regarding the frequency, form, duration and substance of Defendant's EEO training in the years prior to Plaintiff's employment can be used to demonstrate how such training (or the lack thereof) was deficient, and to support Plaintiff's allegations that Defendant failed to exercise reasonable care to prevent and correct the harassing behavior that Plaintiff later suffered. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (defendant has affirmative defense to harassment claims if it can show that created by a supervisor if, among other things, it can show that the employer exercised reasonable care to prevent and correct harassing behavior). As such, answers regarding Defendant's EEO training programs is clearly "relevant to the claim or defense" of one of the parties, Fed. R. Civ. P. 26(b)(1), and should be produced.

RFP No. 3

Plaintiff's understanding, based on Defendant's response to Interrogatory No. 7 in its August 1, 2007 letter, is that Defendant will produce all complaints of sexual harassment by employees in the Department of Parks and Recreation from 2002 through 2005. For the reasons stated in Interrogatory Nos. 7 & 8, *supra*, Defendant should produce all such claims from 1999 through 2005. By September 20, 2007, please confirm the date by which we will receive the documents.

RFP Nos. 4 -5

Defendant has refused to produce any "employment files of other DPR employees without a court order." This refusal is without justification and Plaintiff will seek a court order on this issue if we are not able to resolve this dispute promptly.

*Letter to T. Jackson, Esq.*
*September 5, 2007*
*Page 4 of 6*

To that end, Plaintiff will agree to limit her request such that Defendant is not required to produce the entire employment files of the requested individuals. That is, Plaintiff does not request information related to health insurance, family members, tax information, or bank account(s). Plaintiff does, however, request information contained in the employment and/or personnel files of the requested individuals which relate to the claims and/or defenses raised in this case.

Notwithstanding Plaintiff's compromise offer, Defendant' objection that production of personnel files in response to a discovery request is prohibited by a District of Columbia statute and regulation is flawed in several respects. As this Court stated in *Fonville*, a case presenting similar privacy concerns under the identical statute, D.C. Code § 1-631.01, "[w]hile the information requested by Plaintiff may contain private information, the Court has already entered the parties' stipulated protective order, which covers confidential information related to Defendant's employees." *Fonville*, 230 F.R.D. at 44. Thus, here, as in *Fonville*, any privacy concerns expressed by Defendant will be effectively addressed by a protective order, which has already been entered in this case. Indeed, this is precisely the outcome dictated by this Court in *Fonville*, which stated, in pertinent part:

> . . . the best way to resolve this problem is for plaintiff and defendant to submit a stipulated protective order to the court and . . . produce the responsive documents according to the terms of the protective order. In this way, plaintiff can receive all of the information relevant to his claims, but any invasion into other individuals' privacy will be minimized.

*Fonville*, 230 F.R.D. at 44-45. Furthermore, Defendant's response to Plaintiff's Interrogatory No. 9 and RFP No. 4 agreeing to produce the personnel file of non-party Darnell Thompson – which, according to Defendant, would be a violation of D.C. statute and regulation – confirms that even Defendant recognizes that the protective order will sufficiently address any privacy concerns related to personnel files.

Lastly, Defendant's assertion that Request No. 4, which seeks material in the personnel files dating back to 1997, is "wrong" on the grounds that Plaintiff only worked for Defendant from 2002 to 2005 misses the point entirely. Plaintiffs seek such personnel file documents for any individuals listed who were employed dating back to 1997. This request is reasonably limited in temporal scope, particularly given that this action alleges systemic sexual harassment, discrimination and retaliation over a period of years. Information in personnel files for those years prior to Plaintiff's employment is reasonably calculated to lead to admissible evidence because it would reveal (1) when Defendant received notice of gender discrimination, harassment, and/or retaliation problems within the Department of Parks and Recreation; (2) when, and how, Defendant took action, if any, to address these complaints; and (3) the existence of additional documents and/or witnesses with relevant knowledge regarding gender discrimination issues within DPR. This information would demonstrate the deep-seated nature of sexual harassment at Defendant's Parks and Recreation Department and Defendant's failure to address these problems adequately, setting forth the context in which Plaintiff's claims accrued.

*Letter to T. Jackson, Esq.*
*September 5, 2007*
*Page 5 of 6*

Even though Plaintiff is entitled to information dating back to 1997, in an effort to reach a compromise on this issue, Plaintiff will agree to further temporally limit this request to information dating back to 1999. Please confirm whether this compromise position is acceptable to Defendant by September 20, 2007.

<u>RFP Nos. 6-7</u>

*See* RFP Nos. 3-5, above.

<u>RFP No. 10</u>

*See* Interrogatory Nos. 7 & 8, and RFP No. 3, above.

<u>RFP No. 11</u>

Please confirm in writing whether any recordings and/or interview transcripts related to Exh. 3, attached to its June 26, 2007 responses to Plaintiff's RFPs, are in Defendant's control or possession.

<u>RFP No. 16</u>

Please detail in writing what steps Defendant has taken to examine Defendant's computer data and/or electronic mail systems and to preserve potentially relevant evidence. Specifically, Plaintiff requested in a letter dated November 13, 2006 that Defendant preserve certain electronic discovery related to this case. Further, the 2006 amendments to Federal Rules of Civil Procedure also require Defendant to take steps to preserve and produce relevant electronic data/evidence. Finally, by September 20, 2007, please advise as to the date by which Defendant will produce the documents referenced in its August 1, 2007 letter.

**Miscellaneous Discovery Issues**

Defendant's interrogatory responses are verified by a paralegal in your office, George Becker. However, Mr. Becker is not a representative/agent of the Defendant, nor does it appear he has any personal knowledge of the information requested by Plaintiff or the responses provided by Defendant. "Interrogatories addressed to an individual party must be answered by that party. It is improper for the party's attorney to answer them, though undoubtedly the common practice is for the attorney to prepare the answers and have the party swear to them." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2172 (2007). Further, "[i]f the interrogated party is a . . . governmental agency, Rule 33 provides that the interrogatories shall be answered by any officer or agent, who shall furnish such information as is available to the party." *Id.* Therefore, a proper agent and/or officer of Defendant must verify the interrogatory responses. We request that this verification be provided to us by September 20, 2007.

Our hope is that we may resolve some, or all, of these discovery issues short of court intervention. To that end, please respond by September 20, 2007, as to whether Defendant will

*Letter to T. Jackson, Esq.*
*September 5, 2007*
*Page 6 of 6*

produce the information requested herein, as well as a date certain for such production.  If not, Plaintiffs will submit these issues to the Court.

    Should you have any questions regarding this matter, please do not hesitate to contact me.  Thank you.

                  Sincerely,

                  /s/_Eric Bachman_____
                  Eric Bachman

cc:    Gary T. Brown, Esq.