## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GARRINA BYRD, ANNETTE BURNS, DEMERA GASKINS, and CARMEN JEAN-BAPTISTE, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-0522 (HHK/AK) |
| v. | ) ) ) | |
| DISTRICT OF COLUMBIA, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND TO QUASH NOTICE OF DEPOSITIONS

Come now Plaintiffs Garrina Byrd, Annette Burns, Demera Gaskins, and Carmen Jean-Baptiste ("Plaintiffs"), through their undersigned counsel, and hereby oppose the Defendant District of Columbia's ("Defendant" or "District") Emergency Motion for Protective Order and to Quash Notice of Depositions ("Motion"). Dkts. 93 & 94.

### I.    Background and Summary

The four Plaintiffs in this case allege that the Defendant actively sexually harassed them and/or permitted them to be sexually harassed during their employment with Defendant's Department of Parks and Recreation ("DPR"), and then terminated their employment for resisting the sexual harassment and/or reporting it.  *See* Third Amended Complaint, Dkt. 51. Plaintiffs also allege that Defendant failed to take the necessary steps to remedy the sexual harassment after it had been reported, thereby exhibiting a deliberate indifference to the harassment and allowing it to continue.  *See id.*

In order to prove these allegations, Plaintiffs seek to depose several fact witnesses, including Neil Albert and Neil Stanley, who are now with the Mayor's Office and the Department of Youth and Rehabilitation Services, respectively.   The Defendant has not established that either of these two individuals, who both served as Director of the Department of Parks and Recreation, and who both personally were apprised of the complaints of sexual harassment of the Plaintiffs and other women and failed to take appropriate action, are such high-ranking government officials that they should be protected from depositions.   Furthermore, even if they were afforded a special level of protection from depositions, in this case, these two individuals possess personal knowledge of relevant facts that are unable to be obtained from any other source, and therefore Plaintiffs should be permitted to depose them.   Finally, because Plaintiffs have been trying in earnest to schedule all of the noticed depositions at mutually agreeable times for nearly six months, and because the discovery period ends on April 21, 2009, Plaintiffs had no choice but to notice the remaining depositions on successive business days.   As such, there is no basis for quashing Plaintiffs' Notice of Depositions, and Defendant's Motion should be denied.

## II.      Neil Stanley and Neil Albert Are Not Protected from Depositions in This Matter

Generally speaking, "[a] party is entitled to depose a witness on all relevant issues to which the witness has knowledge." *Alexander v. FBI*, 186 F.R.D. 1, 1 (D.D.C. 1998) (citing *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984)). The District has moved, pursuant to Fed. R. Civ. P. 26(c), for a protective order stating that Plaintiffs may not depose Neil Albert or Neil Stanley, currently a Deputy Mayor and General Counsel for the District of Columbia's Department of Youth and Rehabilitation Services, respectively.   As such, pursuant to Fed. R. Civ. P. 26(c), it is the District's burden to establish "good cause" for granting the protective

order.  *See* Fed. R. Civ. P. 26(c); *Alexander*, 186 F.R.D. at 1.  To meet this burden, the District

must "make a specific demonstration of facts to support [its] request for the protective order and

may not rely on conclusory or speculative statements concerning the need for a protective order."

*Id.*  Moreover, the showing required under Rule 26(c) must be "sufficient to overcome plaintiffs'

legitimate and important interests in trial preparation."  *Id.* (citing *Farnsworth v. Procter &*

*Gamble Co*., 758 F.2d 1545, 1547 (11th Cir.1985) ("[T]rial preparation and defense ... are

important interests, and great care must be taken to avoid their unnecessary infringement.")).

Defendant has not met this burden.

        While it is true that certain "high ranking government officials are generally not subject

to depositions unless they have *some* personal knowledge about the matter and the party seeking

the deposition makes a showing that the information cannot be obtained elsewhere," *Alexander*,

186 F.R.D. at 4 (emphasis in original), the District has not established that either Stanley or

Albert is sufficiently high-ranking to be afforded any such protection.  Furthermore, even if

Stanley or Albert were afforded some protection from depositions, their personal knowledge of

the facts in this case, unobtainable from any other source, requires that they be subject to

deposition by Plaintiffs.

> **A.     Even if Albert and Stanley are Afforded Special Protections from**
> **Depositions, They Possess Personal, Relevant Knowledge of the Facts At**
> **Issue in This Case and Therefore Must Be Subject to Deposition by Plaintiffs**

        As will be discussed *infra*, Defendant has not established that either Stanley or Albert is a

"high ranking government official" subject to special protections from depositions in civil

matters.  However, even if both Stanley and Albert are afforded such special protections, they

should still be compelled to appear at their depositions because they possess personal knowledge

of facts important to the case that cannot be obtained from other sources.

As stated *supra*, high ranking government officials are generally not subject to depositions "unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander*, 186 F.R.D. at 4 (emphasis in original).   In this case, both Stanley and Albert have significant personal knowledge about both Plaintiffs' allegations and Defendant's defenses regarding which only they can testify.   Neil Albert was the Director of DPR while many of the Plaintiffs were employed there.   While discovery has not uncovered the exact dates of his tenure, it is clear that he was the Director in 2002 when Annette Burns was sexually assaulted by her supervisor, the Chief of Maintenance, Darnell Thompson.  *See, e.g.,* Plaintiffs' Third Amended Complaint, Dkt. 51 at ¶¶ 38, 41-47, and 63.   Ms. Burns reported the assault directly to Mr. Albert and Mr. Stanley, who was at the time not the Director of DPR, but was in a supervisory role at DPR (he later assumed the role of Interim Director upon Mr. Albert's departure from that position).  *See id.* at ¶¶ 41-47.   Burns also informed both Albert and Stanley that other women had been sexually harassed by Mr. Thompson.  *See id.* at ¶ 41.   Burns then reported the harassment to Project Arise, the welfare-to-work program through which she was hired.  *See id.* at ¶ 43-47. She was later informed that individuals from that program had met with Mr. Albert about her written complaint and given him a written copy of the complaint.  *See id.*  Finally, Albert called Plaintiff Burns on the telephone and informed her Mr. Thompson would be terminated.  *Id.* at ¶ 46.  Mr. Thompson was not terminated until over three years later.

Through their depositions, Plaintiffs would seek to uncover what, if anything, Mr. Albert and Mr. Stanley did in response to Plaintiff Burns' complaints.   Plaintiffs are aware of no other source of this information, and Defendant has pointed to none.   Defendant makes some passing suggestion that "documents produced in discovery evidence what, if anything, these officials

know about Plaintiffs' allegations . . . ."  *See* Def's Memorandum in Support of its Motion ("Mem.") at 4.  However, Defendant does not indicate to what documents it refers or what the documents purportedly establish.  Plaintiffs' counsel is unaware of any document that explains, for example, what actions Albert or Stanley took in response to Plaintiffs' Burns' complaint; at what time they took any such actions; what if any investigations they initiated; what corrective action if any they implemented; what discipline, if any, was instituted in response to the complaints; and, importantly, why any such actions were taken and why others were not.  Why for example, was Mr. Thompson not terminated after Burns' complaint, as Albert informed Plaintiff Burns he would be?  These are just a sample of the myriad questions that would be asked of Stanley and Albert at their depositions, and only Albert and Stanley can respond as to their actions and the reasons therefor.  This information is simply not available from any other source.

Stanley and Albert's personal knowledge is not limited to the complaint of Ms. Burns, however.  She was simply the first of the Plaintiffs to complain to Albert and Stanley.  Demera Gaskins also complained to Albert and/or Stanley about sexual harassment in approximately 2005, and Jean-Baptiste complained to Albert in 2006.  *See* Dkt. 51 at ¶¶ 63, 77.    There is further evidence that other individuals, including union representatives, complained to Albert and Stanley about rampant sexual harassment at DPR, and they both failed to take appropriate action.  *See id.* at ¶¶52-53.  In particular, a letter from the AFGE Local 2741 Union President, Deborrah Jackson, to Kathy Patterson of the D.C. City Council clearly establishes the personal knowledge of Stanley and Albert of the complaints of sexual harassment and their failure to do anything in response, except to terminate the women who complained.  *See* Ex. 1.  It states:

> At least three (3-6) allegations of sexual harassment against the Chief of Facility
> Maintenance were brought forth during Director, Neil Albert's and then, General

> Counsel, Neil Stanley's tenure.   Neither of these administrators conducted in-house investigations.   Repeated requests by the Union to Neil Albert to remove the Chief of Facility Maintenance from his position went unheeded.   When Union Officials asked what intentions  management had to address this issue, we were told by Neil Albert that the Office of Human Rights had it and an investigation was under way.   Subsequently, we found that there was never any formal complaint lodged by anyone and the agency had not requested an investigation.
>
> All of the women who came forward were summarily dismissed from employment because they were temporary employees.   To this day, sexual harassment is on-going and Interim Director Neil Stanley is aware and reluctant to do anything to terminate this seemingly acceptable practice and behavior.

Ex. 1 at 3-4.  Clearly, only Albert and Stanley can testify to their version of these events, and to why it is that they made the described statements, failed to take corrective action, and why they expressed a reluctance to terminate Mr. Thompson (the Chief of Facility Maintenance).

Furthermore, Ms. Sylvia Gwathmey, an AFGE union steward, testified at her deposition in this matter that she and Ms. Jackson, the Union President, met with Mr. Albert regarding complaints of sexual harassment by Mr. Thompson, including that of Plaintiff Burns.  *See, e.g.,* Ex. 5, Gwathmey Dep. at 22, 25-26.   Gwathmey testified that Mr. Albert, when informed of Ms. Burns' complaint, indicated that an internal investigation would be performed.  *Id.* at 34-36. Because Defendant has produced no documents indicating that any internal investigation was performed after Ms. Burns' complaint, Mr. Albert is needed to testify as to whether and why an investigation was not performed in response to Ms. Burns' (or any other) complaint.

Ms. Gwathmey also testified that the union held multiple meetings with Mr. Albert during which it requested that Mr. Thompson not be allowed to supervise employees, due to the numbers of complaints it was receiving about him, *id.* at 38-39, and that Mr. Albert never took the requested action, *id.* at 38.  Ms. Gwathmey confirmed that Mr. Albert did meet with one of the individuals who complained about sexual harassment (possibly Plaintiff Burns) about her

harassment, and then transferred her to another location so that she was no longer working with Mr. Thompson.  *Id.* at 41-42.  She testified that to her knowledge Albert did nothing to stop or prevent Mr. Thompson from sexually harassing any other employee who worked for him.  *Id.* at 81.

Regarding Mr. Stanley, Gwathmey testified that the union made repeated complaints about sexual harassment and repeated requests to remove Mr. Thompson to Stanley, but that he refused to do anything at all in response to the Union's requests and complaints. *Id.* at 39-42. 104-05 (stating, on p. 41, "I don't recall Mr. Stanley doing anything when [the complaint of sexual harassment] was brought to his attention."). Gwathmey further testified:

> A.     . . . Miss Jackson [union president] . . . was very adamant with at that time interim director Stanley that something needs to be done and she was very dissatisfied that it had not.
> Q.     Nothing was being done?
> A.     Nothing.
> Q.     And the complaints kept coming in to the union?  Basically the complaints would come to the union, the union would go to Stanley or previously had gone to Albert and asked something to be done about the complaints of sexual harassment and nothing was done.  Is that what you understood Miss Jackson was making a complaint about in this document? [Referring to Ex. 1] . . .
> A.     Yes.

*Id.* at 39-40 (objection omitted).  Gwathmey further testified that each and every time an employee complained to the union about sexual harassment, these complaints would be transmitted to the Director of DPR (Albert or Stanley), regardless of whether the employee wanted to pursue the complaint formally, and that such complaints were transmitted to the Director by the union "several" times.  *Id.* at 121-24.

Other evidence indicates Albert and Stanley's personal knowledge of the sexual harassment complaints and their personal involvement in the Department's response thereto (or lack thereof).  For example, Mr. Thompson stated in the course of the Department's internal

investigation of Plaintiff Byrd's complaint that Neil Albert informed him of Plaintiff Burns' complaint.  *See* Ex. 2, Excerpt of Thompson Transcript at 35.  Plaintiffs cannot rely on Mr. Thompson to confirm this fact in his deposition because, despite Plaintiffs' counsel having first requested his last known address on October 17, 2008 (see Ex. 3, 10/17/08 Correspondence), and repeated this request to Defendant's counsel countless times since, Defendant has not provided a last known address for Mr. Thompson.  Therefore, Plaintiffs are uncertain of their ability to secure Mr. Thompson's attendance at a deposition of his own, making the deposition of Mr. Albert regarding this fact all the more necessary.

In sum, Plaintiffs do not seek to depose Albert or Stanley simply by virtue of their former positions at DPR, or on a theory, for example, that they *should have known* and remedied the sexual harassment.  Rather, the evidence thus far discovered in this case and the facts alleged by Plaintiffs indicate that Stanley and Albert *did know* of the sexual harassment, and that they were personally apprised of the complaints of sexual harassment by Plaintiffs Burns and Gaskins, among others, including the AFGE union representatives.  Only Albert and Stanley can speak to their responses to these complaints and the reasons therefor.

Because the Plaintiff's allege that the District exhibited a deliberate indifference to their sexual harassment complaints, thereby allowing the harassment to continue and intensify, they must be permitted to depose Stanley and Albert, the persons primarily responsible for this deliberate indifference.  This information is essential to their case and cannot be provided by any other source.

Defendant suggests that Albert and Stanley be permitted to provide written statements in lieu of live testimony.  Def.'s Mem. at 4.  Such statements will not suffice, given the intricate nature of the facts alleged.  Plaintiffs must be permitted to ascertain via deposition Stanley and

Albert's version of the events alleged and ask pertinent follow-up questions to fully explore and understand their actions and the reasons therefor.  Written statements, filtered through defense counsel and limited to whatever facts Stanley and Albert deem relevant and/or worthy of sharing, simply would not permit Plaintiff the range of discovery to which they are entitled under the Federal Rules in order to adequately prepare for trial. Plaintiffs should be allowed, consistent with their "legitimate and important interests in trial preparation," to depose Stanley and Albert on the key knowledge they hold relevant to Plaintiffs' claims.  *Alexander*, 186 F.R.D. at 1. (citing *Farnsworth*, 758 F.2d at 1547) ("[T]rial preparation and defense ... are important interests, and great care must be taken to avoid their unnecessary infringement.")).

Because both Stanley and Albert both possess important personal knowledge of Plaintiffs' allegations that cannot be obtained elsewhere, their depositions should be permitted and the Defendant's Motion for a Protective Order should be denied.

### B.      The District Has Not Established that Noticed Deponents Neil Albert and Neil Stanley are "High-Ranking Government Officials"

Defendant also fails to establish that either Albert or Stanley is sufficiently "high-ranking" to be afforded special protection from depositions, and thus has not sustained its burden under Fed. R. Civ. P. 26(c) to establish good cause for the protective order.

First, the cases on which the District relies do not support the proposition that a Deputy Mayor or General Counsel to a District Agency should be granted special protections from depositions.  In *Alliance for Global Justice v. District of Columbia*, No. Civ. A. 01-00811, 2005 WL 1799553 (D.D.C. July 29, 2005), a case on which Defendant relies, *see* Def.'s Mem. at 2-3, the Court finds that the District's Mayor should be afforded special protection from civil depositions, but makes no mention of deputy mayors or agency general counsel. In *Bardoff v. United States*, 628 A.2d 86 (1993) (cited in Def's Mem. at 3-5), the court discusses protections

for United States Senators and the General Counsel to the United States House of Representatives, and *Davis v. United States,* 390 A.2d 976 (D.C. 1978) (cited in Def's Mem. at 3), considers the issue with respect to the Attorney General of the United States, the Acting Chief of the Metropolitan Police Department, and the Director of the Maryland Lottery.  To state the obvious, a deputy Mayor and the general counsel to a District department are significantly less high-ranking than United States Senators, the Attorney General of the United States, or even the Mayor himself. . . .

Perhaps recognizing that the special protections from depositions may not reach a deputy mayor or department counsel, the District argues that because Stanley and Albert were each *at some point in the past* the Director of the District's Department of Parks and Recreation, that they should now be protected from civil depositions.  *See* Mot. at 3 (stating that Albert and Stanley "each served as the Director of the District's DPR at different times during plaintiff's [sic] employment . . . .").  There is authority indicating that "administrative heads" are afforded some protection from depositions, but this is because an administrative head's time "should not be unduly interrupted or burdened with depositions . . . ." *Alexander*, 186 F.R.D. at 5 (citing  *In re United States,* 985 F.2d 510, 512 (11th Cir. 1993) ("High ranking government officials have greater duties and time constraints than other witnesses")).   In short, the courts seek to protect those who are currently busy with the important affairs of running the government from wasting time in lengthy depositions in cases about which they have no personal, relevant knowledge. *See, e.g., id.*  Therefore, the fact that Stanley or Albert was previously a department head is irrelevant; the District must show that their *current* duties are of such a high level of importance that they should not be forced to take time away from those duties for a deposition (at least not without a special showing, addressed *supra*).  This the Defendant has not done.

Because Defendant has not sustained its burden of establishing that either Stanley, the current general counsel to a District department, or Albert, a deputy mayor, is a government official of sufficiently high rank to justify special protections from depositions, its Motion must fail.  However, as discussed *supra*, even if Defendant had sustained this burden, Stanley and Albert should be required to appear because they are key decision-makers with important personal knowledge of the facts of this case, and the District should not be permitted to shield them from discovery by reason of their current or former positions.   Indeed, even a sitting President of the United States has been ordered to cooperate in discovery in a civil matter when his knowledge of the facts alleged was pertinent to the pending action.  *See Clinton v. Jones*, 520 U.S. 681 (1997) (overturning district court's decision to stay discovery and trial during the President's term of office).   Stanley and Albert should likewise be ordered to cooperate in discovery in the current case.

**III.   The Remaining Depositions Must Proceed As Noticed Due to the Impending Discovery Deadline**

As for the remaining depositions noticed by Plaintiff, the depositions were noticed and scheduled on nine consecutive business days due to Defendant's repeated failure to provide the witnesses at mutually agreeable dates and times over the course of the past *six months*.  Despite having first informed Defendant on October 17, 2008 that Plaintiffs wished to depose the majority of the individuals noticed, *see* Ex. 3, 10/17/08 Correspondence, and trying in earnest to schedule these depositions since January 7, 2009, Defendant has thus far only produced three fact witnesses and two Fed. R. Civ. P. 30(b)(6) witnesses (these depositions have not yet been completed).  The District has still not provided *any* of the requested last known home addresses for those deponents no longer employed by the District.  Plaintiffs' counsel has been exceedingly

patient, though persistent, in attempting to schedule these depositions.[1]  Because the close of

discovery is rapidly approaching on April 21, 2009, per the Court's January 13, 2009 Scheduling

Order (Dkt. 88), Plaintiffs simply could not wait any longer to notice these depositions if they are

to occur before the close of discovery.   There was nothing "arbitrary" about Plaintiffs' notice,

rather, Plaintiffs were forced to notice the depositions as they did due to Defendant's counsel

repeated failure to provide the deponents at mutually agreeable dates and times.   Therefore,

because Plaintiffs' counsel otherwise gave adequate notice of the depositions, and because any

burden that now must be borne by Defendant's counsel to attend the depositions on consecutive

days is due to Defendant's own recalcitrance in voluntarily scheduling the depositions, good

cause does not exist for Defendant's protective order or to quash the notice of depositions, and

Defendant's Motion should, therefore, be denied.[2]

**IV.     Conclusion**

        For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion be

denied.

_____

[1] By Plaintiff's counsel's count, over twenty email messages attempting to schedule these
depositions and/or secure the last known addresses of individuals no longer with the District
have been exchanged between Plaintiffs' counsel and Defendant's counsel since January 7, 2009.

[2] As for Defendant's assertion that seventeen depositions were noticed without leave of court:
Defendant correctly points out that Plaintiffs Motion for Leave to Take Depositions in excess of
ten was filed on March 30, 2009 and is currently pending before the Court.  Dkt 92.  Defendant
failed to mention that in the cover letter provided with Plaintiffs' deposition notice, Plaintiffs
proposed that the parties proceed with the depositions until the tenth deposition was completed
and then await the Court's ruling on Plaintiffs' Motion for Leave to Take Depositions regarding

Respectfully Submitted this 8th day of April, 2009

_____/s/ Abby M. Richardson_____

Abby M. Richardson (D.C. Bar No. 978118)
**WIGGINS, CHILDS, QUINN & PANTAZIS, PLLC**
2031 Florida Avenue, N.W.
Suite 300
Washington, D.C. 20009
202-467-4123
202-467-4489 (facsimile)

Robert F. Childs
Jon C. Goldfarb
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500
(205) 314-1500 (facsimile)

Gary T. Brown (D.C. Bar No. 246314)
**GARY T. BROWN & ASSOCIATES, PC**
320 Maryland Avenue, N.E.
Suite 100
Washington, D.C. 20002
(202) 393-4900

*Attorneys for Plaintiffs*

---

the remainder of the depositions.  *See* Ex. 4, 3/30/09 Correspondence.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of April, 2009, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


By: ___/s/ Abby M. Richardson_____
*Attorney for Plaintiffs*